## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CHARLES MILLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action  No. 05-1314 (HHK) |
| | ) | Electronic Case Filing |
| U.S. DEPARTMENT OF JUSTICE, | ) | |
| Federal Bureau of Investigation | ) | |
| | ) | |
| Defendant. | ) | |
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ | ) | |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The defendant United States Department of Justice, by and through counsel, respectfully moves this Court pursuant to Rule 56, Fed. R. Civ. P., for judgment in its favor in this Freedom of Information Act, 5 U.S.C. § 552, ("FOIA") case concerning documents sought by the plaintiff relating to himself.  The grounds for this motion are set forth in the accompanying Defendant's Memorandum in Support of Motion for Summary Judgment.  This motion is supported primarily by the Declaration of David M. Hardy of the Federal Bureau of Investigation, a component of the Department of Justice.  Mr. Hardy's declaration is attached.  A statement of material facts not in genuine dispute and a draft order are attached hereto.

Plaintiff should take notice that any factual assertions contained in the affidavits and other attachments in support of defendant's motion will be accepted by the Court as true unless the plaintiff submits his own affidavits or other documentary evidence contradicting the assertions in the defendant's attachments.  See Neal v. Kelly, 963 F.2d 453 (D.C. Cir. 1992), Local Civil Rule 7(h) and Fed. R. Civ. P. 56(e), which provides as follows:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show

affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.  The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits.  When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).

WHEREFORE, based on the foregoing, the defendant respectfully requests that the Court enter judgment in its favor on the Complaint.

Dated: September 26, 2005.

Respectfully submitted,

/s/ _____
KENNETH L. WAINSTEIN, D.C. Bar #451058
United States Attorney

/s/ _____
R. CRAIG LAWRENCE, D.C. Bar # 171538
Assistant United States Attorney

/s/ _____
JANE M. LYONS, D.C. Bar #451737
Assistant United States Attorney
United States Attorney's Office
Civil Division
555 4th Street, N.W. - Room E4822
Washington, D.C. 20530
(202) 514-7161

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CHARLES MILLER,                    )
                                   )
           Plaintiff,      )
                                   )
     v.                           )      Civil Action No. 05-1314 (HHK)
                                   )      Electronic Case Filing
U.S. DEPARTMENT OF JUSTICE,        )
Federal Bureau of Investigation    )
                                   )
          Defendant.      )
————————————————————————)

## DEFENDANT'S MEMORANDUM IN SUPPORT
## OF MOTION FOR SUMMARY JUDGMENT

This case involves the defendant Department of Justice's duty under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), and the Privacy Act, 5 U.S.C. § 552a, to process a request made by the plaintiff for information about himself which was contained in the investigative files of the Federal Bureau of Investigation ("FBI"). The FBI's files have been extensively reviewed, processed, and released to him. In short, as of the filing of this motion, the FBI has made available to the plaintiff all of the non-exempt, responsive documents in its possession. Defendant has invoked several of the statutory exemptions under FOIA to withhold information for legally permissible reasons as reflected in the <u>Vaughn</u> index accompanying the Declaration of David M. Hardy, Section Chief of the Record/Information Dissemination Section within the Records Management Division of the FBI. Accordingly, because defendant has fully performed its statutory duty and there are no genuine issues of material fact, defendant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

# I. <u>Background</u>

Plaintiff is currently serving a life sentence without parole in the U.S. Penitentiary in Atlanta, Georgia based on his conviction for conspiracy to violate federal narcotics laws. Complaint, at pages 1-2; <u>See</u> <u>Miller v. United States</u>, 131 Fed. Appx. 161 (11th Cir. 2005) (denying post-conviction motion and briefly recounting procedural history).  In March 2003, plaintiff sent a letter to FBI Headquarters requesting certain information from the FBI's files about himself.  <u>See</u> Hardy Dec. ¶ 5.  In addition to requesting non-exempt information about himself generally, plaintiff also specifically requested:  (1) arrest records; (2) investigation and/or investigatory reports; (3) reports or evidentiary and/or scientific information findings; (4) warrants, and/or detainers; and (5) final and closing investigation reports.  <u>Id</u>. & Exhibit A.  FBI promptly acknowledged plaintiff's FOIA request and assigned it a tracking number.  <u>Id</u>. ¶ 6 & Exhibit B.

In September 2004, after reviewing all of the responsive material, the FBI released to plaintiff 191 pages. <u>See</u> <u>id</u>. ¶ 7 & Exhibit C.  Of the 263 pages reviewed, 98 pages were released in full, 99 pages were partially released, 8 pages were denied and 58 pages were found to be duplicates of others. <u>See</u> <u>id</u>. ¶ 18 & n.2.  With respect to information it withheld from plaintiff, the FBI advised him that FOIA exemptions (b)(3), (b)(7)(C) and (b)(7)(D) applied and that all of the information was exempt from disclosure under the Privacy Act.  <u>Id</u>. ¶ 7 & Exhibit C.  The FBI also advised plaintiff of his right to appeal its determination to DOJ's Office of Information and Privacy ("OIP").  <u>Id</u>.  Plaintiff did so and OIP denied his appeal and affirmed the FBI's response in May, 2005.  <u>Id</u>. ¶¶ 8-10 & Exhibits D, E, and F.  Apparently dissatisfied with the FBI's response, plaintiff sought judicial review.  <u>See</u> Complaint.

## Argument

The Freedom of Information Act, 5 U.S.C. § 552, as amended, ("FOIA"), provides generally a statutory right of access to non-exempt information contained in certain government systems of records.  Accordingly, FOIA directs government agencies to disclose agency records to citizens who request them, unless the requested records fall within one of FOIA's nine enumerated exemptions.  In this case, defendant has justified nondisclosure of certain information contained in documents under four of the nine exemptions.

## I.    Standard for Summary Judgment

In a FOIA action, summary judgment is appropriate when, as here, the pleadings, together with the declarations, demonstrate that there is no genuine issue of material fact and that the moving parties are entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Alyeska Pipeline Serv. Co. v. EPA, 856 F.2d 309, 313 (D.C. Cir. 1988) (conflict in declarations alone insufficient to preclude entry of summary judgment); Weisberg v. Department of Justice, 627 F.2d 365, 368 (D.C. Cir. 1980).  The Court exercises de novo review over FOIA matters, and the burden is on the agency to justify all nondisclosures.  5 U.S.C. § 552(a)(4)(B); Department of Justice v. Reporters Comm. For Freedom of the Press, 489 U.S. 749, 755 (1989).  In carrying its burden of proof, agencies may rely on declarations of government officials which courts normally accord a presumption of expertise in FOIA as long as the declarations are sufficiently clear and detailed and submitted in good faith.  Oglesby v. Department of Army, 920 F.2d 57, 68 (D.C. Cir. 1990); see Hayden v. National Security Agency, 608 F.2d 1381, 1387 (D.C. Cir. 1979); Pharmaceutical Mfg. Ass'n v.

Weinberger, 411 F. Supp. 576, 578 (D.D.C. 1978). Once the Court determines that the declarations are sufficient, it need not inquire further.

In this case, defendant justifies its assertion of the relevant exemptions through both a general description of their application as well as by providing copies of the documents themselves with the precise exemptions marked using a coded index to permit the Court to review them efficiently. See Hardy Dec. ¶ 21 (explaining the coded index for the exemptions) & Exhibit G. Together with the detailed information concerning why each particular exemption was invoked, the Hardy Declaration and its exhibits contain "an adequate description of the records" and "a plain statement of the exemptions relied upon to withhold each record." NTEU v. Customs, 802 F.2d 525, 527 & n.9 (D.C. Cir. 1986); see also Vaughn v. Rosen, 484 F.2d 820, 828 (D.C. Cir. 1973), cert. denied, 415 U.S. 977 (1974). That review, as explained in more detail below, demonstrates that FBI has released all non-exempt information responsive to plaintiff's request.

## II.    FBI Performed A Thorough Search for Responsive Documents

In a FOIA case, the agency must establish that it has conducted a search reasonably calculated to uncover all responsive records. Weisberg v. Dept. of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984). The issue is not whether there might possibly exist other records responsive to the request, but whether the search for responsive records was reasonable. Id. The agency can establish the reasonableness of its search by affidavits if they are relatively detailed, non-conclusory, and made in good faith. Weisberg, 745 F.2d at 1485. Summary judgment is appropriate where the agency submits a "'reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive

materials (if such records exist) were searched'", unless "a review of the record raises substantial

doubt" about the adequacy of the search.  Valencia-Lucena v. United States Coast Guard, 180

F.3d 321, 326 (D.C. Cir. 1999), quoting Oglesby v. Dept. of Army, 920 F.2d 57, 68 (D.C. Cir.

1990).

     The FOIA does not require that an agency search every division or field office in

response to a FOIA request when responsive documents are likely to be located in one place.

Marks v. Department of Justice, 578 F.2d 261, 263 (9th Cir. 1978).  "When a request does not

specify the locations in which an agency should search, the agency has discretion to confine its

inquiry to a central filing system if additional searches are unlikely to produce any marginal

return; in other words, the agency generally need not 'search every record system.'"  Campbell v.

U.S. Department of Justice, 164 F.3d 20, 28 (D.C. Cir. 1998), quoting Oglesby, 920 F.2d at 68.

"The agency is not required to speculate about potential leads" to the location of responsive

documents, Kowalczyk v. Department of Justice, 73 F.3d 386, 389 (D.C. Cir. 1996), although it

is required "to follow through on obvious leads to discover requested documents."  Valencia-

Lucena, 180 F.3d at 325.

     The Hardy declaration plainly reveal that the FBI appropriately searched for documents in

response to plaintiff's request under FOIA.  Plaintiff's FOIA request definitively established that

the records he sought were connected to the FBI's investigation of his criminal activities and his

arrest, conviction, and incarceration.  See Hardy Dec., Exhibit A (plaintiff's FOIA request

includes an FBI number).  Accordingly, FBI searched its Central Records System through its

automated indices using plaintiff's name.  See id. ¶¶ 11-18 (describing FBI's records systems and

methods of information retrieval).  The search yielded one main file – 245-HQ-657.  In his

appeal to OIP, plaintiff did not raise any question concerning whether he was the same Charles

Miller who was the subject of the records he received from the FBI in response to his FOIA

request.  See Complaint, Exhibit D.

### III.    FBI's Withholdings Are Lawful and Appropriate

#### A.    Exemption 2

Exemption 2 under FOIA exempts from mandatory disclosure records that are "related

solely to the internal personnel rules and practices of an agency."  5 U.S.C. § 552(b)(2).  Not long

after FOIA was passed, the Supreme Court declared that Exemption 2 was intended to relieve

agencies of the burden of assembling and providing access to any "matter in which the public

could not reasonably be expected to have an interest" and matters of public interest "where

disclosure may risk circumvention of agency regulation."  Department of Air Force v. Rose, 425

U.S. 352, 369-70 (1976).  Subsequently, courts have approved two general categories of

withholdings under Exemption 2: (1) internal matters of a relatively trivial nature (sometimes

referred to as "low-2"); and (2) more substantial internal matters for which disclosure would risk

circumvention of a legal requirement (sometimes called "high-2").  Schiller v. NLRB, 964 F.2d

1205, 1207 (D.C. Cir. 1992); see Crooker v. ATF, 670 F.2d 1051 (D.C. Cir. 1981) (en banc)

(setting forth a two part test for high-2 material).

In this case, the FBI applied Exemption 2 on only four pages and withheld primarily

internal telephone numbers of its agents and other employees.  Hardy Dec. ¶¶ 24-26 & n.4.

Because these are internal numbers for which the public has no interest, the Court should

approve FBI's minimal assertion of Exemption 2 to protect such information.  See Schwaner v.

Department of the Air Force, 898 F.2d 793, 795 (D.C. Cir. 199); Edmonds v. Federal Bureau of Investigation, 272 F.Supp.2d 35, 51 (D.D.C. 2003).

**B.    Exemption 3**

Exemption 3 under FOIA allows agencies to withhold information prohibited from disclosure by another statute if one of the these two requirements are met: (a) the statute leaves no discretion as to the withholding; or (b) the statute establishes particular criteria for withholding or refers to particular types of materials to be withheld.  5 U.S.C. § 552(b)(3); see Irons & Sears v. Dann, 606 F.2d 1215, 1220 (D.C. Cir. 1979).  In this case, the FBI utilized Exemption 3 in conjunction with Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-20, to protect information gathered through a lawful wiretap.  See Hardy Dec. ¶¶ 27-28.  The information withheld consists of the number on which the tap operated, the targeted individuals or locations, as well as information derived from the wiretap. Id. ¶ 28.  This represents a proper use of Exemption 3.  See Lam Lek Chong v. Drug Enforcement Admin., 929 F.2d 729, 733 (D.C. Cir. 1991).  Therefore, the Court should approve of the FBI's withholdings under Exemption 3.

**C.    Exemption 6**

Exemption 6 permits the government to withhold all information about individuals  in "personnel and medical files and similar files" when the disclosure of such information "would constitute an unwarranted invasion of personal privacy."  See 5 U.S.C. §  552(b)(6).

The threshold issue to be determined in withholding information pursuant to Exemption 6 is whether the withheld material would fall within the categories of "personnel," "medical," or "similar" files.  Once, this threshold has been met, the agency must demonstrate that the

information involved is identifiable to a specific individual.  See Arieff v. United States Department of the Navy, 712 F.2d 1462, 1467-68 (D.C. Cir. 1983).

"The next step under Exemption 6 involves identifying the relevant privacy interests in non-disclosure and the public interests in disclosure, and determining 'whether, on balance, disclosure would work a clearly unwarranted invasion of personal privacy.'" Reed v. National Labor Relations Board, et al., 927 F.2d 1249, 1251 (D.C. Cir. 1991) (quoting National Ass'n of Retired Federal Employees v. Horner, 879 F.2d 873, 875 (D.C. Cir. 1989) cert. denied, 494 U.S. 1078 (1990).  "'The phrase 'clearly unwarranted invasion of personal privacy' enunciates a policy that will involve a balancing of interests between the protection of an individual's private affairs from unnecessary public scrutiny, and the preservation of the public's right to governmental information.'" Department of the Air Force v. Rose, 425 U.S. 352, 372 (1976).

In this matter the plaintiff has requested information about himself which is intertwined with information about other individuals who were connected with the FBI's investigation in some way.  Such information would be identifiable by an individual's name or other personal identifier and would apply to a particular individual.  Therefore, these documents would meet the threshold requirements for protection under Exemption 6.  See U.S. Department of State v. Washington Post Co., 456 U.S. 595, 602 (1982).  Additionally, the privacy interests of the third party subject is so substantial that merely confirming the existence of records would constitute an unwarranted invasion of personal privacy.  The plaintiff has neither provided Privacy Act waivers or proof of death for any other individuals, nor has he demonstrated the required public benefit in the release of the requested information.  See FLRA v. U.S. Department of Defense , 977 F.2d 545, 548 (11th Cir. 1992) (quoting U.S. Department of State v. Ray, 112 S.Ct. 541, 549

(1991) ("'Mere speculation about hypothetical public benefits cannot outweigh demonstrably significant invasion of privacy." )

The FBI has properly balanced the privacy interests of the third party and the public's right to ascertain the activities of their government, and applied Exemption 6. See Hardy Dec. ¶¶ 30-44 & Exhibit G.

**D.    Exemption 7**

FBI's records relating to the investigation and prosecution of plaintiff for conspiracy to import cocaine into the United States are clearly law enforcement records. See Hardy Dec. ¶¶ 45-46.

1.    Exemption 7(C)

Exemption 7(C) of the FOIA exempts from mandatory disclosure information compiled for law enforcement purposes when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). Last year the Supreme Court affirmed the broad scope of Exemption 7(C) in National Archives and Records Admin. v. Favish, 541 U.S. 157, 124 S. Ct. 1570 (2004) (upholding application of Exemption 7(C) and recognizing substantial privacy interests of family of president's deputy counsel who died of an apparent suicide outweighed public interest in disclosure of death-scene photographs taken by police investigators where FOIA requester's bare suspicion of deficiencies or misfeasance in Government's investigation was plainly insufficient to obtain disclosure). Because the primary mission of the FBI is law enforcement, its records are compiled for law enforcement purposes. See Hardy Dec. ¶¶ 45-47. When such a criminal law enforcement agency invokes Exemption 7, it "warrants greater deference than do like claims by other agencies." Keys v. U.S. Dep't of

Justice, 830 F.2d 337, 340 (D.C. Cir. 1987), citing Pratt, 673 F.2d at 418.  A criminal law

enforcement agency must simply show that "the nexus between the agency's activity . . . and its

law enforcement duties" is "'based on information sufficient to support at least "a colorable

claim" of its rationality.'"  Keys, 830 F.2d at 340, quoting Pratt, 673 F.2d at 421.  That threshold

is easily satisfied here because the subject of all of the records at issue is plaintiff's criminal

activity.

      Once an agency has demonstrated that the records were compiled for law enforcement

purposes, the Court must next consider whether the release of information withheld "could

reasonably be expected to constitute an unwarranted invasion of personal privacy."  This

determination necessitates a balancing of the individual's right to privacy against the public's

right of access to information in government files.  See, e.g., Favish, 124 S. Ct. at 1580-82; U.S.

Dep't of Justice v. Reporters Committee for Freedom of the Press, 489 U.S. 749, 776-80 (1989).

The Supreme Court has made clear that "whether disclosure of a private document under

Exemption 7(C) is warranted must turn on the nature of the requested document and its

relationship to 'the basic purpose of the Freedom of Information Act to open agency action to the

light of public scrutiny,' Department of Air Force v. Rose, [425 U.S. 352, 372 (1976)], rather

than on the particular purpose for which the document is being requested."  Reporter's

Committee, 489 U.S. at 772 (internal quotation marks omitted).  Information that does not

directly reveal the operations or activities of the government "falls outside the ambit of the public

interest that the FOIA was enacted to serve."  Id. at 775.  That public interest is to "shed[] light

on an agency's performance of its statutory duties."  Id. at 772.  The plaintiff bears the burden of

establishing that the "public interest in disclosure is both significant and compelling in order to

overcome legitimate privacy interests." <u>Perrone v. FBI</u>, 908 F. Supp. 24, 26 (D.D.C. 1995),

citing <u>Senate of Puerto Rico v. Department of Justice</u>, 823 F.2d 574, 588 (D.C. Cir. 1987).

Significantly, it is the "interest of the general public and not that of the private litigant"

that matters. <u>Brown v. FBI</u>, 658 F.2d 71, 75 (2d Cir.1981). "[T]he only public interest relevant

for purposes of Exemption 7(C) is one that focuses on 'the citizens' right to be informed about

what their government is up to.'" <u>Davis v. Department of Justice</u>, 968 F.2d 1276, 1282 (D.C.

Cir.1992) (quoting <u>Reporters Committee</u>, 489 U.S. at 773) (internal quotation marks omitted).

Further, courts have explicitly recognized that the privacy interests of third parties mentioned in

law enforcement files are "substantial," while "[t]he public interest in disclosure [of third-party

identities] is not just less substantial, it is insubstantial." <u>SafeCard Services, Inc. v. SEC</u>, 926

F.2d 1197, 1205 (D.C. Cir.1991). Our court of appeals has held "categorically" that "unless

access to names and addresses of private individuals appearing in files within the ambit of

Exemption 7(C) is necessary in order to confirm or refute compelling evidence that the agency is

engaged in illegal activity, such information is exempt from disclosure." <u>SafeCard Services</u>, 926

F.2d at 1206.

Exemption 7(C) consistently has been held to protect the identities of suspects and other

persons of investigatory interest who are identified in agency records in connection with law

enforcement investigations. <u>Reporters Committee</u>, 489 U.S. at, 780; <u>Computer Professionals for

Social Responsibility v. U.S. Secret Service</u>, 72 F.3d 897, 904 (D.C. Cir. 1996) (noting "'strong

interest of individuals, whether they be suspects, witnesses, or investigators, in not being

associated unwarrantedly with alleged criminal activity,'" quoting <u>Dunkelberger v. Dep't of

Justice</u>, 906 F.2d 779, 781 (D.C. Cir. 1990)). Indeed, an agency may categorically assert

Exemption 7(C) to protect the identities of witnesses or other persons mentioned in law enforcement files in such a way as to associate them with criminal activity.  Reporters Committee, 489 U.S. at 780; Nation Magazine v. U.S. Customs Serv., 71 F.3d 885, 893, 895-96 (D.C. Cir. 1995); SafeCard Services, 926 F.2d at 1206.

Likewise, the names of law enforcement officers who work on criminal investigations have traditionally been protected against release by Exemption 7(C).  Davis, 968 F.2d at 1281; Lesar v. U.S. Dep't of Justice, 636 F.2d 472, 487-88 (D.C. Cir. 1980).  Review of the Hardy Declaration and accompanying documents shows that many of the excisions made by FBI were to protect the identity of agents and employees of the agencies.  See Hardy Dec. ¶¶ 51-53. Similarly, individuals who provide information to law enforcement authorities, like the law enforcement personnel themselves, have protectable privacy interests in their anonymity. Computer Professionals for Social Responsibility, 72 F.3d at 904; Farese v. U.S. Department of Justice, 683 F. Supp. 273, 275 (D.D.C. 1987).  The Hardy Declaration and accompanying Exhibit G reflect clearly that Exemption 7(C) was appropriately applied in this case to protect names and personal information of individuals.  See also Hardy Dec. ¶¶ 50-64.

2.    Exemption 7(D)

Exemption 7(D) of the FOIA exempts from mandatory disclosure records or information compiled for law enforcement purposes if the disclosure:

> could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by a criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source.

5 U.S.C. § 552 (b)(7)(D).  Exemption 7(D)'s "paramount objective" "is to keep open the Government's channels of confidential information."  Birch v. United States Postal Serv., 803 F.2d 1206, 1212 (D.C. Cir. 1986).[1]

When invoking Exemption 7(D), an agency must demonstrate that the information was compiled for a law enforcement purpose, that an informant provided the information under either an express or an implied promise of confidentiality and, under the first clause of 7(D), that disclosure could reasonably be expected to disclose the source's identity.  United States Dep't of Justice v. Landano, 508 U.S. 165, 171-72 (1993).  If an individual has not been given an express promise of confidentiality, the agency may demonstrate that a source has been given an implied promise of confidentiality based upon the circumstances of the case.  Landano, 508 U.S. at 179-80.  The government may establish implied assurances of confidentiality by describing "generic circumstances in which an implied assurance of confidentiality fairly can be inferred."  Id. at 179.  However, once an agency establishes an express or implied promise of confidentiality, it is extremely difficult to overcome.  In order to do so, the plaintiff must come forward with "'absolutely solid evidence showing that the source . . . in a law enforcement investigation has manifested complete disregard for confidentiality.'"  Parker, 934 F.2d at 378, quoting Dow Jones

---

[1]  The term "confidential source" is very broad.  See, e.g., Gula v. Meese, 699 F. Supp. 956, 960 (D.D.C. 1988) (crime victims); Putnam v. United States Dep't of Justice, 873 F. Supp. 705, 716 (D.D.C. 1995) (medical personnel).  Moreover, the term "confidential" signifies that the information was provided in confidence or in trust, with the assurance that it would not be disclosed to others.  Dow Jones & Co. v. Department of Justice, 917 F.2d 571, 575-76 (D.C. Cir. 1990).  As such, "the question is not whether the requested document is of the type that the agency usually treats as confidential, but whether the particular source spoke with an understanding that the communication would remain confidential."  United States Dep't of Justice v. Landano, 508 U.S. 165, 172 (1993).

& Co. v. Department of Justice, 908 F.2d 1006, 1011 (D.C. Cir.), reh'g denied en banc, 917 F.2d 571 (D.C. Cir. 1990).

The Court in Landano stressed two factors to be considered in determining whether an implied promise of confidentiality exists:  "the nature of the crime investigated and the witness' relation to it."  Id. at 181.  In applying these factors, a key consideration is the potential for retaliation against the source.  Id. at 179-180; see also, Williams v. FBI, 69 F.3d 1155, 1159 (D.C. Cir. 1995) (implied assurance of confidentiality found where crimes investigated were serious and violent and sources were "sufficiently close to" targets of investigation); Hale v. Dept. of Justice, 99 F.3d 1025, 1031 (10th Cir. 1996).

Once the agency has demonstrated that information was given by a confidential informant, Exemption 7(D) applies not only to the name of the source, but to other information as well.  The first clause of Exemption 7(D) not only protects obviously identifying information, such as an informant's name and address, but also all information which would tend to reveal the source's identity.  Pollard v. FBI, 705 F.2d 1151, 1155 (9th Cir. 1983); see also Stone v. Defense Investigative Serv., 816 F. Supp. 782, 788 (D.D.C. 1993) (protecting "information so singular that to release it would likely identify the individual"); Doe v. U.S. Dept. of Justice, 790 F. Supp. 17, 21 (D.D.C. 1992) (when source is well known to individual investigated, agency must protect "even the most oblique indications of identity").  The second clause of Exemption 7(D) broadly protects all "information furnished by a confidential source" to law enforcement authorities in the course of a criminal or lawful national security intelligence investigation.

Importantly, and unlike some other FOIA exemptions, Exemption 7(D) does not require a balancing of public and private interests.  Parker v. Department of Justice, 934 F.2d 375, 380

- 14 -

(D.C. Cir. 1991) (the "judiciary is not to balance interests under Exemption 7(D)"); Jones v. FBI, 41 F.3d 238, 247 (6th Cir. 1994) ("[t]his exemption does not involve a balancing of public and private interests; if the source was confidential, the exemption may be claimed regardless of the public interest in disclosure"). Therefore, "once the agency receives information from a '"confidential source" during the course of a legitimate criminal investigation . . . all such information obtained from the confidential source receives protection.'" Parker, 934 F.2d at 380 (editing by the court, quoting Lesar v. United States Dep't of Justice, 636 F.2d 472, 492 & n. 114 (D.C. Cir. 1980)). Moreover, Exemption 7(D) continues to apply even after an investigation has been closed, Ortiz v. HHS, 70 F.3d 729, 733 (2d Cir. 1995), cert. denied, 517 U.S. 1136 (1996), and after the death of the source. Campbell v. Dept. of Justice, 164 F.3d 20, 33 n.14 (D.C. Cir. 1998).

The records produced to plaintiff show that FBI utilized confidential informants in the course of investigating plaintiff's criminal activities. Hardy Dec. ¶¶ 67-69. Disclosure of their identities would not only risk exposing the confidential informants to harassment and possible danger but also hamper law enforcement's ability to elicit cooperation from future confidential sources. Id. In this case, an implied promise of confidentiality should be applied in this case based on the plaintiff's convictions involving a conspiracy directed at international drug smuggling. Miller, 131 Fed. Appx. at 162; see, e.g., Parker v. Department of Justice, 934 F.2d 375, 378 (D.C. Cir. 1991); Dow Jones & Co. v. Department of Justice, 917 F.2d 571, 576 (D.C. Cir. 1990). Accordingly, FBI's withholding of certain information on one page relating to confidential informants and information provided by them under Exemption 7(D), in conjunction with Exemption 6, was lawful and proper.

- 15 -

       3.    <u>Exemption 7(E)</u>

Exemption 7(E) of the FOIA provides protection for all information compiled for law enforcement purposes when release "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E).

The first clause of Exemption 7(E) affords "categorical" protection for "techniques and procedures" used in law enforcement investigations or prosecutions. <u>Smith v. Bureau of Alcohol, Tobacco and Firearms</u>, 977 F.Supp. 496, 501 (D.D.C. 1997) (citing <u>Fisher v. United States Dep't of Justice</u>, 772 F. Supp. 7, 12 n. 9 (D.D.C. 1991), aff'd, 968 F.2d 92 (D.C. Cir. 1992)). While Exemption 7(E)'s protection is generally limited to techniques or procedures that are not well known to the public, even commonly known procedures may be protected from disclosure if the disclosure could reduce or nullify their effectiveness. <u>See</u>, <u>e.g.</u>, <u>Coleman v. FBI</u>, 13 F.Supp. 2d. 75, 83 (D.D.C. 1998) (applying 7(E) to behavioral science analysis and details of polygraph examination); <u>Perrone v. FBI</u>, 908 F.Supp. 24, 28 (D.D.C. 1995) (applying 7(E) to type of polygraph test, type of machine used, polygraph questions and sequence). In justifying the application of Exemption 7(E) the agency may describe the general nature of the technique while withholding the full details. <u>See</u> <u>e.g.</u> <u>Bowen v. FDA</u>, 925 F.2d 1225, 1228 (9th Cir. 1991). The agency is not, however, required to describe secret law enforcement techniques, even in general terms, if the description would disclose the very information sought to be withheld. <u>Coleman</u>, 13 F.Supp. 2d at 83; <u>Smith</u>, 977 F.Supp. at 501.

Exemption 7(E)'s second clause separately protects "guidelines for law enforcement investigations or prosecutions if [their] disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). Accordingly, this clause of the Exemption protects any "law enforcement guideline" that pertains to the prosecution or investigative stage of a law enforcement matter whenever its disclosure "could reasonably be expected to risk circumvention of the law." See, e.g., PHE, Inc. v. United States Dep't of Justice, 983 F.2d 248, 251 (D.C. Cir. 1993) ("release of FBI guidelines as to what sources of information are available to its agents might encourage violators to tamper with those sources of information and thus inhibit investigative efforts"); Jimenez v. FBI, 938 F.Supp. 21, 30 (D.D.C. 1996) (applying 7(E) to gang-validation criteria used by Bureau of Prisons to determine whether individual is gang member).

In this matter the FBI applied Exemption 7 (E) to withhold information on four documents known as FBI Form FD-515. See Hardy Dec. ¶ 71 & n.18. The FBI Form FD-515 identifies the investigative techniques utilized in an investigation and ratings concerning their effectiveness. Id. Disclosure of such sensitive information would risk circumvention of the law because it would alert people to the FBI's methods of investigation and allow people to modify their unlawful activities to conceal them more effectively. Accordingly, the FBI properly withheld this information under Exemption 7(E). PHE, Inc., 983 F.2d at 251.

### E.  FBI Has Released All Reasonably Segregable Non-Exempt Material to Plaintiff.

The FOIA requires that if a record contains information that is exempt from disclosure, any "reasonably segregable" information must be disclosed after deletion of the exempt

information unless the non-exempt portions are "inextricably intertwined with exempt portions."
5 U.S.C. § 552(b); Mead Data Cent., Inc. v. United States Dept. of the Air Force, 566 F.2d 242,
260 (D.C. Cir. 1977). The Court of Appeals for the District of Columbia Circuit has held that a
District Court considering a FOIA action has "an affirmative duty to consider the segregability
issue sua sponte." Trans-Pacific Policing Agreement v. United States Customs Serv., 177 F.3d
1022, 1028 (D.C. Cir. 1999). In the course of processing all documents relating to plaintiff's
request, FBI carefully evaluated each and every document to maximize the information released
and to be sure that any non-exempt information which could reasonably be segregated from
exempt information was released. See Hardy Dec. ¶¶ 75 & Exhibit G. Where a document was
withheld in its entirety, the FBI determined affirmatively that no meaningful portions could be
released without destroying the integrity of the documents as a whole. Id. ¶¶ 50, 73

In order to demonstrate that all reasonably segregable material has been released, the
agency must provide a "detailed justification" rather than "conclusory statements." Mead Data,
566 F.2d at 261. The agency is not, however, required "to provide such a detailed justification"
that the exempt material would effectively be disclosed. Id. All that is required is that the
government show "with 'reasonable specificity'" why a document cannot be further segregated.
Armstrong v. Executive Office of the President, 97 F.3d 575, 578-79 (D.C. Cir. 1996).
Moreover, the agency is not required to "commit significant time and resources to the separation
of disjointed words, phrases, or even sentences which taken separately or together have minimal
or no information content." Mead Data, 566 F.2d at 261, n.55.

In this case, a review of the Hardy Declaration and the processed documents themselves
(Exhibit G to the Hardy Dec.) confirms that FBI carefully reviewed the information and confirms

that all reasonably segregable non-exempt material has been released.  Hardy Dec. ¶ 73;

Armstrong, 97 F.3d at 578-79; Mead Data, 566 F.2d at 26.  Accordingly, the Court should find

that all reasonably segregable material which could be released to plaintiff has been released.

### Conclusion

For all of these reasons, there are no genuine issues of fact regarding FBI's processing of

plaintiff's FOIA request and defendant is entitled to judgment as a matter of law on these issues.

Dated: September 26, 2005.

Respectfully submitted,

/s/
KENNETH L. WAINSTEIN, D.C. BAR # 451058
United States Attorney

/s/
R. CRAIG LAWRENCE, D.C. BAR # 171538
Assistant United States Attorney

/s/
JANE M. LYONS, D.C. BAR # 451737
Assistant United States Attorney
Civil Division
555 4th Street, N.W. - Room E4822
Washington, D.C.  20530
(202) 514-7161

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 26th day of September, 2005, I placed a copy of the foregoing

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** in the first class United States

mail, postage prepaid, marked for delivery to:

> **CHARLES MILLER**
> Reg. No. 18123-053
> U.S. Penitentiary
> P.O. Box 150160
> Atlanta, Georgia   30315

/s/_____
Jane M. Lyons
Assistant United States Attorney

- 20 -