IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| CHARLES MILLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. Action No. 05-CV-1314 (HHK) |
| | ) | |
| FEDERAL BUREAU OF INVESTIGATION | ) | |
| | ) | |
| Defendant. | ) | |

## DECLARATION OF DAVID M. HARDY

I, David M. Hardy, declare as follows:

(1)      I am currently the Section Chief of the Record/Information Dissemination Section ("RIDS"), Records Management Division ("RMD"), at Federal Bureau of Investigation Headquarters ("FBIHQ") in Washington, D.C. I have held this position since August 1, 2002. Prior to my joining the FBI, from May 1, 2001 to July 31, 2002, I was the Assistant Judge Advocate General of the Navy for Civil Law. In that capacity, I had direct oversight of Freedom of Information Act ("FOIA") policy, procedures, appeals, and litigation for the Navy. From October 1, 1980 to April 30, 2001, I served as a Navy Judge Advocate at various commands and routinely worked with FOIA matters. I am also an attorney who has been licensed to practice law in the State of Texas since 1980.

(2)      In my current capacity as Section Chief, I supervise the Freedom of Information/Privacy Acts ("FOIPA") Litigation Support Unit. The statements contained in this

declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

(3)     Due to the nature of my official duties, I am familiar with the procedures followed by the FBI in responding to requests for information from its files pursuant to the provisions of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. § 552a. Specifically, I am aware of the treatment which has been afforded the FOIPA request of the plaintiff, Charles Miller which seeks access to records pertaining to himself.

(4)     The purpose of this declaration is to provide an explanation of the procedures used in the review and processing of these documents. In accordance with <u>Vaughn v. Rosen</u>, 484 F.2d 820 (D.C. Cir. 1973), this declaration provides a justification for the withholding records responsive to plaintiff's request pursuant to FOIA Exemptions 2, 3, 6, 7(C), 7(D) and 7(E), 5 U.S.C. §§ 552 (b)(2), (b)(3), (b)(6), (b)(7)(C), (b)(7)(D), and (b)(7)(E) and Exemption (j)(2) of the Privacy Act of 1974.

## <u>CORRESPONDENCE RELATING TO PLAINTIFF'S REQUEST</u>

(5)     By letter dated March 16, 2003, plaintiff submitted a FOPIA request to FBIHQ for information concerning himself. Plaintiff specifically cited "compiled file containing (1) arrest records, (2) investigation and/or investigatory reports, (3) reports or evidentiary and/or scientific information findings, (4) wants, warrants, and/or detainers, (5) final and closing investigation reports: and (6) any and/or all information, data or reports not otherwise exempt by statute." (<u>See</u> Exhibit A.)

-2-

(6)    By letter dated March 28, 2003, FBIHQ acknowledged receipt of plaintiff's FOIPA request and assigned it FOIPA number 974876.  (See Exhibit B.)

(7)    By letter dated September 8, 2004, the FBI released to plaintiff 191 pages of 253 pages reviewed. The FBI cited FOIA exemptions (b)(3), (b)(7)(C) and (b)(7)(D) as well as exemption j(2) of the Privacy Act.  Plaintiff was advised of the procedure to appeal to the Department Of Justice Office of Information and Privacy ("OIP").  A payment request of $9.10 for duplication fees accompanied this release.[1]  (See Exhibit C.)

(8)    By letter dated September 27, 2004, plaintiff submitted an appeal to DOJ OIP. (See Exhibit D.)

(9)    By letter dated November 8, 2004, OIP advised plaintiff that his administrative appeal had been received and was assigned number 05-0160.  (See Exhibit E.)

(10)    By letter dated May 23, 2005, OIP affirmed the FBI's decision.  OIP advised plaintiff of his right to seek judicial review.  (See Exhibit F.)

## EXPLANATION OF THE FBI'S CENTRAL RECORDS SYSTEM ("CRS")

(11)    The CRS used by the FBI enables it to maintain all information which it has acquired in the course of fulfilling mandated law enforcement responsibilities.  The records maintained in the CRS consist of administrative, applicant, criminal, personnel, and other files compiled for law enforcement purposes.  This system consists of a numerical sequence of files

---

[1] In the September 8, 2004 letter, the FBI erroneously charged plaintiff $9.10 for duplication.   This charge was inappropriate because the policy of the FBI is not to charge fees for releases up to 240 pages. The letter does not cite FOIA Exemptions 2, 6 and 7(E), although these exemptions are now being asserted and addressed in this declaration.

broken down according to subject matter. The subject matter of a file may relate to an individual, organization, company, publication, activity, or foreign intelligence matter. Certain records in this CRS are maintained at FBIHQ. Records that are pertinent to specific field offices of the FBI are maintained in those field offices.

(12)    Access to the CRS is obtained through the General Indices, which are arranged in alphabetical order. The General Indices consist of an index cards on various subjects matters that are searched either manually or through the automated indices.

(13)    The entries in the General Indices fall into two categories:

> (a) A "main" entry --- A "main" entry carries the name corresponding with a subject of a file contained in the CRS.
>
> (b) A "reference" entry --- "Reference" entries, sometimes called "cross- references," are generally only a mere mention or reference to an individual, organization, etc., contained in a document located in another "main" file.

(14)    Access to the CRS files in FBI field offices is also obtained through the General Indices (automated and manual), which are likewise arranged in alphabetical order, and consist of an index on various subjects, including the names of individuals and organizations. Searches made in the General indices to locate records concerning a particular subject, such as Charles Miller, are made by searching the subject requested in the index. FBI field offices have automated indexing functions.

(15)    On October 16, 1995, the Automated Case Support ("ACS") system was implemented for all Field Offices, Legal Attaches ("Legats"), and FBIHQ. Over 105 million records were converted from automated systems previously used by the FBI. ACS consists of

three integrated, yet separately functional, automated applications that support case management functions for all FBI investigative and administrative cases, which are:

(a)    Investigative Case Management ("ICM") - ICM provides the ability to open, assign, and close investigative and administrative cases as well as set, assign, and track leads. The Office of Origin ("OO"), which sets leads for itself and other divisions, as needed, opens a case. The offices that receive leads are referred to as Lead Offices ("LOs"), formerly known as Auxiliary Offices. When a case is opened, it is assigned a Universal Case File Number ("UCFN"), which is used by all FBI field offices, Legats, and FBIHQ that are conducting or assisting in the investigation. Using the file number responsive to plaintiff's request "245-HQ-657" as an example, an explanation of the UCFN is as follows: "245" indicates the classification for the specific type of investigation which in this instance is Organized Crime Drug Enforcement Task Force "OCDETF;" "HQ" is the abbreviated form used for the OO of the investigation, which in this case is FBIHQ; and "657" denotes the individual case file number for that particular investigation.

(b)    Electronic Case File ("ECF") - ECF serves as the central electronic repository for the FBI's official text-based documents. ECF supports the universal serial concept, where only the creator of a document serializes it into a file, providing single source entry of serials into the computerized system. All original serials are maintained in the OO case file.

(c)    Universal Index ("UNI") - UNI continues the universal concepts of ACS by providing a complete subject/case index to all investigative and administrative cases. Only the OO is required to index; however, the LOs may index additional information as needed. UNI, a

90.0 million record index, provides functions to index names to cases and to search names and

cases for the FBI's investigative and administrative cases.  Names of individuals or non-

individuals are recorded with identifying information, such as sex, race, event date, date or place

of birth, locality, social security number, or address, and/or date of event.

(16)    The decision to index names other than subjects, suspects, and victims is a

discretionary decision made by the investigative FBI Special Agent ("SA") assigned to work on

the investigation, the Supervisory SA ("SSA")  in the field office conducting the investigation,

and the SSA at FBIHQ.  The FBI does not index every name in its files; rather, it indexes only that

information considered pertinent, relevant, or essential for future retrieval.

(17)    Without a "key" (index) to this enormous amount of data, information essential to

ongoing investigations could not be readily retrieved.  The FBI files would thus be merely

archival in nature and could not be effectively used to serve the mandated mission of the FBI,

which is to investigate violations of federal criminal and national security statutes.  Therefore, the

General Indices to the CRS files are the means by which the FBI can determine what retrievable

information, if any, the FBI may have in its CRS files on a particular subject matter or individual,

i.e., Charles Miller.

## SEARCH FOR RECORDS RESPONSIVE TO PLAINTIFF'S REQUEST

(18)    In response to plaintiff's March 16, 2003 request to FBIHQ for records related to

Charles Miller, RIDS personnel conducted a search of the automated indices to CRS and located

one main file, 245-HQ-657, responsive to that request. This file was processed and released

to plaintiff on September 8, 2004 and consisted of 253 [2] pages reviewed and 191 pages released, with redactions taken pursuant to FOIA Exemptions 3, 7(C) and 7(D). Of the 253 pages reviewed, 98 pages were released in full, 99 pages were partially released, 8 pages were denied and 58 pages were duplicates of other pages. The responsive file contains information regarding a multi-subject drug investigation of numerous co-conspirators. Only those pages that pertain to the investigation of plaintiff were considered responsive to the FOIPA request.

## EXPLANATION OF FORMAT USED FOR THE JUSTIFICATION OF DELETED MATERIAL

(19)     All documents responsive to plaintiff's request were reviewed line by line to achieve maximum disclosure consistent with the FOIA and the Privacy Act. Copies of the released pages are attached hereto as Exhibit G. Each page of Exhibit G is consecutively numbered Miller 1 through Miller 263 in the lower right-hand corner. In addition, documents withheld in their entireties are replaced by "deleted page information sheets" which identify applicable FOIA exemptions relied upon to withhold the document in full, as well as the numbered pages that apply to those withheld documents. The exemptions asserted by the FBI as grounds for withholding documents in their entireties or in part are Exemption (j)(2) of the Privacy Act, and FOIA Exemptions 2, 3, 6, 7(C), 7(D) and 7(E).

---

[2] Six pages (Bates numbers 1, 2, 116, 117, 219 and 220) are of internal administrative nature only and are not part of the requested file. These pages were released in error. These six pages are included in Exhibit G but are not included in any of the discussion that follows. Based on a review for purposes of this declaration, ten additional responsive pages were located and have been included in Exhibit G.

(20)    Copies of the documents contain, on their face, coded categories of exemptions which detail the nature of the information withheld pursuant to FOIA. The coded categories are provided to aid the Court's and plaintiff's review of the FBI's explanations of FOIA exemptions used to withhold the protected material.

## MECHANICS OF USING THE CODED FORMAT
## WITH THE EXEMPTION CATEGORIES

(21)    A coded format is used in this case to assist the Court and plaintiff in reviewing the information withheld within the context of the documents themselves. Each instance of information withheld pursuant to the FOIA on the attached documents is accompanied by a coded designation that corresponds to the categories listed below. For example, if "(b)(7)(C)-1" appears on a document, the (b)(7)(C) designation refers to Exemption (b)(7)(C) of the FOIA concerning "Unwarranted Invasion of Privacy." The numerical designation (-1) following the "(b)(7)(C)" narrows the main category to the more specific subcategory, "Names of and/or Identifying Information Concerning FBI Special Agent and Support Personnel." Listed below are the categories used to explain the FOIA exemptions asserted to withhold protected material:

## SUMMARY OF JUSTIFICATION CATEGORIES

| **Category (b)(2)** | **Internal Agency Rules and Practices** |
| --- | --- |
| (b)(2) | Telephone Numbers of FBI Employees |
| **Category (b)(3)** | **Exempted from Disclosure by Statute** |
| (b)(3) | Title III Material |
| **Category (b)(6)** | **Clearly Unwarranted Invasion of Personal Privacy** |
| (b)(6)-1 | Names and/or Identifying Information of FBI Special Agents |

-8-

|  | ("SAs") and Support Personnel. [Cited in Conjunction with (b)(7)(C)-1] |
|---|---|
| (b)(6)-2 | Names and/or Identifying Information of non-FBI Federal Employees. [Cited in Conjunction with (b)(7)(C)-2] |
| (b)(6)-3 | Names and/or Identifying Information of Third Parties of Investigative Interest. [Cited in Conjunction with(b)(7)(C)-3] |
| (b)(6)-4 | Names and/or Identifying Information of Third Parties Interviewed by the FBI. [Cited in Conjunction with (b)(7)(C)-4 and (b)(7)(D)-1] |
| (b)(6)-5 | Names and/or Identifying Information of Third Parties Merely Mentioned. [Cited in conjunction with (b)(7)(C)-5] |
| (b)(6)-6 | Local Law Enforcement Personnel. [Cited in conjunction with (b)(7)(C)-6] |
| **Category (b)(7)(C)** | **Unwarranted Invasion of Personal Privacy** |
| (b)(7)(C)-1 | Names and/or Identifying Information Concerning FBI Special Agents ("SAs") and Support Personnel. [Cited in Conjunction with (b)(6)-1] |
| (b)(7)(C)-2 | Names and/or Identifying Information of non-Federal Employees. [Cited in Conjunction with (b)(6)-2] |
| (b)(7)(C)-3 | Names and/or Identifying Information of Third Parties of Investigative Interest. [Cited in Conjunction with (b)(6)-3] |
| (b)(7)(C)-4 | Names and/or Identifying Information of Third Parties Interviewed by the FBI. [Cited in Conjunction with (b)(6)-4 and (b)(7)(D)-1] |
| (b)(7)(C)-5 | Names and/or Identifying Information of Third Parties Merely Mentioned. [Cited in conjunction with (b)(6)-5] |
| (b)(7)(C)-6 | Other Law Enforcement Personnel. [Cited in conjunction with (b)(6)-6] |

| **Category (b)(7)(D)** | **Confidential Source Material** |
|---|---|
| (b)(7)(D) | Confidential Information Provided by a Confidential Informant. |
| **Category (b)(7)(E)** | **Investigative Techniques and Procedures** |
| (b)(7)(E) | FD-515: Effectiveness Ratings of Investigative Assistance or Techniques. |

## JUSTIFICATIONS FOR REDACTIONS

(22)    The paragraphs that follow explain the FBI's rationale for withholding each particular category of information under the specific exemptions described above.

## PRIVACY ACT EXEMPTION (j)(2)

(23)    The investigatory records at issue are part of the FBI's CRS and were compiled pursuant to 18 U.S.C. §§ 201, 202.  These files are exempt from disclosure pursuant to Exemption (j)(2) of the Privacy Act in conjunction with 28 C.F.R. § 16.96 (2003).  Although access to these records was denied under the Privacy Act, they have been reviewed under the access provisions of the FOIA to achieve maximum disclosure.

## EXEMPTION (b)(2)
## INTERNAL AGENCY RULES AND PRACTICES

(24)    5 U.S.C. § 552 (b)(2) exempts from disclosure "information related solely to the internal personnel rules and practices of an agency."  This exemption protects routine internal administrative matters and functions of the FBI which have no effect on the public at large. Disclosure of this information could impede the effectiveness of the FBI's internal law enforcement procedures.

-10-

## (b)(2)    Telephone Numbers of FBI Employees

(25)    Exemption (b)(2) has been asserted to protect seven business telephone numbers of FBI Special Agents ("SAs") and FBI support employees (including the direct dial telephone numbers of these employees). The telephone numbers relate directly to the internal practices of the FBI in that these numbers are used by these employees during the performance of their duties. Disclosure of the telephone numbers of FBI SAs and FBI support employees could subject these individuals to harassing phone calls which would disrupt official business (including impeding the ability of these employees to conduct and conclude law enforcement investigations in a timely manner).

(26)    Routine internal administrative information such as the numbers referenced above serve no public benefit and there is no indication that there is a genuine public interest in the disclosure of these numbers. Accordingly, because the phone numbers are solely related to the FBI's internal practices, because disclosure would not serve any public interest and because disclosure would impede the FBI's effectiveness, the FBI withheld this information pursuant to Exemption (b)(2).[3]

## EXEMPTION (b)(3)
## INFORMATION PROTECTED BY STATUTE

(27)    5 U.S.C. § 552(b)(3) exempts from disclosure information which is:

> specifically exempted from disclosure by statute . . . provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld.

---

[3] Exemption (b)(2) is cited on Miller pages 165, 169, 232 and 263.

### **(b)(3)    Title III Material**

(28)    Exemption (b)(3) has been asserted to withhold information relating to the lawful interception of communications by the FBI pursuant to Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-20. The withheld information consists of the number assigned to the interception, the targeted individuals and/or locations, and information derived from the Title III intercepts, which was further utilized in the investigation.[4]

### **EXEMPTION (b)(6)**
### **CLEARLY UNWARRANTED INVASION OF PERSONAL PRIVACY**

(29)    5 U.S.C. § 552(b)(6) exempts from disclosure:

> personnel and medical files and similar files when the disclosure of such information would constitute a clearly unwarranted invasion of personal privacy.

(30)    When asserting this exemption, each piece of information was scrutinized to determine the nature and strength of the privacy interest of any individual whose name and/or identifying information appeared in the documents at issue. In withholding the information, each individual's privacy interest was balanced against the public's interest in disclosure. In making this analysis, public interest information was determined to be information which would shed light on the FBI's performance of its statutory duties. In each instance where information was withheld, it was determined that individual privacy rights outweighed the public interest.

### **(b)(6)-1    Names and/or Identifying Information of FBI Special Agents and Support Personnel**

(31)    Exemption (b)(6)-1 has been asserted to protect the names and/or identifying information (three social security numbers, one phone number) of FBI SAs and support personnel

---

[4] Exemption (b)(3) is cited on Miller pages 6-7, 13, 39, 71-72, 154-157 and 161.

responsible for conducting, assisting with and/or supervising the investigation. FBI SAs are not assigned to investigations or administrative duties by choice. Publicity (adverse or otherwise) regarding any particular investigation to which they have been assigned may seriously prejudice their effectiveness in conducting other investigations. The privacy consideration is also to protect FBI SAs as individuals, from unnecessary, unofficial questioning as to the conduct of this and other investigations, whether or not currently employed by the FBI.

(32)    FBI SAs conduct official inquiries into various criminal and national security cases. They come into contact with all strata of society. They conduct searches and make arrests, both of which constitute reasonable, but nonetheless serious intrusions into peoples' lives. Many of these people carry grudges which last for years and they may seek any excuse to harass the SA deemed responsible for these intrusions. The publicity associated with the release of the SA's identity in connection with a particular law enforcement investigation could rekindle animosity toward the SA. Accordingly, FBI SAs and support employees referenced in the responsive records maintain a substantial privacy interest in not having their identities disclosed.

(33)    The FBI next examined the records at issue to determine whether there was any public interest that outweighed the substantial privacy interests of the FBI SAs and support employees. The FBI could not identify any discernible public interest. Ultimately the disclosure of the names of FBI SAs and support employees would not demonstrate or shed light on the operations and activities of the FBI. Thus, disclosure of the names of these employees would constitute a clearly unwarranted invasion of their personal privacy; therefore, the FBI withheld

-13-

these documents pursuant to Exemption 6. Exemption (b)(6)-1 has been cited in conjunction with (b)(7)(C)-1.[5]

### (b)(6)-2     Names and/or Identifying Information Pertaining to non-FBI Federal Employees

(34)     Exemption (b)(6)-2 has been asserted to protect the names and identifying information concerning DOJ employees. Specifically, the FBI withheld the names of DOJ employees from the U.S. Marshals Service. The relevant inquiry here is whether public access to this information would violate a viable privacy interest of the subjects of such information. Disclosure of this identifying information could subject these employees to unauthorized inquiries and harassment which would constitute a clearly unwarranted invasion of their personal privacy. The rationale for protecting non-FBI federal employees is the same as that for FBI employees. (See ¶¶ 51-53, supra.)

(35)     In balancing the legitimate privacy interest of these individuals against any public interest in disclosure, the FBI determined that there is a complete lack of any bona fide public interest in disclosing this information because it will not shed light on the operations and activities of the federal government. Accordingly, the FBI has properly withheld this information pursuant to Exemption (b)(6)-2. Exemption (b)(6)-2 has been invoked in conjunction with exemption (b)(7)(C)-2, **infra**.[6]

_____

[5] Exemption (b)(6)-1 is cited on Miller pages 8, 11, 13, 17, 23, 25, 27-28, 38, 42, 46-49, 64, 68, 70-72, 104, 107-108, 110, 112, 113, 120, 129, 137, 139, 154-156, 158, 165-166, 168-169, 171-181, 183, 185-187, 190-195, 215-218, 227-229, 231, 235, 243, 252 and 261-263.

[6] Exemption (b)(6)-2 is cited 24, 47 and 236.

-14-

**(b)(6)-3**      **Names and/or Identifying Information of Third Parties of Investigative Interest**

(36)      Exemption (b)(6)-3 has been asserted to protect the names and identifying information of third parties who were of investigative interest to the FBI. Specifically, the FBI withheld the names of and certain details surrounding the FBI's investigation. Being linked with any law enforcement investigation carries with it a strong negative connotation and a stigma. To release the identities of these third-party individuals as the subjects of law enforcement interest would not only constitute a clearly unwarranted invasion of their personal privacy, but could subject these individuals to harassment or embarrassment, or result in undue public attention. Accordingly, these individuals maintain a substantial privacy interest in not having their identities disclosed.

(37)      In considering the public interest in this information, the FBI determined that there is no public interest to be served by releasing the identities of these third-party individuals because this information will not shed light on the operations and activities of the FBI, but would only reveal sensitive law enforcement information concerning private citizens. Any such disclosure would constitute a clearly unwarranted invasion of their personal privacy.

(38)      In balancing the substantial privacy interest that these individuals have in this information against no legitimate public interest in its disclosure, the FBI properly withheld this information pursuant to Exemption (b)(6)-3. Exemption (b)(6)-3 has been invoked in conjunction with (b)(7)(C)-3.[7]

---

[7] Exemption (b)(6)-3 is cited on Miller pages 6-8, 11, 14, 17, 24-25, 38-39, 42, 46-49, 68, 70-72, 106-108, 115, 119, 128, 137, 139, 141-142, 154-156, 158-159, 161, 163-168, 171-176,

**(b)(6)-4      Names and /or Identifying Information of Third Parties Interviewed by the FBI**

(39)     Exemption (b)(6)-4 has been asserted to protect the names, identifying information and information provided by individuals who were interviewed by the FBI during the course of the FBI's investigation of plaintiff. In this case the FBI used FD-302 forms to record the results of interviews conducted by FBI SAs with third-party interviewees. The FD-302s responsive to plaintiff's request are essentially narrative accounts of those interviews. The FD-302's contain the personal identifying information of third-party interviewees such as their names, dates of birth and federal registry numbers, as well as additional identifying information. These third parties provided very specific, detailed information to the FBI in connection with this investigation.

(40)     The FBI found that information provided by individuals during an interview is one of the most productive investigative tools used by law enforcement agencies. The largest roadblock in successfully obtaining the desired information through an interview is fear by the interviewee that his/her identity will possibly be exposed and consequently they could be harassed, intimidated, or threatened with legal, economic reprisal or possible physical harm. To surmount these obstacles, persons interviewed by the FBI must be assured that their names and personal identifying information will be held in the strictest confidence. The continued access by the FBI to persons willing to honestly relate pertinent facts bearing upon a particular investigation far outweighs any benefit plaintiff might derive from being furnished the names of those who cooperated with the FBI.

---

181-182, 184-196, 198, 200, 215, 218, 222-223, 225, 227-229, 231, 236, 242, 251, 260 and 262.

(41)    Thus, the FBI has determined that the third party interviewees maintain a substantial privacy interest in not having their identities disclosed.  After identifying the substantial privacy interests of the third parties interviewed during the course of the FBI's investigation of plaintiff, the FBI next balanced their right to privacy against the public interest in the disclosure.  The FBI could not identify any discernible public interest in the disclosure.  Accordingly, the FBI concluded that because disclosing the detailed interviews would identify these third parties, disclosure would constitute a clearly unwarranted invasion of their personal privacy.  Accordingly, the FBI withheld this information pursuant to Exemption (b)(6)-4 in conjunction with (b)(7)(C)-4 and (b)(7)(D)-4.[8]

### (b)(6)-5    Names and/or Identifying Information of Third Parties Merely Mentioned

(42)    Exemption (b)(6)-5  has been asserted to withhold the names and identifying information of third parties who were merely mentioned during the course of the FBI's investigation of plaintiff.  The FBI interviewed individuals who mentioned the names of other third parties who were not necessarily of investigative interest to the FBI.

(43)    The third parties merely mentioned maintain strong privacy interests in not having their identities disclosed.  Disclosure of these third parties' names and identifying information in connection with the investigation of plaintiff carries a strong negative connotation.  In addition, disclosing the identities of these individuals could subject them to possible harassment and could focus derogatory inferences and suspicion on them.  Accordingly, the FBI has determined that

---

[8] Exemption (b)(6)-4 is cited on Miller pages 7, 14, 39, 106-107, 115, 134, 141-142, 154-156, 158-159, 161, 163-168, 171-176, 181-182, 184-194, 215, 222-223, 225 and 227-229.

-17-

these third parties maintain a substantial privacy interest in not having information about them disclosed. After identifying the substantial privacy interests these individuals maintain, the FBI balanced their right to privacy against the public interest in the disclosure. Because disclosure of the names of these third parties would not shed any light on the FBI's performance of its statutory duties, the FBI determined that there is no public interest in the disclosure, and that disclosure of the names of these third parties would constitute a clearly unwarranted invasion of their personal privacy. [9]

### (b)(6)-6         Local Law Enforcement Personnel

(44)    Exemption (b)(6)-6 has been asserted in conjunction with Exemption (b)(7)(C)-6 to withhold the names and telephone numbers of law enforcement personnel who assisted in the investigation of plaintiff. The FBI has released information provided by these personnel. Disclosure of these individuals' identities could seriously jeopardize his/her effectiveness in the performance of his/her official duties. There is no public interest to be served by releasing this information. Exemption (b)(6)-6 has been cited in conjunction with Exemption (b)(7)(C)-6.[10]

### EXEMPTION 7 THRESHOLD

(45)    Exemption 7 of the FOIA protects from mandatory disclosure records or information compiled for law enforcement purposes, but only to the extent that disclosure could reasonably be expected to cause one of the harms enumerated in the subparts of the exemption.

---

[9] Exemption (b)(6)-5 is cited on Miller pages 7 and 195.

[10] Exemption (b)(6)-6 is cited on Miller pages 173, 175, 181, 185, 187, 190-193, 198 and 202.

See 5 U.S.C. § 552(b)(7). In this case, the harm that could reasonably be expected to result from disclosure concerns invasion of personal privacy, revealing the identity of confidential sources and revealing sensitive law enforcement techniques.

(46)    Before an agency can invoke any of the harms enumerated in Exemption 7, it must first demonstrate that the records or information at issue were compiled for law enforcement purposes. Law enforcement agencies such as the FBI must demonstrate that the records at issue are related to the enforcement of federal laws and that the enforcement activity is within the law enforcement duty of that agency. These documents relate to an Organized Crime Drug Enforcement Task Force. Thus, there is no doubt that this investigation conducted pursuant to the Department of Justice (DOJ) Drug Control Strategic Plan, Section V.E.1.b.(3). The organized Crime Drug Enforcement Task Force (OCDETF) Program was created to mount a comprehensive attack against high-level drug trafficking, money laundering, and related enterprise through a multiagency approach. OCDETF's primary goal, as defined by the DOJ's OCDETF Program Guidelines, it to: identify, investigate, and prosecute members of high-level drug trafficking enterprises, and to dismantle the operations of those organization by:

(a)    Adding new federal resources for the investigation and prosecution of major drug trafficking organizations.

(b)    Fostering improved interagency coordination and cooperation in the investigation and prosecution of major drug cases.

Accordingly, the information readily meets the threshold requirement of Exemption 7. The remaining inquiry is whether its disclosure "could reasonably be expected to interfere with law enforcement proceedings," "constitute an unwarranted invasion of personal privacy," "disclose the

-19-

identity of a confidential source," "reveal law enforcement techniques," "or endanger the life of any individual."

(47)    Because the records meet the Exemption 7 threshold, the remaining inquiry is whether their disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy," or "disclose the identity of a confidential source,"or "risk circumvention of the law."

### EXEMPTION (b)(7)(C) UNWARRANTED INVASION OF PERSONAL PRIVACY

(48)    5 U.S.C. § 552 (b)(7)(C) exempts from disclosure:

(49)    "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy . . . ."

(50)    When withholding information from disclosure pursuant to this exemption, the FBI is required to balance the privacy interests of each individual mentioned in the documents against any public interest in disclosure. In asserting this exemption, each piece of information was scrutinized to determine the degree and nature of the privacy interest of any individual whose name and/or identifying data appears in the documents at issue. The public interest in disclosure of the information is determined by whether the information in question would inform plaintiff or the general public about the FBI's performance of its mission to enforce federal criminal and national security statutes and/or how the FBI actually conducts its internal operations and investigations. In this case, every effort has been made to release all segregable information to plaintiff without infringing upon the privacy rights of the individuals mentioned in these documents. As explained

below, there is no legitimate public interest in the information that has been withheld pursuant to Exemption 7 (C).

### (b)(7)(C)-1    Names and/or Identifying Information Concerning FBI SAs and Support Employees)

(51)    Exemption (b)(7)(C)-1 has been asserted to protect the names and/or identifying information of FBI SAs and support personnel responsible for conducting, assisting with and/or supervising the investigation. FBI SAs are not assigned to investigations or administrative duties by choice. Publicity (adverse or otherwise) regarding any particular investigation to which they have been assigned may seriously prejudice their effectiveness in conducting other investigations. The privacy consideration is also to protect FBI SAs as individuals, from unnecessary, unofficial questioning as to the conduct of this and other investigations, whether or not currently employed by the FBI.

(52)    FBI SAs conduct official inquiries into various criminal and national security cases. They come into contact with all strata of society. They conduct searches and make arrests, both which constitute reasonable, but nonetheless serious intrusions into peoples' lives. Many of these people carry grudges which last for years and they may seek any excuse to harass the SA deemed responsible for these intrusions. The publicity associated with the release of the SA's identity in connection with a particular law enforcement investigation could rekindle animosity toward the SA. Accordingly, FBI SAs maintain substantial privacy interests in not having their identities released. The public would not be served by the disclosure of the SAs identities. Thus, any disclosure would constitute an unwarranted invasion of personal privacy.

(53)    In addition, the FBI asserted Exemption 7(C)-1 to protect the names and telephone numbers of FBI support employees. These individuals were assigned to handle tasks relating to the investigation of plaintiff. These FBI employees were, and possibly still are, in a position to access information regarding official law enforcement investigations, and therefore could become the target of harassing inquiries for unauthorized access to investigations if their identities were disclosed. These individuals maintain a substantial privacy interest in not having their identities disclosed. Because there is no public interest to be served by releasing the employee's identity, any such disclosure could constitute an unwarranted invasion of personal privacy.[11]

### (b)(7)(C)-2    Names and/or Identifying Information of non-FBI Federal DOJ Employees

(54)    Exemption (b)(7)(C)-2 has been asserted to protect the names and identifying information concerning DOJ employees. Specifically, the FBI withheld the names of DOJ employees from the U.S. Marshal Office. The relevant inquiry here is whether public access to this information would violate a viable privacy interest of the employees. Disclosure of this identifying information could subject these employees to unauthorized inquiries and harassment which could constitute an unwarranted invasion of their personal privacy. The rationale for protecting the identities of non-FBI federal employees, is the same as protecting the identities of FBI employees.

(55)    In balancing the legitimate privacy interests of these individuals against any public interest in disclosure, the FBI determined that there is a complete lack of any bona fide public interest in disclosing this information because it will not shed light on the operations and activities

---

[11] Exemption (b)(7)(C)-1 is cited on Miller pages 8, 11, 13, 17, 23, 25, 27-28, 38, 42, 46-49, 64, 68, 70-72, 104, 107-108, 110, 112, 113, 120, 129, 137, 139, 154-156, 158, 165-166, 168-169, 171-181, 183, 185-187, 190-195, 215-218, 227-229, 231, 235, 243, 252 and 261-263.

-22-

of the federal government.  Accordingly, the FBI withheld this information pursuant to Exemption (b)(7)(C)-2 in conjunction with (b)(6)-2.[12]

### (b)(7)(C)-3    Names and Identifying Information of Third Parties of Investigative Interest

(56)    Exemption (b)(7)(C)-3 has been asserted to protect the names and/or identifying information of third parties who were of investigative interest to the FBI.  Specifically, the FBI withheld the names of and certain details surrounding the FBI's investigation.  Disclosing the identities of these individuals of investigative interest in connection with either a controversial death or possible witness tampering could subject them to harassment, embarrassment and could cause undue public attention.  Furthermore, disclosing the identities could threaten their physical safety. Accordingly, the FBI determined that these individuals maintain a substantial privacy interest in not having their identities disclosed.

(57)    In considering the public interest in this information, the FBI determined that there is no public interest to be served by releasing the identities of these third-party individuals because this information will not shed light on the operations and activities of the FBI, but would only reveal sensitive law enforcement information concerning private citizens.  Any such disclosure could constitute a clearly unwarranted invasion of their personal privacy.

(58)    In balancing the substantial privacy interest that these individuals have in this information against no legitimate public interest in its disclosure, the FBI properly withheld this

---

[12] Exemption (b)(7)(C)-2 is cited on Miller Pages 24, 47, and 236.

information pursuant to Exemption (b)(7)(C)-3. Exemption (b)(7)(C)-3 has been invoked in conjunction with (b)(6)-3.[13]

### (b)(7)(C)-4    Name and/or Identifying Information of Third Parties Interviewed by the FBI

(59)    Exemption (b)(7)(C)-4 has been asserted to protect the names, identifying information and information provided by individuals who were interviewed by the FBI during the course of the FBI's investigation of plaintiff. In this case the FBI used FD-302 forms to record the results of interviews conducted by FBI SAs with third-party interviewees. The FD-302s responsive to plaintiff's FOIPA request are essentially narrative accounts of those interviews. In this case the FD-302's contain personal identifying information of third-party interviewees such as their names, dates of birth and federal registry numbers, as well as additional identifying information. These third parties provided very specific, detailed information in connection with the investigation.

(60)    The FBI has found that information provided by individuals during an interview is one of the most productive investigative tools used by law enforcement agencies. The largest roadblock to successfully obtaining the desired information through an interview is fear by the interviewee that their identity will possibly be exposed and consequently they could be harassed, intimidated, or threatened with legal, economic reprisal or possible physical harm. In order to surmount these obstacles, persons interviewed by the FBI must be assured that their names and personal identifying information received from them will be held in the strictest confidence. The

---

[13] Exemption (b)(7)(C)-3 is cited on Miller pages 6-8, 11, 14, 17, 24-25, 38-39, 42, 46-49, 68, 70-72, 106-108, 115, 119, 128, 137, 139, 141-142, 154-156, 158-159, 161, 163-168, 171-176, 181-182, 184-196, 198, 200, 215, 218, 222-223, 225, 227-229, 231, 236, 242, 251, 260 and 262.

continued access by the FBI to persons willing to honestly relate pertinent facts bearing upon a particular investigation outweighs any benefit plaintiff might derive from being furnished the names of those who cooperated with the FBI.

(61)    Thus, the FBI has determined that the third party interviewees maintain a substantial privacy interest in not having their identities disclosed. After identifying the substantial privacy interests of the third parties interviewed during the course of the FBI's investigation of Plaintiff, the FBI next balanced their right to privacy against the public interest in the disclosure. The FBI could not identify any discernible public interest in the disclosure. Accordingly, the FBI has concluded that because disclosure of the detailed interviews would identify these third parties, disclosure could constitute an unwarranted invasion of their personal privacy. Accordingly, the FBI withheld this information pursuant to Exemption (b)(7)(C)-4 in conjunction with (b)(6)-4 and (b)(7)(D)-1.[14]

### (b)(7)(C)-5    Names and/or identifying Information of Third Parties Merely Mentioned

(62)    Exemption (b)(6)-5 has been asserted to withhold the names and identifying information of third parties who were merely mentioned during the course of the FBI's investigation of plaintiff. The FBI interviewed individuals who mentioned the names of other third parties who were not necessarily of investigative interest to the FBI.

(63)    The third parties merely mentioned maintain strong privacy interests in not having their identities disclosed. Disclosure of these third parties' names and identifying information in connection with the investigation carries a strong negative connotation. In addition, disclosing the

---

[14]  Exemption (b)(7)(C)-4 is cited on Miller pages 7, 14, 39, 106-107, 115, 134, 141-142, 154-156, 158-159, 161, 163-168, 171-176, 181-182, 184-194, 215, 222-223, 225 and 227-229.

identities of these individuals could subject them to possible harassment and could focus

derogatory inferences and suspicion on them. Accordingly, the FBI determined that these third

parties maintain a substantial privacy interest in not having information about them disclosed.

After identifying the substantial privacy interests these individuals maintain, the FBI balanced their

right to privacy against the public interest in the disclosure. Because disclosing the names of these

third parties would not shed any light on the operations and activities of the FBI. The FBI

determined that there is no public interest in the disclosure. Disclosing the names of these third

parties could constitute an unwarranted invasion of their personal privacy.[15]

### (b)(7)(C)-6     Local Law Enforcement Personnel

(64)     Exemption (b)(7)(C)-6 has been asserted in conjunction with Exemption (b)(6)-6 to

withhold the names and telephone numbers of law enforcement personnel who assisted in the

investigation of plaintiff. The FBI has released information provided by this personnel, however,

disclosure of these individuals' identities could seriously jeopardize his/her effectiveness in the

performance of his/her official duties. There is no public interest to be served by releasing this

information. Exemption (b)(7)(C)-6 has been cited in conjunction with Exemption (b)(6)-6.[16]

### EXEMPTION (b)(7)(D) – CONFIDENTIAL SOURCE INFORMATION

(65)     5 U.S.C. § 552 (b)(7)(D) provides protection for:

> records or information compiled for law enforcement purposes, but only to the
> extent that the production of law enforcement records or information...could
> reasonably be expected to disclose the identity of a confidential source, including a

---

[15] Exemption (b)(7)(C)-5 is cited on Miller pages 7 and 195.

[16] Exemption (b)(7)(C)-6 is cited on Miller pages 173, 175, 181, 185, 187, 190-193, 198
and 202.

State, local or foreign agency or authority of any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by a criminal law enforcement agency conducting a lawful national security intelligence investigation, information furnished by a confidential source.

(66)    Numerous informants report to the FBI on a regular basis and are informants in the common meaning of the term. Some of the sources provide information under an express assurance of confidentiality. Further, during the course of an investigation, other individuals are interviewed under circumstances from which an assurance of confidentiality can reasonably be inferred. These individuals are considered to be confidential sources since they furnish information only with the understanding that their identities and the information provided will not be divulged outside the FBI. Information provided by these individuals is singular in nature and, if released, could reveal the informant's identity.

(67)    During the course of the FBI's investigation of plaintiff, FBI SAs sought the assistance of numerous individuals to obtain information to aid its investigation. Information was provided by third parties under an implied grant of confidentiality.

(68)    These individuals were placed directly in positions that could subject them to acts of reprisal, harassment or an unnecessary amount of public attention if their cooperation with the FBI were disclosed. The FBI has learned through experience that individuals who provide information about subjects under investigation must be free to do so without fear of reprisal. Individuals who provide investigative information must be free to furnish that information to the FBI with complete candor and without the understandable tendency to hedge or withhold information out of fear that their names or their cooperation with the FBI will later be made public. Those who provide information in these investigations should be secure in the knowledge that their assistance and their

-27-

identities will be held in confidence. . The FBI asserted Exemption 7(D) to protect the identities of

and information provided by third parties that provided information to the FBI.

### (b)(7)(D)        Names and/or Information Provided by Third Parties to the FBI (Implied Confidentiality)

(69)     Exemption (b)(7)(D)[17] has been asserted in conjunction with (b)(6)-4 and

(b)(7)(C)-4 to protect the identity of, and information received from one individual who provided

information to the FBI during the course of the investigation about attempting to purchase drugs

from one of plaintiff's numerous co-conspirators. This individual provided information under

circumstances from which an assurance of confidentiality may be implied. Information provided

under such assurances of confidentiality warrants the protection of the provider's name as well as

the information provided, but only to the extent that the information would identify the individual.

In the processing of the records concerning plaintiff, the objective was to release as much

segregable information as possible without revealing the identity of this individual. Therefore, the

primary concern in processing became the protection of the interviewee's identity. If the identity

were released, it could subject him or her to embarrassment, humiliation or possible physical harm

not only for himself, but also for his family particularly since plaintiff has previously been arrested

on murder and illegal possession of firearms charges. Protection extends beyond the name of the

individual, and includes all other possible identifying information about the person.

---

[17]  Exemption (b)(7)(D) is cited on Miller page 7.

-28-

## EXEMPTION (b)(7)(E)
## INVESTIGATIVE TECHNIQUES AND PROCEDURES

(70)    5 U.S.C.§ 552 (b)(7)(E) provides for the withholding of:

> records or information complied for law enforcement purposes, but only to the
> extent that the production of such law enforcement records or information . . . (E)
> would disclose techniques and procedures for law enforcement investigations or
> prosecutions, or would disclose guidelines for law enforcement investigations or
> prosecutions if such disclosure could reasonably be expected to risk circumvention
> of the law.

### (b)(7)(E)   FD-515: Effectiveness Ratings of Investigative Assistance or Techniques Used in an Investigation

(71)    Exemption (b)(7)(E) has been asserted to protect certain information on FBI Form

FD-515, an investigative accomplishments report which contains information on the use and

effectiveness of various law enforcement investigative techniques.  The FD-515 form is submitted

by an investigative Special Agent at various stages in an investigation to report statistical results

such as indictments, arrests and convictions, or the recovery of stolen property.  Additionally, this

form contains a list of investigative techniques under the heading "Investigative Assistance of

Technique Used" which, if used during an investigation, are rated numerically to record

their effectiveness.  If the form contains a numerical rating adjacent to one or more of the listed

investigative techniques, all columns of rating spaces have been excised in order to preclude

disclosure of both the particular investigative techniques used in the investigation and the

effectiveness of the individual techniques.  The disclosure of this information could assist a

potential criminal in correlating the use of a particular investigative technique with its

corresponding effectiveness in the investigation and consequently could enable him to employ

countermeasures to neutralize the techniques.  The total list of investigative techniques set forth on

-29-

Form FD-515 remains visible to the reader and the columns of rating spaces are only excised when there is positive rating information adjacent to one or more techniques.[18]

## CONCLUSION

(72)    FBIHQ has processed and released all segregable information from documents requested by plaintiff. Plaintiff was advised that the documents in this request were maintained in a multiple subject investigation. It is the practice of the FBI to address only that portion specifically pertaining to the subject of the request. The FBI carefully examined the records at issue in this case and released 197 pages with carefully tailored redactions pursuant to FOIA Exemptions 2, 3, 6, 7(C), 7(D) and 7(E), 5 U.S.C.§ 552(b)(2), (b)(3), (b)(6), (b)(7)(C), (b)(7)(D) and (b)(7)(E). Further, the FBI carefully examined 66 pages withheld in their entireties and determined that the information withheld from plaintiff in this case, if disclosed, could reasonably be expected to impede the effectiveness of the FBI's internal law enforcement procedures, cause an unwarranted invasion of the privacy interests of third parties, disclose the identities of confidential sources or risk circumvention of the law. Accordingly, the FBI has released all reasonably segregable, nonexempt information at this time.[19]

---

[18]  Exemption (b)(7)(E)  is cited on Miller pages 104, 108, 139 and 225.

[19]  FOIPA request dated September 8, 2004 the FBI inadvertently released one page which has not been released at this time so as not to compound the error.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and that Exhibits A through G attached hereto are true and correct copies.

Executed this _____ 26th _____ day of September, 2005.


DAVID M. HARDY
Section Chief
Record/Information Dissemination Section
Records Management Division
Federal Bureau of Investigation
Washington, D.C.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CHARLES MILLER,                          )
                                         )
        Plaintiff,                       )
                                         )
                v.                       )     Civil Action Number 05-CV-01314 (HHK)
                                         )
FEDERAL BUREAU OF INVESTIGATION          )
                                         )
                                         )
        Defendants.                      )
                                         )

# EXHIBIT A

-32-

AGENCIES:

( )  United States Parole Commission
( x ) Federal Bureau of Investigation
( )  Immigration & Naturalization service
( )  Internal Revenue Service
( )  United States Attorney
( )  Treasury Department
( )  Bureau of Prisons
( )  State Agency
( )  Other: _____

DIRECT RESPONSE TO:

Name: Charles Miller
      aka Cecil Conners

Reg. No.:   18123-053

Unit:   D-2

Date:   March  16, 2003

TO:

Justibe Department
Federal Buareu of Investigation
Jo. Hoover Bldg.
9th & Pennsylvania Ave. NW
Washington, DC    20535

IDENTIFICATION OF REQUESTER:
NAME:  Charles Miller
ALIAS:    Cecil Conners
DATE OF BIRTH:  03-29-60
PLACE OF BIRTH:  St. Kitts W.I.
F.B.I. NO:  5702 62 DA3
SOC. SEC. NO:
OTHER:

RE:    FREEDOM OF INFORMATION ACT
       ( U.S.C. 552), PRIVACY ACT
       (5 U.S.C. 552a (d) (1)) Request:
       EXEMPTIONS (5 U.S.C. 552 (6) (C)
       (B) (7)), GENERAL ( U.S.C. 552 A
       (J) (2)) OR SPECIFIC ( U.S.C.
       552 a (k) (2)) NOT APPLICABLE TO
       THIS REQUEST.

Right Thumb          Right Index

RT                   RI

Dear Sir/Ms.

This letter will serve as my request pursuant to the provisions of the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 52a (d) (1), and the applicable State Statutes governing Freedom of Information Requests if state agency request, for full disclosure and release of all records and / or data contained in the files of your agency, and specifically under my name and / or an identifier assigned to my name. This request is sought specifically for amendment, deletion and / or expungment (5 U.S.C. 552a (d) (2) (a)) of records maintained by your Agency. The records sought but not limited to, is the compiled file containing (1) arrest records, (2) investigation and / or investigatory reports, (3) reports or evidentiary and / or scientific information findings, (4) wants, warrants, and / or detainers, (5) final and closing investigation reports: and (6) any and / or all information, data, or reports not otherwise exempt by statute (5 U.S.C. (66) (c) (b) (7)), (5 U.S.C. 52a (j) (2), (k) (2), or law, Tarlton v. Saxbe, 507 F.2d. 1116, 165 U.S. App. D.C. 293 (1974), Menard v. Saxbe, 498 F.2d. 1017, 162 U.S. App. D.C. 284 (1974). Sullivan v. Murphy, 478 F. 2d. 938, 156 U.S. App. D.C. 28 (1973). Your Agency is advised that investigation reports in totd are no longer accorded exempt status unless under the specific exemption noted, and only with reference to specific citation of authority, Paton v. La Prade, 524 F.2d 862, 868-69. (CA3 1975).

Examples of specific requests:

1).     Case #1  Rochester New York, Western District N.Y. Case #85-113t  U.S. Attorney Melcar Castro.(Narcotics case)

_____

_____

2).   Case #2 Miami Florida, Southern District Florida Case #95-896-CR.  U.S. Attorney  Russell Killinger.  Agent Larry Trye, D.E.A. and Robert Catterton, U.S. Customs Agent.

_____

3). Case #3  Shower Posse case. Southern District Florida. Agents: James Waterson, FATF; Jim Harter, FATF, Chuck Saradin, FATF. U.S. Attorney Andrew Reich and Bruce Udolf.  Requester granted immunity in 1989.

_____

4). _____

_____

_____

5). _____

_____

_____

_____

6). _____

_____

(2)

It is further requested that your agency in response to the material requested specifically inform me if and to whom the file and / or any material therein contained has been released to any identifiable individual or agency; their name, title, purpose and need for such information, the date of such release, the specific material that was released, the person within your Agency who released such information, and the specific reference to authority, statute or regulation, governing such release (5 U.S.C. 52a (d) (1)), Paton v. La Parde, 524 F.2d 862 (CA3 1975), Tarlton v. Saxbe, 507 F.2d. 1116, 165 U.S. App. D.C. 293 91974), of Linda R.S. v. Richard D., 410 U.S. 614, 93 S.Ct. 1146, 35 L.Ed. 2d. 536. (1973).

It is further requested that your Agency provide me with a copy of specific regulations or your Department as provided by statute (5 U.S.C. 552), so that compliance with such regulations is adhered to except as. otherwise provided by law (5 U.S.C. 701 et. seq.).

This request is made under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a) (together with the "alternate means of access"), to permit access to records on file with your Agency. If and for any reason it is determined that portions of the material and records sought is exempt by statute (5 U.S.C. (6) (c) (b) (7), 552a (j) (2), (k) (2) or by regulation (Menard v. Mitchell, 430 F.2d. 486, 139 U.S. App. D.C. 113 (1970), Nemetz v. Department of Treasury, 446 F. Supp. 102) I request specific citation to authority for such deletion. If it should be determined that any material be deemed CONFIDENTIAL due to identification of source, the permission is granted to Agency to delete source identification ONLY from the material for release. Paton v. LaParde, 524 F. 2d 862 (CA3 1975), Chastain v. Kelly, 510 F. 2d. 1232. I further agree to pay any reasonable costs, or file IN FORMA PAUPERIS if I am indigent, provided by statute or regulation of your agency, for search and copying of the material requested.

Pursuant to Title 5 U.S.C. 552 (6) (1) (1), it is noted that your Agency has ten (10) working days following receipt of this request to provide the information and material sought. Should any delay occur, it is requested that your Agency inform me of this delay as provided by Agency regulations. and the date as to when your Agency will be able to act upon request.

Yours truly,

Dated: 3-17-03

(3)

U.S. Department of Justice **Certification of Identity** 

Privacy Act Statement. In accordance with 28 CFR Section 16.41(d) personal data sufficient to identify the individuals submitting requests by mail under the Privacy Act of 1974, 5 U S C. Section 552a, is required. The purpose of this solicitation is to ensure that the records of individuals who are the subject of U.S. Department of Justice systems of records are not wrongfully disclosed by the Department. Failure to furnish this information will result in no action being taken on the request. False information on this form may subject the requester to criminal penalties under 18 U.S.C. Section 1001 and/or 5 U S.C. Section 552a(i)(3).

Public reporting burden for this collection of information is estimated to average 0.50 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Suggestions for reducing this burden may be submitted to Director, Facilities and Administrative Services Staff, Justice Management Division, U S. Department of Justice, Washington, DC 20530 and the Office of Information and Regulatory Affairs, Office of Management and Budget, Public Use Reports Project (1103-0016), Washington, DC 20503.

Full Name of Requester [1] _CHARLES MILLER A.K.A CECIL (ODINGTS_

Citizenship Status [2] _KITTITIAN_    Social Security Number [3] _____

Current Address _U.S.P ATLANTA GA 30315_

Date of Birth _03-29-60_    Place of Birth _ST-KITTS W.I_

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that I am the person named above, and I understand that any falsification of this statement is punishable under the provisions of 18 U S C. Section 1001 by a fine of not more than $10,000 or by imprisonment of not more than five years or both, and that requesting or obtaining any record(s) under false pretenses is punishable under the provisions of 5 U.S.C. 552a(i)(3) by a fine of not more than $5,000

Signature [4] _Charles Miller_    Date _3-14-05_

## OPTIONAL: Authorization to Release Information to Another Person

This form is also to be completed by a requester who is authorizing information relating to himself or herself to be released to another person.

Further, pursuant to 5 U.S.C. Section 552a(b), I authorize the U.S. Department of Justice to release any and all information relating to me to:

_____

**Print or Type Name**

[1] Name of individual who is the subject of the record sought.
[2] Individual submitting a request under the Privacy Act of 1974 must be either "a citizen of the United States or an Alien lawfully admitted for permanent residence," pursuant to 5 U.S.C. Section 552a(a)(2). Requests will be processed as Freedom of Information Act requests pursuant to 5 U.S.C. Section 552, rather than Privacy Act requests, for individuals who are not United States citizens or aliens lawfully admitted for permanent residence.
[3] Providing your social security number is voluntary. You are asked to provide your social security number only to facilitate the identification of records relating to you. Without your social security number, the Department may be unable to locate any or all records pertaining to you.
[4] Signature of individual who is the subject of the record sought

From CHARLES E. MILLER
#18123-053 U.S.P. ATLANTA
601 McDonough BLDO SE
ATLANTA GA
30315

**CERTIFIED MAIL**

7001 2510 0000 6268 2040

To: JUSTICE DEPARTMENT
FEDERAL BUAREU of INVESTIGATION
J HOOVER BLDG.
9th & PENNSYLVANIA AVE. NW
WASHINGTON, DC 20535

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CHARLES MILLER,                    )
                                   )
        Plaintiff,                 )
                                   )
            v.                     )     Civil Action Number 05-CV-01314 (HHK)
                                   )
FEDERAL BUREAU OF INVESTIGATION    )
                                   )
                                   )
        Defendants.                )
                                   )

# EXHIBIT B

-33-



**U.S. Department of Justice**

**Federal Bureau of Investigation**

*Washington, D.C. 20535*

MR CHARLES MILLER                                          MARCH 28, 2003
**18123-053
UNIT: D-2
601 MCDONOUGH BOULEVARD, SOUTHEAST
ATLANTA, GA 30315

                                        Request No.:  0974876- 000
                                        Subject:MILLER, CHARLES

Dear Requester:

☒     This acknowledges receipt of your Freedom of Information-Privacy Acts (FOIPA) request
        to the FBI. The FOIPA number listed above has been assigned to your request.

☐     For an accurate search of our records, please provide the complete name, alias, date and
        place of  birth for the subject of your request.  Any other specific data you could  provide
        such as prior  addresses; or employment information would also be helpful.  If your
        subject is deceased, please  include date and proof of death.

☐     To make sure information about you is not released to someone else, we require your
        notarized  signature or, in place of a notarized signature, a declaration pursuant to Title
        28, United States Code 1746.  For your convenience, the reverse side of this letter
        contains a form which may be used for this purpose.

☐     If you want the FBI's Criminal Justice Information System (CJIS) to perform a search for
        your arrest  record, please follow the enclosed instructions in Attorney General Order
        556-73.  You must submit fingerprint impressions so a comparison can be made  with the
        records kept by CJIS.  This is to make sure your information is not released to an
        unauthorized person.

☐     We are searching the indices to our central records system at FBI Headquarters for the
        information you requested, and will inform you of the results as soon as possible.

☐     Processing delays have been caused by the large number of requests received by the
        FOIPA.  We will process your request(s) as soon as possible.

        Your request has been assigned the number indicated above.  Please use this number in all
correspondence with us.  Your patience is appreciated.

                                        Sincerely yours,

                                        David M. Hardy
                                        Section Chief,
                                        Records Information
                                            and Dissemination Section
                                        Records Management Division

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHARLES MILLER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action Number 05-CV-01314 (HHK) |
| | ) |
| FEDERAL BUREAU OF INVESTIGATION | ) |
| | ) |
| | ) |
| Defendants. | ) |
| | ) |

# EXHIBIT C

U.S. Department of Justice

Federal Bureau of Investigation

*Washington, D.C. 20535*

September 8, 2004

MR CHARLES MILLER
**18123-053
UNIT: D-2
601 MCDONOUGH BOULEVARD, SOUTHEAST
ATLANTA, GA 30315

Subject: MILLER, CHARLES

FOIPA No. 0974876- 000

Dear Mr. Miller:

The enclosed documents were reviewed under the Freedom of Information/Privacy Acts (FOIPA), Title 5, United States Code, Section 552/552a. Deletions have been made to protect information which is exempt from disclosure, with the appropriate exemptions noted on the page next to the excision. In addition, a deleted page information sheet was inserted in the file to indicate where pages were withheld entirely. The exemptions used to withhold information are marked below and explained on the enclosed Form OPCA-16a:

| Section 552 | | Section 552a |
|---|---|---|
| ☐(b)(1) | ☐(b)(7)(A) | ☐(d)(5) |
| ☐(b)(2) | ☐(b)(7)(B) | ☒(j)(2) |
| ☒(b)(3)  FRCP rule 6e | ☒(b)(7)(C) | ☐(k)(1) |
| 18 USC 2515-20 | ☒(b)(7)(D) | ☐(k)(2) |
| | ☐(b)(7)(E) | ☐(k)(3) |
| | ☐(b)(7)(F) | ☐(k)(4) |
| ☐(b)(4) | ☐(b)(8) | ☐(k)(5) |
| ☐(b)(5) | ☐(b)(9) | ☐(k)(6) |
| ☐(b)(6) | | ☐(k)(7) |

253 **page(s)** were reviewed and 191 **page(s)** are being released.

☐  Document(s) were located which originated with, or contained information concerning other Government agency(ies) [OGA]. This information has been:

    ☐  referred to the OGA for review and direct response to you.

    ☐  referred to the OGA for consultation. The FBI will correspond with you regarding this information when the consultation is finished.

☒ You have the right to appeal any denials in this release. Appeals should be directed in writing to the Co-Director, Office of Information and Privacy, U.S. Department of Justice, Flag Building, Suite 570, Washington, D.C.  20530-0001 within sixty days from the date of this letter. The envelope and the letter should be clearly marked "Freedom of Information Appeal" or "Information Appeal." Please cite the FOIPA number assigned to your request so that it may be easily identified.

☐ The enclosed material is from the main investigative file(s) in which the subject(s) of your request was the focus of the investigation. Our search located additional references, in files relating to other individuals, or matters, which may or may not be about your subject(s). Our experience has

shown, when ident, references usually contain information similar to the information processed in the main file(s). Because of our significant backlog, we have given priority to processing only the main investigative file(s). If you want the references, you must submit a separate request for them in writing, and they will be reviewed at a later date, as time and resources permit.

☒ See additional information which follows.

Sincerely yours,

David M. Hardy
Section Chief
Record/Information
  Dissemination Section
Records Management Division

Enclosure(s)

Please be advised that the enclosed documents are maintained in a multiple subject investigation. In processing such a case pursuant to a FOIPA request, it is the practice of the FBI to address only that portion specifically requested by providing all information pertaining to you rather than that information pertaining to other subjects. Therefore, only those documents which contained substantive information concerning you were processed for release. Portions of sections one through three of file number 245 HQ-657 were processed and are enclosed.

As a means of releasing documents to you in a more timely and efficient manner, we are enclosing the requested material in advance of your payment. At this time, we are requesting payment in the amount of $9.10 for this release of 191 pages. Your check or money order should be made payable to the Federal Bureau of Investigation, and should include the FOIPA number assigned to this request.

Pursuant to Title 28, Code of Federal Regulations, Section 16.11 and 16.49, there is a fee of ten cents per page for duplication. No fees are assessed for the first 100 pages.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CHARLES MILLER,                      )
                                     )
        Plaintiff,                   )
                                     )
            v.                       )    Civil Action Number 05-CV-01314 (HHK)
                                     )
FEDERAL BUREAU OF INVESTIGATION      )
                                     )
                                     )
        Defendants.                  )
                                     )

# EXHIBIT D

-35-

September 27, 2004


Charles Miller
#18123-053
U.S. Penitentiary, P.O. Box 150160
Atlanta, Ga. 30315


Co-Director, Office of FOIA
U.S. Dept. of Justice
FLAG Bldg. Suite 570
Washington, D.C. 20530-001

RE: FOIA "APPEAL"  Case No. 0974876-000 (FBI)

OFFICE OF INFORMATION
AND PRIVACY

OCT 1 8 2004

RECEIVED

Co-Director:

    This letter will serve as my administrative appeal in the
above referrenced FOIA request to Federal Bureau of Investigation.

    The FBI's response to my FOIA request contains blank pages
completely redacted except for one or two words, and the FBI has
used, certain exemptions as pretext to support non-disclosure
of documents that I am entitled to under 5 U.S.C. 552 and 552(a).

    Thank you for your time and concern in this matter.


                                    /s/ Charles Miller
                                    Charles Miller




Copy to:  File


Cert/ Mail Recpt. No. 7001 2510 0000 6266 5784

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CHARLES MILLER,                          )
                                         )
        Plaintiff,                       )
                                         )
                v.                       )        Civil Action Number 05-CV-01314 (HHK)
                                         )
FEDERAL BUREAU OF INVESTIGATION          )
                                         )
                                         )
        Defendants.                      )
                                         )

# EXHIBIT E

-36-



**U.S. Department of Justice**

Office of Information and Privacy

Telephone (202) 514-3642

*Washington, D C 20530*

NOV - 2 2004

Mr Charles Miller
Register No 18123-053
United States Penitentiary
P.O Box 150160
Atlanta, GA 30315

    Re    Request No 974876

Dear Mr Miller

    This is to advise you that your administrative appeal from the action of the Federal Bureau of Investigation on your request for information from the files of the Department of Justice was received by this Office on October 18, 2004

    The Office of Information and Privacy, which has the responsibility of adjudicating such appeals, has a substantial backlog of pending appeals received prior to yours   In an attempt to afford each appellant equal and impartial treatment, we have adopted a general practice of assigning appeals in the approximate order of receipt   Your appeal has been assigned number **05-0160**   Please mention this number in any future correspondence to this Office regarding this matter

    We will notify you of the decision on your appeal as soon as we can   The necessity of this delay is regretted and your continuing courtesy is appreciated

                Sincerely,

                Priscilla Jones
                Administrative Specialist

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CHARLES MILLER,                          )
                                         )
        Plaintiff,                       )
                                         )
            v.                           )    Civil Action Number 05-CV-01314 (HHK)
                                         )
FEDERAL BUREAU OF INVESTIGATION          )
                                         )
                                         )
        Defendants.                      )
                                         )

# EXHIBIT F

-37-



**U.S. Department of Justice**

Office of Information and Privacy

_Telephone: (202) 514-3642_            _Washington, D.C. 20530_

**MAY 2 3 2005**

Mr. Charles Miller
Register No. 18123-053
United States Penitentiary       Re:   Appeal No. 05-0160
Post Office Box 150160                Request No. 974876
Atlanta, GA 30315                   RLH:ADW:MJS

Dear Mr. Miller:

     You appealed from the action of the Headquarters Office of the Federal Bureau of Investigation on your request for access to records concerning you.

     After carefully considering your appeal, I have decided to affirm the FBI's action on your request.

     You are the subject of one Headquarters Office file entitled Organized Crime Drug Enforcement Task Force.

     These records are exempt from the access provision of the Privacy Act of 1974 pursuant to 5 U.S.C. § 552a(j)(2). <u>See</u> 28 C.F.R. § 16.96 (2004). Because these records are not available to you under the Privacy Act, your request has been reviewed under the Freedom of Information Act in order to afford you the greatest possible access to the records you requested.

     The FBI properly withheld certain information that is protected from disclosure under the FOIA pursuant to:

     5 U.S.C. § 552(b)(3), which concerns matters specifically exempted from release by statute (in this instance, 18 U.S.C. § 2515-20, Title III of the Omnibus Crime Control and Safe Streets Act, which pertains to wiretaps);

     5 U.S.C. § 552(b)(7)(C), which concerns records or information compiled for law enforcement purposes, the release of which could reasonably be expected to

-2-

constitute an unwarranted invasion of the personal privacy
of third parties (including, in this instance, the names
of FBI special agents and employees);

5 U.S.C. § 552(b)(7)(D), which concerns records or
information compiled for law enforcement purposes, the
release of which could reasonably be expected to disclose
the identities of confidential sources and information
furnished by such sources; and

5 U.S.C. § 552(b)(7)(E), which concerns records or
information compiled for law enforcement purposes, the
release of which would disclose techniques and procedures
for law enforcement investigations or prosecutions.

I have determined that this information is not appropriate for
discretionary release.

If you are dissatisfied with my action on your appeal, you may
seek judicial review in accordance with 5 U.S.C. § 552(a)(4)(B).

                              Sincerely,


                              Richard L. Huff
                              Co-Director