

RLB:KAM:ec
F. #8501036
cv/5/467

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA,

               Plaintiff,

    - against -

UNITED STATES CURRENCY IN THE
SUM OF $159,287.82 (ONE HUNDRED
FIFTY NINE THOUSAND TWO HUNDRED
AND EIGHTY SEVEN DOLLARS AND
EIGHTY-TWO CENTS), MORE OR LESS,
AND ARTICLES OF JEWELRY WITH AN
APPRAISED VALUE OF $48,780.00,
MORE OR LESS,

               Defendants.

- - - - - - - - - - - - - - - - -X

**VERIFIED COMPLAINT
IN REM**

Civil Action
No.

        Plaintiff UNITED STATES OF AMERICA, by its
attorney, RAYMOND J. DEARIE, United States Attorney for the
Eastern District of New York, KIYO A. MATSUMOTO, Assistant
United States Attorney, of counsel, complaining of the
defendants, alleges the following upon information and
belief:

        1.   Jurisdiction over this action is vested in
this Court pursuant to 28 U.S.C. §§ 1345 and 1355.

        2.   Plaintiff brings this action is order to
forfeit and condemn to the use of the United States of

MILLER-131

2.

America the defendant United States currency and articles
of jewelry, in accordance with the provisions of 21 U.S.C.
§ 881.

3.  On or about February 11, 1985, the defendant
$159,287.82 in United States currency and the defendant
articles of jewelry (appraised value of $48,780.00) were
seized by agents of the Federal Bureau of Investigation at
Room 526 of the Holiday Inn located at Ditmars Boulevard in
Queens, New York.

4.  The defendant currency and the defendant
jewelry is in the custody and control of the United States
Attorney General at the Federal Bureau of Investigation, 26
Federal Plaza, New York, New York.

### FIRST CAUSE OF ACTION

5.  Plaintiff repeats and realleges each and
every allegation set forth in paragraphs 1 through 4 above.

6.  On information and belief, the defendant
United States currency and the defendant jewelry was
furnished, employed or used, intended to be furnished,
employed or used in facilitation of, or the exchange,
purchase, possession, manufacture, sale, transportation, or
distribution of a controlled substance, in violation of 21
U.S.C. § 841, et seq.

7.  As a result of the foregoing, the defendant
currency and the defendant jewelry are liable to

· MILLER-132

3.

condemnation and forfeiture to the United States of America for its use, in accordance with the provisions of 21 U.S.C. § 881(a)(6).

### SECOND CAUSE OF ACTION

8.  Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 4 above.

9.  On information and belief, the defendant currency and the defendant jewelry are the proceeds of and are directly traceable to the possession, sale, manufacture, exchange, transportation or distribution of a controlled substance, which possession, sale, manufacture, exchange, transportation, or distribution was in violation of 21 U.S.C. § 841 et seq.

10.  As a result of the foregoing, the defendant currency and the defendant jewelry are liable to condemnation and forfeiture to the United States of America for its use in accordance with the provisions of 21 U.S.C. § 881(a)(6).

WHEREFORE, the plaintiff requests that a warrant of this Court issue for the arrest of the said defendant United States currency and the defendant articles of jewelry, that due notice of these proceedings be given to all interested persons, that the defendants be forfeited and condemned to the use of the United States of America,

MILLER-133

4.

and that plaintiff be awarded its costs and disbursements

in this action.

Dated: Brooklyn, New York
      May   **29**   , 1985

                    RAYMOND J. DEARIE
                    United States Attorney
                    Eastern District of New York
                    Attorney for the Plaintiff
                    225 Cadman Plaza East
                    Brooklyn, New York  11201

      By: _Kiyo A. Matsumoto_____
          KIYO A. MATSUMOTO
          Assistant U.S. Attorney
          (718) 330-7967

MILLER-134

5.

## VERIFICATION

KIYO A. MATSUMOTO verifies that she is the Assistant United States Attorney in charge of the within action; that she has read the foregoing complaint and knows the contents thereof, and that the same are true of her own knowledge, except as to those matters therein stated as alleged on information and belief, and as to those matters, she believes them to be true.  The information contained herein has been obtained from the official files of the United States of America.

I verify under penalty of perjury that the foregoing is true and correct.

Dated:  Brooklyn, New York
       May  **29** , 1985

*Kiyo A. Matsumoto*
KIYO A. MATSUMOTO
Assistant U. S. Attorney

MILLER-135

SIR:

PLEASE TAKE NOTICE that the within will be presented for settlement and signature to the Clerk of the United States District Court in his office at the U.S. Courthouse, 225 Cadman Plaza East, Brooklyn, New York, on the ____ day of _____, 19___, at 10:30 o'clock in the forenoon.

Dated: Brooklyn New York,

_____ , 19___

United States Attorney,
Attorney for _____

To:

_____
_____
_____

Attorney for _____

▬▬▬▬

SIR:

PLEASE TAKE NOTICE that the within is a true copy of _____ duly entered herein on the ____ day of _____ , in the office of the Clerk of the Eastern District of New York,

Dated: Brooklyn, New York

_____ , 19___

United States Attorney,
Attorney for _____

To:

_____
_____
_____

Attorney for _____

---

Civil ____ Action    No. _____

UNITED STATES DISTRICT COURT
Eastern District of New York

UNITED STATES OF AMERICA,

Plaintiff,

– Against –

UNITED STATES CURRENCY IN THE SUM OF $159,287.82, et al.,

Defendants.

VERIFIED COMPLAINT IN REM

RAYMOND J. DEARIE

United States Attorney,
Attorney for ___Plaintiff___
Office and Post Office Address,
United States Courthouse
225 Cadman Plaza East
Brooklyn, New York 11201

Due service of a copy of the within _____ is hereby admitted.

Dated: _____ , 19___

Attorney for _____

MILLER-136

KIYO A. MATSUMOTO, AUSA  330-7967

## FEDERAL BUREAU OF INVESTIGATION
### FOIPA
### DELETED PAGE INFORMATION SHEET

___1___  Page(s) withheld entirely at this location in the file. One or more of the following statements, where indicated, explain this deletion.

☒  Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

| Section 552 | | Section 552a |
|---|---|---|
| ☐ (b)(1) | ☐ (b)(7)(A) | ☐ (d)(5) |
| ☐ (b)(2) | ☐ (b)(7)(B) | ☐ (j)(2) |
| ☐ (b)(3) | ☒ (b)(7)(C) –1,3,4 | ☐ (k)(1) |
| | ☐ (b)(7)(D) | ☐ (k)(2) |
| _____ | ☐ (b)(7)(E) | ☐ (k)(3) |
| _____ | ☐ (b)(7)(F) | ☐ (k)(4) |
| _____ | ☐ (b)(8) | ☐ (k)(5) |
| ☐ (b)(4) | ☐ (b)(9) | ☐ (k)(6) |
| ☐ (b)(5) | | ☐ (k)(7) |
| ☒ (b)(6) –1,3,4 | | |

☐  Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☐  Documents originated with another Government agency(ies). These documents were referred to that agency(ies) for review and direct response to you.

_____  Page(s) contain information furnished by another Government agency(ies). You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____  Page(s) withheld inasmuch as a final release determination has not been made. You will be advised as to the disposition at a later date.

_____  Page(s) were not considered for release as they are duplicative of _____

_____  Page(s) withheld for the following reason(s):_____
_____
_____

☐  The following number is to be used for reference regarding these pages:
_____

XXXXXXXXXXXXXXXXX
X    Deleted Page(s)    X
X    No Duplication Fee    X
X    For this page    X
XXXXXXXXXXXXXXXXX

XXXXXX
XXXXXX
XXXXXX

Miller 137

FBI/DOJ

PAGE TWO    BU 245D-58    UNCLAS E F T O

SECTION 84L(A) (1).

AUSA MELCHOR E. CASTRO, ROCHESTER, NEW YORK, ANTICIPATES

TRIAL PROCEEDINGS TO INITIATE SEPTEMBER, 1985.

BT

MILLER-138

2

7/18/85

FD-515 (Rev. 2-27-84)
**ACCOMPLISHMENT REPORT (Effective 10/1/84)**
*(Submit within 30 days from date of accomplishment)*

TO:  **DIRECTOR, FBI**

FROM:  **SAC, BUFFALO**

SUBJECT:

ET AL
NARCOTICS MATTER – OCDE
TASK FORCE
OO:  BH
  b6 -1, -3
  b7C -1, -3
  b7E

aka

| Bureau File Number |
|---|
| 245D-58 |

Field Office File Number

3665

Squad or RA Number

☒ X if a joint operation with another Federal, State or Local LE agency **

☐ X if case involves corruption of a public official (Federal, State or Local).

**Investigative Assistance or Technique Used**

Were any of the investigating assistance listed below used in connection with accomplishment being claimed?  ☐ No  ☒ Yes - If Yes, rate each used as follows:
  1 = Used, but did not help *
  2 = Helped, but only minimally
  3 = Helped, substantially
  4 = Absolutely essential

| | Rating | | Rating | | Rating | | |
|---|---|---|---|---|---|---|---|
| 1. Asstg Tech Assistance | | 6. ELSUR Title III | | 11. Lab. Div. Field Support | | 17. Surveil. | |
| 2. Aircraft Assistance | | 7. Hypnosis Assistance | | 12. Pen Registers. | | 18. SWAT Team Action | |
| 3. Computer Assistance | | 8. Ident Div Assistance | | 13. Photographic Coverage | | 19. Telephone Toll Records | |
| 4. Consensual Monitoring | | 9. Informant Information | | 14. Polygraph Assistance | | 20. Undercover Operation | |
| 5. ELSUR FISC | | 10. Lab Div Exams | | 15. Search Warrant Executed | | 21. Visual Invest Analysis (VIA) | |

3. Show Money Usage   Rating

**A. Pre Judicial Process** (Number of subjects)

| | Complaints | Informations | Indictments |
|---|---|---|---|
| | | | 9 |

**B. Arrests, Locates, Summonses & Subpoenas** (No. of subjects)

| | Subject Priority (See Reverse) | | |
|---|---|---|---|
| | A | B | C. |
| FBI Arrests | | | |
| FBI Locates | | | |

Number of Subjects of FBI Arrests Who Physically Resisted _____

Number of Subjects of FBI Arrests Who Were Armed _____

Criminal Summons _____   Subpoenas Served _____

**D. Recoveries, Restitutions, Court Ordered Forfeitures or Potential Economic Loss Prevented (PELP)**

| Property or PELP Type Code | Recoveries | Restitutions | Court Ordered Forfeitures | Potential Economic Loss Prevented |
|---|---|---|---|---|
| | $ | $ | $ | $ |
| | $ | $ | $ | $ |
| | $ | $ | $ | $ |
| | $ | $ | $ | $ |

**C. Release of Hostages or Children Located:** (Number of Hostages or Children Located)

Hostages Held By Terrorists _____ ; All Other Hostage Situations _____

Missing or Kidnapped Children Located _____

**E. Civil Matters**

Amount of Suit

Settlement or Award

| Government Defendant | Government Plaintiff |
|---|---|
| $ | $ |
| $ | $ |

Enter AFA Payment Here

**F. Final Judicial Process:**  Judicial District

District   State   Dates

Conviction (or Final Judicial Process) Date   Sentence Date

**Subject 1 - Name -**   Subject's Description Code* -

☐ Pretrial
☐ Diversion
☐ Dismissal
☐ Acquittal

-Convictions-
Enter conviction and sentence data in space at right.   If more than four sections are involved, limit to the four most relevant.
Do not report conviction until sentence has been pronounced.

☐ Felony
☐ Misde-
☐ Plea
☐ Trial

| Conviction | | |
|---|---|---|
| Title | Section | Counts |
| | | |

| | Combined Sentence | | | | |
|---|---|---|---|---|---|
| In-Jail Term | | Suspended | | Probation | |
| Yrs | Mos | Yrs | Mos | Yrs | Mos | Total Fines |
| | | | | | | $ |

Consecutive Sentences - Add all consecutive sentences together.
Concurrent Sentences - Enter longest single term.  Do not add concurrent sentences together. If the sentence is 10 years in custody of the Atty Gen. but 8 years are suspended, the In-Jail term would be 2 years.

**Subject 2 - Name -**   Subject's Description Code* -

☐ Pretrial
☐ Diversion
☐ Dismissal
☐ Acquittal

-Convictions-
Enter conviction and sentence data in space at right.   If more than four sections are involved, limit to the four most relevant.
Do not report conviction until sentence has been pronounced.

☐ Felony
☐ Misde-
☐ Plea
☐ Trial

| Conviction | | |
|---|---|---|
| Title | Section | Counts |
| | | |

| | Combined Sentence | | | | |
|---|---|---|---|---|---|
| In-Jail Term | | Suspended | | Probation | |
| Yrs | Mos | Yrs | Mos | Yrs | Mos | Total Fines |
| | | | | | | $ |

Consecutive Sentences - Add all consecutive sentences together.
Concurrent Sentences - Enter longest single term.  Do not add concurrent sentences together. If the sentence is 10 years in custody of the Atty Gen. but 8 years are suspended, the In-Jail term would be 2 years.

**Subject 3 - Name -**   Subject's Description Code* -

☐ Pretrial
☐ Diversion
☐ Dismissal
☐ Acquittal

-Convictions-
Enter conviction and sentence data in space at right.   If more than four sections are involved, limit to the four most relevant.
Do not report conviction until sentence has been pronounced.

☐ Felony
☐ Misde-
☐ Plea
☐ Trial

| Conviction | | |
|---|---|---|
| Title | Section | Counts |
| | | |

| | Combined Sentence | | | | |
|---|---|---|---|---|---|
| In-Jail Term | | Suspended | | Probation | |
| Yrs | Mos | Yrs | Mos | Yrs | Mos | Total Fines |
| | | | | | | $ |

Consecutive Sentences - Add all consecutive sentences together.
Concurrent Sentences - Enter longest single term.  Do not add concurrent sentences together. If the sentence is 10 years in custody of the Atty Gen. but 8 years are suspended, the In-Jail term would be 2 years.

Attach additional forms if reporting final judicial process on more than three subjects, and submit a final disposition form (R-84) for each subject.

Remarks:

(see attached page for remarks.)

JUL 31 1985

Bureau
Field Office  BUFFALO  245-SS/KRO:kah  (4)

* See codes on reverse side.  Subject description code in section F are required only when reporting a conviction.
* In joint operations, identify the other Federal, State or Local Law Enforcement (LE) agency in the Remarks Section.

MILLER-139

| Property Type Codes* | | Potential Economic Loss Prevented (PELP) Type Codes* | |
|---|---|---|---|
| **Code No** | **Description** | **Code No** | **Description** |
| 1 | Cash (U.S. and foreign currency) | 22 | Counterfeit Stocks, Bonds, Currency or Negotiable Instruments |
| 2 | Stock, Bonds or Negotiable Instruments (checks, travelers checks, money orders, certificates of deposit, etc) | 23 | Counterfeit or Pirated Sound Recordings or Motion Pictures |
| 3 | General Retail Merchandise (clothing, food, liquor, cigarettes, TVs, etc) | 24 | Bank Theft Scheme Aborted |
| 4 | Vehicles (autos, trucks, tractors, trailers, campers, motorcycles, etc) | 25 | Ransom, Extortion or Bribe Demand Aborted |
| 5 | Heavy Machinery & Equipment (heavy equipment, computers, etc) | 26 | Theft from, or Fraud Against, Government Scheme Aborted |
| 6 | Bulk Materials (grain, fuel, raw materials, metals, wire, etc) | 27 | Commercial or Industrial Theft Scheme Aborted |
| 7 | Jewelry (including unset precious and semiprecious stones) | | |
| 8 | Precious Metals (gold, silver, silverware, platinum, etc) | | |
| 9 | Art, Antiques or Rare Collections | | |
| 10 | Dangerous Drugs | | |
| 11 | Weapons or Explosives | | |
| 12 | Businesses or Assets Forfeited | 30 | All Other Potential Economic Loss Prevented (not falling in any category above) |
| 20 | All Other Recoveries (not falling in any category above) | | |

*The case file must contain an explanation of the computation of the recovery value or loss prevented. An explanation airtel must accompany this report if the recovery is $1 million or more, or if the PELP is $5 million or more.

---

## Subject Description Codes*
### - Enter Description Code Only When Reporting a Conviction -

**Organized Crime Subjects:**
1A Boss, Underboss or Consigliere
1B Capodecina or Soldier
1C Possible LCN Member or Associate
1D OC Subject Other Than LCN

**Known Criminals (Other Than OC Members):**
2A Top Ten or I.O. Fugitive
2B Top Thief
2C Top Con Man

**Foreign Nationals:**
3A Legal Alien
3B Illegal Alien
3C Foreign Official Without Diplomatic Immunity
3D U.N. Employee Without Diplomatic Immunity
3E Foreign Students
3F All Others

**Terrorists:**
4A Known Member of a Terrorist Organization
4B Possible Terrorist Member or Sympathizer

**Union Members:**
5A International or National Officer
5B Local Officer
5C Union Employee

**Government Officials Or Employees:**

| **Federal** | **State** | **Local** |
|---|---|---|
| 6A Presidential Appointee | 6J Governor | 6R Mayor |
| 6B U.S. Senator | 6K Lt. Governor | |
| 6C U.S. Representative | 6L Legislator | 6S Legislator |
| 6D Judge | 6M Judge | 6T Judge |
| 6E Prosecutor | 6N Prosecutor | 6U Prosecutor |
| 6F Law Enforcement Officer | 6P Law Enforcement Officer | 6V Law Enforcement Officer |
| 6G Fed Exec - GS 13 & above | 6Q All Others - State | 6W All Others - Local |
| 6H Fed Empl - GS 12 & below | | |

**Bank Officers or Employees:**
7A Bank Officer
7B Bank Employee

**All Others:**
8A All Other Subjects (not fitting above categories)

*If a subject can be classified in more than one of the categories, select the most appropriate in the circumstance.

---

## Instructions

**Subject Priorities for FBI Arrest or Locates:**
A - Subject wanted for crimes of violence (i.e. murder, manslaughter, forcible rape, robbery and aggravated assault) or convicted of such crimes in the past five years.
B - Subjects wanted for crimes involving the loss or destruction of property valued in excess of $25,000 or convicted of such crimes in the past five years.
C - All others

**Claiming Convictions Other Than Federal:**
It is permissible to claim a local (state, county or local) conviction if the FBI's investigation significantly contributed to the successful local prosecution. A succinct narrative setting forth the basis for claiming a local conviction must accompany this report. When claiming a conviction other than Federal, enter the word "LOCAL" in the Conviction-Section block, disregard the number of conviction counts, but enter the sentence in the appropriate blocks. Enter "LF" in the "In-Jail" block for all life sentences and "CP" for all capital punishment sentences.

**Reporting Convictions:**
Convictions should not be reported until the sentence has been issued. There are two exceptions to this rule. The conviction information can be submitted by itself if:
1. The subject becomes a fugitive after conviction but prior to sentencing.
2. The subject dies after conviction but prior to sentencing.
An explanation is required in the Remarks section for either of the above exceptions.

**Rule 20 Situations:**
The field office that obtained the process (normally the office of origin) is the office that should claim the conviction, not the office where the subject enters the plea in cases involving Rule 20 of the Federal Rules of Criminal Procedures.

**Investigative Assistance or Techniques (IA/Ts) Used:**
-Since more than one IA/T could have contributed to the accomplishment, each IA/T must be rated.
-The IA/T used must be rated each time an accomplishment is claimed. (For example - if informant information was the basis for a complaint, an arrest, a recovery and a conviction and if separate FD-515s are submitted for each of the aforementioned accomplishments, the "Informant Information" block must be rated on each FD-515 even if it was the same information that contributed to all the accomplishments.)

BU 245D-58

b6 -3, -4
b7C -3, -4

On 7/18/85, FGJ, WDNY, Rochester, NY, indicted
nine subjects; namely, CECIL CONNORS, ⎤
⎣                                    ⎦ for violation
of Title 21, USC, Section 846.  MARTIN also charged with
violation of Title 21, USC, Section 841(a)(1) and Title
18, USC, Section 1952(a).  Subject CONNORS charged additionally
with violation of Title 18, USC, Section 1952(a).

-2*-

MILLER-141

# RECORD OF SEIZED PROPERTY

| 69. Name/ID Number of Incarceree | 70. Name of Institution | | |
|---|---|---|---|
| 71. Street Address | 72. City | 73. State | 74. ZIP Code |
| 75. Name/ID Number of Incarceree | 76. Name of Institution | | |
| 77. Street Address | 78. City | 79. State | 80. ZIP Code |
| 81. Name/ID Number of Incarceree | 82. Name of Institution | | |
| 83. Street Address | 84. City | 85. State | 86. ZIP Code |

| 87. Name of Additional Individual Requiring Notice | 88. Street Address | 89. City | 90. State | 91. ZIP Code |
|---|---|---|---|---|
| 92. Name of Additional Individual Requiring Notice | 93. Street Address | 94. City | 95. State | 96. ZIP Code |

97. CECIL CONNORS,

b6 -3, -4
b7C -3, -4

MILLER-142

3

# INSTRUCTIONS

69. **Name/ID Number of Incarceree:** Self-explanatory.
70. **Name of Institution:** Name of institution where subject is incarcerated.
71. **Street Address:** Street address of institution where subject is incarcerated.
72. **City:** City in which institution where subject is incarcerated is located.
73. **State:** State in which institution where subject is incarcerated is located.
74. **ZIP Code:** ZIP code of street address of institution in which subject is incarcerated.
75. **Name/ID Number of Incarceree:** Self-explanatory.
76. **Name of Institution:** Name of institution where subject is incarcerated.
77. **Street Address:** Street address of institution where subject is incarcerated.
78. **City:** City in which institution where subject is incarcerated is located.
79. **State:** State in which institution where subject is incarcerated is located.
80. **ZIP Code:** ZIP code of street address of institution in which subject is incarcerated.
81. **Name/ID Number of Incarceree:** Self-explanatory.
82. **Name of Institution:** Name of institution where subject is incarcerated.
83. **Street Address:** Street address of institution where subject is incarcerated.
84. **City:** City in which institution where subject is incarcerated is located.
85. **State:** State in which institution where subject is incarcerated is located.
86. **ZIP Code:** ZIP code of street address of institution in which subject is incarcerated.
87. **Name of Additional Individual Requiring Notice:** Self-explanatory.
88. **Street Address:** Street address of additional individual requiring notice.
89. **City:** City in which additional individual requiring notice resides.
90. **State:** State in which additional individual requiring notice resides.
91. **ZIP Code:** ZIP code of street address of additional individual requiring notice.
92. **Name of Additional Individual Requiring Notice:** Self-explanatory.
93. **Street Address:** Street address of additional individual requiring notice.
94. **City:** City in which additional individual requiring notice resides.
95. **State:** State in which additional individual requiring notice resides.
96. **ZIP Code:** ZIP code of street address of additional individual requiring notice.
97. **Case Subjects:** Other cases/case subjects with whom case/case subjects are associated.

MILLER-143

AO 91
Rev. 11/82

CRIMINAL ┊PLAINT

## United States District Court

┊RICT
┊STERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA
V.

KARL MARTIN, CECIL CONNORS, HOWARD
GRANT, DONOVAN MAC CLEAN, MIKE
CASTELL, SEAFORD LINTON, VERNELL
SMITH, REATHA PRESTON, JAMES A.
ROSE and JOWANDA BETANCES

┊ET NO.

┊ISTRATE'S CASE NO.

85-522 M.

Complaint for violation of Title 21        United St┊        843(b)

| NAME OF JUDGE OR MAGISTRATE | | ┊TLE | LOCATION |
|---|---|---|---|
| HONORABLE DAVID G. LARIMER | ┊ | ┊agistrate | Rochester, New York |

| DATE OF OFFENSE | PLACE OF OFFENSE | ┊ OF ACCUSED (if known) |
|---|---|---|
| See attached affidavit | Rochester, New York | |

COMPLAINANT'S STATEMENT OF FACTS CONSTITUTING THE OFFE┊ ┊VIOLATION:

The defendants, did knowingly and intentiona┊ ┊e a communication facility, a telephone, in committing or causing to be co┊ or facilitating the commission of the manufacture, distribution or possession with intent to manufacture, distribute or dispense controlled substances, to wit, marihuana and/or cocaine; All in violation of Title 21, United States Code, Section 843(b).

BASIS OF COMPLAINANTS CHARGE AGAINST THE ACCUSED:

See attached affidavit of SA William G. Leach, which is incorporated and made a part of this complaint.

245 D-58 sub 3-3

MATERIAL WITNESSES IN RELATION TO THIS CHARGE:

| Being duly sworn, I declare that the foregoing is true and correct to the best of my knowledge. | SIGNATURE OF COMPLAINANT (official title) *William G. Leach* |
|---|---|
| | OFFICIAL TITLE  Special Agent, FBI |

Sworn to before me and subscribed in my presence,

| SIGNATURE OF MAGISTRATE(1) *Paul D. Larimer* | MILLER-144 | DATE  2/6/85 |
|---|---|---|

1) See Federal Rules of Criminal Procedure rules 3 and 54.

AVIT

STATE OF NEW YORK )
COUNTY OF MONROE   :   SS:
CITY OF ROCHESTER )

WILLIAM LEACH, being dul      rn, deposes and says:

1.  I, William G. Le      ng duly sworn depose and state
that I am a Special Agent of      deral Bureau of Investigation,
having been so employed for      rs.  I am currently assigned to
the Rochester, New York (NY)      ent Agency.  During the regular
course of my duties, I have      involved in an investigation
concerning the violation of      controlled Substances Act,
Title 21, United States Code      .C.), Sections 841(a)(1), 843(b)
and 846.

2.  I, William G. Leach, make the following affidavit in
support of criminal complaints against Karl Martin, Cecil Connors,
Reatha Preston, Howard Grant, Donovan MacClean, James A. Rose,
Mike Castell, Vernell Smith, Jowanda Betances and Seaford Linton
for a violation of T. 21 U.S.C. §843(b).

3.  Based upon the facts of this case, the above named
individuals, for and between November 29, 1984 and February 6,
1985, and at specific dates as set forth herein, have knowingly,
intentionally and unlawfully engaged in a conspiracy to distribute

1

MILLER-145

or dispense marihuana and cocaine through the use of a communication facility.

4.  The facts of the case with which I am completely familiar are set forth as follows:

(a)  Since November 29, 1984, your affiant has supervised the interception of wire communications based upon a court order signed by the Honorable Michael A. Telesca, United States District Judge, Rochester, New York on February 18, 1983.  The interception is for telephone facility bearing number (716) 461-3312 subscribed to and billed to Mercedes Sales, 565 Monroe Avenue, Apartment 24, Rochester, New York.

(b)  Conversations have been intercepted which indicate that the above named individuals as well as others are involved in the distribution and/or receipt of controlled substances, to wit, marihuana and cocaine and further, this trafficking activity through the use of telephone facilities.

(c)  Based upon your affiant's experience as a law enforcement officer and based upon conversations with other special agents of the Federal Bureau of Investigation and with members of the Rochester Police Department, who are experienced in narcotics investigations, your affiant states (1) reefer, herb, corn, and ganga are code terms used for marihuana; (2) white stuff

2

and girl refer to cocaine; (3) eighths, quarters and ounces are terms used as units of measuring pounds of cocaine.

(d)  On January 16, 1985 at approximately 6:17 p.m., an incoming call was placed by an individual who identified himself as "Peter". Upon information and belief, based upon my conversation with Officer Robert Urtis of the Rochester Police Department Howard Peterson Grant, who is Jamaican, uses the street name of "Peter". The call was received by an individual named Michael. Speaking with a Jamaican accent, Peter asked for Dandy and asked if Dandy had anything beside "corn". Michael told Peter to just come on over. At 6:35 p.m., Matthew Siuda, an agent of the Immigration and Naturalization Service observed Howard Peterson Grant enter the front door of 565 Monroe Avenue, Rochester, New York.

(e)  On January 17, 1985 at 7:17 p.m. an incoming call was placed by a male who identified himself as Macky Don (Macky Don is the street name used by Donovan MacClean) to Karl Martin. MacClean asked if Martin had "stuff". Martin affirms that he did and that it was "gold". MacClean stated he would check it out. MacClean then asked if he could "pick it up now". Martin then gave his address, 565 Monroe Avenue, Apartment 24. Another male then got on the telephone. He and Martin discuss what Martin had. Again Martin stated he had "gold" and further stated, "its going for six and a half." Based upon your affiant's past experience,

3

MILLER-147

9

the term "gold" refers to a grade of marihuana and six and a half
is the price of $650.00 a pound for the marihuana.  While
conducting a surveillance at 565 Monroe Avenue at 7:30 p.m.,
Investigator Gerald Connor of the Rochester Police Department
observed two black males exiting a Buick, greenish in color,
bearing New York registration 2803-AXU which vehicle was
registered to Donovan MacClean, 21 Gladys Street.  At 7:58 p.m.
Investigator Connor observed the same two individuals exit the
building and get into the Buick.  Investigator Connor further
observed the driver of the vehicle as Donovan MacClean.
Investigator Connor stated that he knows Donovan MacClean from
past investigations, one of which was an arrest of MacClean on
December 17, 1982 for Criminal Possession of Marihuana Fifth,
N.Y.S.P.L. 221.10


        (f)  On January 16, 1985 an incoming call was placed by a
male who identified himself as Troy who asked to speak with Mike.
Mike has been subsequently identified as Mike Castell during a
conversation between Castell and an unidentified female on
February 2, 1985.  Mike stated he was going to need "weed" and
later used the word "ganga".  Mike asked if it was "bagged up" to
hwich Troy answered in the affirmative.  Mike asked how much he
had, to which Troy replied about ten.  Based upon my experience
Mike Castell was seeking to purchase a quantity of marihuana.  He
was informed that the marihuana was already packaged, or "bagged
up".  Troy indicated he had ten which was likely to be ten ounces

                              4

                                    MILLER-148

                              10

available.  Mike ended the conversation by saying he would be
right over.

        (g) On December 10, 1984 at 12:25 a.m., an outgoing call
was placed to (716) 235-5965, by a person who was identified as
Karl Martin to a female individual who was identified as Loretta.
In the conversation Loretta asked, "Do you have any more?".
Martin replied, "What do you want?".  To which Loretta replied, "A
half".  A "half" is common drug parlance for a weight measurement
such as half-ounce or half-pound.  The exact amount requested in
the conversation is unknown.  That fact, however, is significant
because it suggests that Karl Martin and Loretta have done enough
business in the past so that Martin is familiar with amounts
normally purchased by Loretta.

        (h)  On December 11, 1984 at approximately 12:20 a.m.
Harry made an outgoing call from the Monroe Avenue telephone to
(716) 436-8874 and spoke to a female identified as Bonnie Burke.
Shortly thereafter Bonnie asked to speak to Dandy.  Dandy is a
nickname used by Karl Martin.  Martin indicated that he had been
"sort of campaigning".  He then stated that he had been collecting
his money at the "reefer shops" and record stores.  During the
course of this investigation we have determined that marihuana
and/or cocaine has been sold by Martin's organization or other
groups associated with Martin through certain record stores and
other apparently legitimate businesses in the Rochester area.

5

MILLER-149.

(i)  On December 13, 1984 at approximately 12:01 a.m. an individual identifying himself as Wa-wa, whose voice has been identified as that of Seaford Linton, placed an incoming call to Harry.  Linton asked, "Fix me up."  To which Harry replied that he had "a half, three-quarters and a full gram."  In this conversation Linton was asking whether or not Harry had any drugs for sale.  Harry indicated that he had a half, three-quarters or a full gram available.  Based on the amounts indicated in the conversation, it is most likely that the drug referred to was cocaine, which is commonly sold at the retail level in gram and less than full gram quantities.

(j)  On January 21, 1985, at 2019 an incoming call was intercepted from "the Modeler".  As noted in my prior wiretap affidavit, I have reason to believe that "the Modeler" is the head of the organization of which Karl Martin and others are a part.  THE MIAMI FBI OFFICE HAS IDENTIFIED THE MODELER AS CECIL CONNORS. "THE" "Modeler" spoke to Dandy and asked Dandy for Vernell's phone number.  Dandy told him 884-4014.  "Modeler" then told Dandy to tell Vernell that "it is he that sent up the stuff in her name, and he'll (Modeler) give her $200.00 to pick it up."  In later conversation "Modeler" said that the "shipment" had already been sent off and that it should arrive tomorrow.  "Modeler" also told Dandy that there is "52 in it" and that "it's nice . . . its non-cut".  Based upon my experience and the investigation thus far completed, the above conversation concerns a 52 pound shipment of marihuana and cocaine sent by "Modeler" to Dandy.

6

MILLER-150

12.

(k)  On January 22, 1985 at 1047 Martin made an outgoing call to 889-4014 and spoke to a Vernell Smith.  He told her that "Modeler" had sent a "package" via "Federal Express" and asked her to have Federal Express deliver the package to her door. Thereafter at 1103 an incoming call was received by Martin from Vernell in which she told Martin that Federal Express could not deliver the package today.  Martin then told Vernell that he would pick up the "package" himself.  At 1614 that day Officers McCarthy and Campione of the Rochester Police Department, while conducting a surveillance of the Federal Express Office on Scottsville Road in the Town of Chili, observed Martin drive a 1985 Chevrolet Celebrity bearing license plate number 1563BFK into the Federal Express parking lot.  An unidentified black female exited the car and entered the Customer Service entrance while Martin remained in the car.  At 1628 Officer J.D. Thomas of the Rochester Police Department, who also was conducting a surveillance of the premises, observed Martin load a large box approximately 3 1/2 feet in length and 2 1/2 feet in height into the trunk of his vehicle. Because of the size of the box Martin could not close the trunk of his car and he drove from the scene with the box in plain view.  Thereafter, Martin was followed from that location by the surveillance team as he proceeded northbound on Scottsville Road and headed north (in the direction of Fetzner Road in Greece) on I390.  At 1638 the surveillance was terminated as Martin drove north on I390 past the I490 interchange. Thereafter, at 1811

7

Martin was observed by Special Agent Johnson of the IRS as he backed his vehicle into the driveway at 494 Fetzner Road.

The records of the Federal Express located on Scottsville Road in the Town of Chili indicate that on January 21, 1985 a 52 pound package addressed to Verne L. Smith was received and that on January 22, 1985 this package was picked up.

(1)  On January 22, 1985, Karl Martin placed an outgoing call to 716-232-2712 and spoke to an individual whose voice was identified as that of Reatha Preston. Martin stated, "I have some nice gold reefer, and it lovely." Preston asked, "how's the weight?"to which Martin replied, "the weight is good." In my opinion Martin has informed Preston that he had good quality marihuana for sale and in large quantity. Preston then asked how much to which Martin replied six and one half. He also stated that he was getting 75 but for her he would give her the special price of six-fifty. This portion of the conversation reflects a price of $650.00 for one pound of marihuana. Preston then stated, "I know reefer's scarce . . . I don't deal that shake. Preston is questioning the quality of the marihuana. Martin replied "No, I gonna bring you two nice ones honey so you'll make some money." Martin indicated that he would bring her two pounds of marihuana.

(m)  On January 24, 1985 at approximately 12:09 a m., a male who identified himself as Batman placed an incoming call to Mike Castell. Batman is the street name for James A. Rose.

8        MILLER-152

14

Castell asked Rose "how much do you want?" Rose replied "a Q".
Based upon my experience the term "Q" is drug slang for a quarter
pound of marihuana.

(n)  On January 20, 1985, an incoming call was received
from a female who identified herself as Jowanda.  The female was
identified from other intercepted calls as Jowanda Betances.  She
said, "Mickey this is Jowanda."  Mike said, "he doesn't come yet."
She replied "Yes, but I need some stuff" Mike replied, "I just
sell the last of it I have here . . . but we still have more you
know."  She said I wanted to, you know give me half.  Mike said
yeah.  She replied to have a half for me, cause I got his money.
A "half" is common drug parlance for a quantity of a controlled
substance, generally a half ounce.

WILLIAM G. LEACH
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me
this 6th day of February, 1985.

HONORABLE DAVID G. LARIMER
United States Magistrate

Reviewed by
AUSA M. CASEO

9

15

### FEDERAL BUREAU OF INVESTIGATION
### FOIPA
### DELETED PAGE INFORMATION SHEET

_3_  Page(s) withheld entirely at this location in the file. One or more of the following statements, where indicated, explain this deletion.

X  Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

| Section 552 | | Section 552a |
|---|---|---|
| ☐ (b)(1) | ☐ (b)(7)(A) | ☐ (d)(5) |
| ☐ (b)(2) | ☐ (b)(7)(B) | ☐ (j)(2) |
| X (b)(3) | X (b)(7)(C) -1,3,4 | ☐ (k)(1) |
| _18 U.S.C. 2515-20_ | ☐ (b)(7)(D) | ☐ (k)(2) |
| | ☐ (b)(7)(E) | ☐ (k)(3) |
| _____ | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) | ☐ (k)(5) |
| ☐ (b)(5) | ☐ (b)(9) | ☐ (k)(6) |
| X (b)(6) -1,3,4 | | ☐ (k)(7) |

☐  Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☐  Documents originated with another Government agency(ies). These documents were referred to that agency(ies) for review and direct response to you.

_____  Page(s) contain information furnished by another Government agency(ies). You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____  Page(s) withheld inasmuch as a final release determination has not been made. You will be advised as to the disposition at a later date.

_____  Page(s) were not considered for release as they are duplicative of _____

_____  Page(s) withheld for the following reason(s):_____
_____
_____

☐  The following number is to be used for reference regarding these pages:
_____

XXXXXXXXXXXXXXXX
X    Deleted Page(s)    X
X    No Duplication Fee    X
X    For this page    X
XXXXXXXXXXXXXXXX

_Miller 154-156_                    FBI/DOJ

OPCA-20 (12-3-96)

XXXXXX
XXXXXX
XXXXXX

# FEDERAL BUREAU OF INVESTIGATION
## FOIPA
### DELETED PAGE INFORMATION SHEET

Page(s) withheld entirely at this location in the file. One or more of the following statements, where indicated, explain this deletion.

Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

| Section 552 | | Section 552a |
|---|---|---|
| ☐ (b)(1) | ☐ (b)(7)(A) | ☐ (d)(5) |
| ☐ (b)(2) | ☐ (b)(7)(B) | ☐ (j)(2) |
| ☒ (b)(3) | ☐ (b)(7)(C) | ☐ (k)(1) |
| | ☐ (b)(7)(D) | ☐ (k)(2) |
| *18 USC 2515-20* | ☐ (b)(7)(E) | ☐ (k)(3) |
| | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) | ☐ (k)(5) |
| ☐ (b)(5) | ☐ (b)(9) | ☐ (k)(6) |
| ☐ (b)(6) | | ☐ (k)(7) |

☐ Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☐ Documents originated with another Government agency(ies). These documents were referred to that agency(ies) for review and direct response to you.

_____ Page(s) contain information furnished by another Government agency(ies). You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____ Page(s) withheld inasmuch as a final release determination has not been made. You will be advised as to the disposition at a later date.

_____ Page(s) were not considered for release as they are duplicative of _____

_____ Page(s) withheld for the following reason(s):_____
_____
_____

☐ The following number is to be used for reference regarding these pages:
_____

XXXXXXXXXXXXXXXX
X    Deleted Page(s)    X
X    No Duplication Fee    X
X    For this page    X
XXXXXXXXXXXXXXXX

XXXXXX
XXXXXX
XXXXXX

Milker 157

FBI/DOJ

2 (Rev. 3-3-59)

# FEDERAL BUREAU OF INVESTIGATION

| Reporting Office | Office of Origin | Date | Investigative Period | |
|---|---|---|---|---|
| BUFFALO | BUFFALO | 10/11/85 | 11/15/84 9/23/85 | |

| Title of Case | Report made by | Typed By: |
|---|---|---|
| CHANGED: | SA WILLIAM G. LEACH | kah |

**Character of Case**

CECIL CONNORS, aka
"The Modeler";

NARCOTICS MATTER
OCDE TASK FORCE CASE

## PROSECUTIVE REPORT

Title marked "Changed" to reflect the identities of indicted
subjects and to delete those persons that investigation
has determined were not principals and not subject to prosecution.
Title formerly carried as [                    ] A

[        ] aka; NARCOTICS MATTER - OCDE TASK FORCE CASE; OO: BUFFALO.

b6 -1, -3, -4

**REFERENCE:** Buffalo tt to Bureau, 2/12/85.

b7C -1, -3, -4

**ADMINISTRATIVE:** In the interest of brevity and conciseness
voluminous transcriptions of intercepted telephone communications
and supporting surveillance reports are not being included
herein. These items were previously furnished AUSA MELCHOR CASTRO.

| Approved | Special Agent in Charge | Do not write in spaces below |
|---|---|---|

Copies made:

2 1 - Bureau (245-657)

1 - USA, Buffalo
  (1 - AUSA MELCHOR CASTRO,
       Rochester, NY)

2 - Buffalo (245D-58)

18 OCT 22 1985

Notations:

COVER PAGE
-A*-

FD-517 (12-2-77)

# FEDERAL BUREAU OF INVESTIGATION

## PROSECUTIVE REPORT OF INVESTIGATION CONCERNING



CECIL CONNORS, also known as
"The Modeler":

b6 -3, -4
b7C -3, -4

NARCOTICS MATTER – ORGANIZED CRIME
DRUG ENFORCEMENT TASK FORCE CASE

MILLER-159

FBI/DOJ

 

BU 245D-58

## TABLE OF CONTENTS

|                                           | Page |
| ----------------------------------------- | ---- |
| Narrative of Offense                      | B    |
| Enclosures for United States Attorney     | C    |
| Names of Defendants                       | D    |
| Prosecutive Status                        | E    |
| Witnesses                                 | F    |
| Evidence                                  | G    |
| Identification Records                    | 1    |
| Table of Contents for Report Forms (FD-302s) | 11A |
| Report Forms (FD-302s)                    | 12   |

-A-

### FEDERAL BUREAU OF INVESTIGATION
### FOIPA
### DELETED PAGE INFORMATION SHEET

__1__  Page(s) withheld entirely at this location in the file. One or more of the following statements, where indicated, explain this deletion.

__X__  Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

| Section 552 | | Section 552a |
|---|---|---|
| ☐ (b)(1) | ☐ (b)(7)(A) | ☐ (d)(5) |
| ☐ (b)(2) | ☐ (b)(7)(B) | ☐ (j)(2) |
| ☒ (b)(3) | ☒ (b)(7)(C) -3, 4 | ☐ (k)(1) |
| _18 USC 2515 -20_ | ☐ (b)(7)(D) | ☐ (k)(2) |
| | ☐ (b)(7)(E) | ☐ (k)(3) |
| _____ | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) | ☐ (k)(5) |
| ☐ (b)(5) | ☐ (b)(9) | ☐ (k)(6) |
| ☒ (b)(6) -3, 4 | | ☐ (k)(7) |

☐  Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☐  Documents originated with another Government agency(ies). These documents were referred to that agency(ies) for review and direct response to you.

_____  Page(s) contain information furnished by another Government agency(ies). You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____  Page(s) withheld inasmuch as a final release determination has not been made. You will be advised as to the disposition at a later date.

_____  Page(s) were not considered for release as they are duplicative of _____.

_____  Page(s) withheld for the following reason(s):_____
_____
_____

☐  The following number is to be used for reference regarding these pages:
_____

XXXXXXXXXXXXXXXX
X  Deleted Page(s)  X
X  No Duplication Fee  X
X  For this page  X
XXXXXXXXXXXXXXXX

Miller 161

FBI/DOJ

BU 245D-58

### ENCLOSURES FOR THE UNITED STATES ATTORNEY


1. Enclosed for the United States Attorney, Buffalo, NY (Attn:  AUSA MELCHOR CASTRO, Rochester, NY), is a copy of an FBI report dated March 11, 1985, reflecting the arrest of CECIL CONNORS at NYC and the seizure of $159,305.82.

-C-1-

 

BU 245D-58

5.  CECIL CONNORS, who is described as follows:

| | |
|---|---|
| Address | 150 Van Auker Street |
| | Rochester, NY |
| | and |
| | 2061 Jamaica Drive |
| | Miramar, Florida |
| Age | 25 |
| DOB | March 29, 1960 |
| Employment | Unemployed |
| Marital Status | Separated |
| Violation | Title 18, USC, Section 1952(a), |
| | Title 21, USC, Section 846 |
| Penalty | 5 years imprisonment or |
| | $10,000 fine or both and |
| | 15 years imprisonment or |
| | $125,000 fine or both, |
| | respectively |
| Custody Status | In custody pursuant to |
| | an extradition request |
| | issued by the government |
| | of Jamaica |
| Bail | No bail |
| Criminal Record | Has prior criminal record |
| Attorney's Name | Unknown |

b6 -3, -4

b7C -3, -4

D-3

## FEDERAL BUREAU OF INVESTIGATION
### FOIPA
### DELETED PAGE INFORMATION SHEET

_/___ Page(s) withheld entirely at this location in the file. One or more of the following statements, where indicated, explain this deletion.

☐    Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

|  | Section 552 |  | | Section 552a |
|---|---|---|---|---|
| ☐ (b)(1) | | ☐ (b)(7)(A) | | ☐ (d)(5) |
| ☐ (b)(2) | | ☐ (b)(7)(B) | | ☐ (j)(2) |
| ☐ (b)(3) | | ☒ (b)(7)(C) -2,3,4 | | ☐ (k)(1) |
| | | ☐ (b)(7)(D) | | ☐ (k)(2) |
| _____ | | ☐ (b)(7)(E) | | ☐ (k)(3) |
| _____ | | ☐ (b)(7)(F) | | ☐ (k)(4) |
| _____ | | | | |
| ☐ (b)(4) | | ☐ (b)(8) | | ☐ (k)(5) |
| ☐ (b)(5) | | ☐ (b)(9) | | ☐ (k)(6) |
| ☒ (b)(6) -2,3,4 | | | | ☐ (k)(7) |

☐    Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☐    Documents originated with another Government agency(ies). These documents were referred to that agency(ies) for review and direct response to you.

_____ Page(s) contain information furnished by another Government agency(ies). You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____ Page(s) withheld inasmuch as a final release determination has not been made. You will be advised as to the disposition at a later date.

_____ Page(s) were not considered for release as they are duplicative of _____

_____ Page(s) withheld for the following reason(s):_____
      _____
      _____

☐    The following number is to be used for reference regarding these pages:
      _____

XXXXXXXXXXXXXXXXX
X    Deleted Page(s)    X
X    No Duplication Fee    X
X    For this page    X
XXXXXXXXXXXXXXXXX

XXXXXX
XXXXXX
XXXXXX

Miller 164

FBI/DOJ

BU 245D-58

5.      SA [redacted]                              b2
        FBI, Rochester RA                          b6 -1
        Rochester, NY                              b7C -1

[redacted]

6.      [redacted]

[redacted] and met her husband "MODLER".

[redacted]

access to cocaine through the "MODLER".

[redacted]

                                                   b6 -3, -4
7.      [redacted]                                 b7C -3, -4

[redacted] receives
his drugs from CECIL CONNORS, and that [redacted]
[redacted] CECIL CONNORS for $1,000.

8.      [redacted]

[redacted] of
CECIL CONNORS.

- F-2 -

MILLER-165




BU 245D-58

9.　　　SA

FBI, Brooklyn-Queens RA

　　Can testify to the arrest of CECIL CONNORS in
New York City and the seizing of approximately $160,000
in cash.

10.

　　Can testify that she knows C. CONNORS and that
he said to call him "MODLER".  She met him at the home

11.

b6 -1, -3, -4

b7C -1, -3, -4

CECIL CONNORS,
and during the latter part of 1984, purchased cocaine from
him approximately 50 times.

12.

- F-3 -



BU 245D-58

13.

received his drugs
from the MODLER.

14.

b6 -3, -4
b7C -3, -4

15.

16.

– F-4 –

MILLER-167



BU 245D-58

17.

18.

19.

b6 -3, -4
b7C -3, -4

20. <u>SA</u>

Rochester, NY

b6 -1
b7C -1

CECIL

CONNORS $9,500.

- F-5 -

MILLER-168

 

BU 245D-58

21.      SA [                    ]
         FBI, Rochester RA
         Rochester, NY

         [                              ]

         [                                        ]


22.      SA [                  ]
         FBI, Buffalo Office
         Buffalo, NY



23.      SAA [                    ]                                    b2
         FBI, Rochester RA
         Rochester, NY                                                b6 -1

                                                                      b7C -1

         [                                                    ]


24.      SA [                  ]
         FBI, Buffalo Office
         Buffalo, New York

         [                                      ]


25.      SA [                  ]
         FBI, Baltimore Office
         Baltimore, MD

         [                                                ]

MILLER-169



BU 245D-58

## IDENTIFICATION RECORDS
## LABORATORY REPORTS

-1-

MILLER-170

BU 245D-58

## TABLE OF CONTENTS
## FOR REPORT FORMS (FD-302s)

Page

Cecil Connors                                              35

Cecil Connors (fingerprints)                              41

b6 -1, -3, -4

-11A-

b7C -1, -3, -4

MILLER-171

FD-302 (Rev. 3-10-82)

-1-

FEDERAL BUREAU OF INVESTIGATION

Date of transcription_____ 2/21/95

Special Agent (SA)

and SA
Criminal Investigative Division (CID),

Federal Building,
100 State Street, Rochester, New York.

     Upon arrival at the Federal Building, he was advised
of his rights as they are reflected on a form captioned
"Interrogation; Advice of Rights", which was read to him.

He has never met the
"Modler," but he has heard his name somewhere.

b6 -1, -3, -4

b7C -1, -3, -4

Investigation on_____2/11/95_____ at _Rochester, NY_____ File # _3U 245D-58_

by_____SA_____/kah    28    Date dictated__2/15/95_

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency;
it and its contents are not to be distributed outside your agency.

MILLER-172

FD-302 (Rev. 3-10-82)

-1-

FEDERAL BUREAU OF INVESTIGATION

Date of transcription ___3/20/35___

She was interviewed in the Federal Building, Rochester,
NY. Present during the interview was Officer [          ]
Rochester Police Department (RPD), Special Criminal Investigations
Unit.

had access to cocaine which "MODLER" was supplying him.

She commented that "MODLER" was in Rochester during
the Christmas holiday season,

b6 -1, -3, -4, -6
b7C -1, -3, -4, -6

Investigation on ___3/14/35___ at ___Rochester, NY___ File # __3U 245D-58__

by SA [          ] kah                    Date dictated ___3/15/35___

30

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency;
it and its contents are not to be distributed outside your agency.

MILLER-173

FD-302 (Rev. 3-10-82)

-1-



FEDERAL BUREAU OF INVESTIGATION

Date of transcription _____ 3/11/85

She commented that she met "MODLER"

MODLER was supplying drugs to [          ] traveling extensively
to Florida, New York City and the Virgin Islands.  She
observed "MODLER" to wear large amounts of gold and diamonds.

b6 -3, -4

b7C -3, -4

| Investigation on | 2/28/85 | at | Rochester, NY b6 -1 | File # | 3D 245D-58 |

SA [          ]  31  b7C -1                    3/3/85

by _____ Date dictated

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency;
it and its contents are not to be distributed outside your agency.

MILLER-174

FD-302 (Rev. 3-10-82)

## FEDERAL BUREAU OF INVESTIGATION

b6 -1, -3, -4, -6
b7C -1, -3, -4, -6

-1-

Date of transcription _____2/21/35_____

Mr. CECIL CONNOR, whom she met at

---

Investigation on ____2/11/35____ at ____Rochester, New York____ File # ____Buffalo 245D-53____

by ____ SAs and _____ 32    Date dictated ____2/15/35____

b6 -1

This document contains neither recommendations nor con b7C -1 the FBI. It is the property of the FBI and it and its contents are not to be distributed outside your a

MILLER-175

FD-302a (Rev. 11-15-83)

 

b6 -1, -3, -4

b7C -1, -3, -4

BU 245D-58

Continuation of FD-302 of _____ , On **2/11/85** , Page **-2-**

CECIL CONNOR,

FD-302(rev.3-8-77)

### FEDERAL BUREAU OF INVESTIGATION

Date of transcription
2/15/85

1

On February 11, 1985, Special Agents (SAS) of the
Brooklyn-Queens Office of the Federal Bureau of Investigation
(FBI), executed an arrest warrant issued in the Western District
of New York (Rochester) for CECIL CONNOR.  Agents of the FBI
effected the arrest of CECIL CONNOR at the Holiday Inn, Ditmars
Boulevard, Queens, New York, without incident at approximately

Information was provided to Brooklyn-Queens Office from
the Rochester Resident Agency indicating that CECIL CONNOR was
residing in Room 526 of the Holiday Inn in Queens, New York.

Brooklyn-Queens agents established contact with Holiday
Inn security and obtained a pass key to Room 526.

At approximately 10:54 a.m. same date, SA [          ]
telephonically contacted the occupant (CONNOR) of Room 526 from an
adjacent hotel room and advised him that the FBI had his room
surrounded and they had a warrant for his arrest.  SA [          ] then
advised CONNOR to immediately exit the room with his hands on his
head.  CONNOR advised that he was coming out immediately.  At this
point the telephone call was ended and after approximately 30
seconds it was evident that CONNOR was not coming out of his room.
Taking into consideration the fact that CONNOR was considered to
be armed and dangerous, SA [          ] utilized the hotel pass key and
the necessary force to effect entry into Room 526.

At this point, SA [          ] observed CONNOR standing
approximately 4 feet inside of the room next to the bathroom door.
SA [          ] ordered CONNOR to move into the hallway with his hands
up.  SAS [                    ] placed CONNOR under arrest and
handcuffed him and walked CONNOR back into his hotel room where SA
[          ] orally advised CONNOR of his rights and showed him a copy
of the warrant for his arrest from the Western District of New
York.

b6 -1

b7C -1

| Interviewed on 2/11/85 | at Queens, New York | File # BQ (245D-187)- |
|---|---|---|

By SA [                    ]
ALD

Date Dictated 2/15/85

This document contains neither recommendations nor conclusions of the FBI.
It is the property of the FBI and is loaned to your agency; it and its
contents are not to be distributed outside your agency.

MILLER-177

 

BQ (245D-187)

Continuation of
interview of    CECIL CONNOR         Page 2

_____

        SA [        ] viewed several bundles of money wrapped with
rubber bands lying on the bed nearest the bathroom wall.  The
money and its brown paper bag were taken into custody as were two
closed bags of luggage.  CONNOR advised arresting agents that
there was approximately $159,000 contained in his luggage.

        SA [          ] and SA [          ] noted numerous slips
of paper bearing names, phone numbers, and numerical calculations
lying in the toilet.  SA [      ] retreived same for possible       b6 -1
evidentiary value.                                                  b7C -1

        Special Agent (SA) [            ] asked CONNOR if he
had ever been arrested in Jamaica or had he ever been to Jamaica?
To both questions, CONNOR answered in the negative.

        CONNORS personal possessions - clothing, luggage were
taken into custody by the arresting agents.

        Upon departing the Holiday Inn lobby, agents were
informed by the hotel management that CONNOR still owed for one
night's stay and inquired if he was going to pay for it.  CONNOR
indicated to the arresting agents that he wished to pay the hotel
bill.  The bill was paid from CONNOR's funds and receipts for
CONNOR's stay were provided to agents by the hotel management.

        At this point, agents removed CECIL CONNOR to the
Brooklyn-Queens Federal Bureau of Investigation (FBI) office for
arrest processing.

36

D-302(rev.3-8-77)

## FEDERAL BUREAU OF INVESTIGATION

Date of transcription
2/13/85

1

On February 12, 1984, Special Agents (SAS)[        ] accompanied Assistant Special Agent in Charge (ASAC)[            ] Brooklyn-Queens Metropolitan Resident Agency, (BQMRA), to the high value vault area in the Brooklyn-Queens Office where they accepted custody of two pieces of soft-sided luggage belonging to CECIL CONNOR and which had been placed in the vault for security on February 11, 1985.

Agents[                ] while in possession of search warrants issued in the Eastern District of New York (EDNY) for both suitcases opened them in the presence of ASAC[        ] at approximately 9:10 a.m.  The black suitcase revealed a large, unknown amount of U.S. currency, packaged in bundles and secured by rubber bands.  The light green bag revealed numerous brown paper bags and plastic bags.

b6 -1
b7C -1

The suitcases were removed to the Organized Crime Drug Enforcement Task Force (OCDETF) area in the Brooklyn-Queens Office where each suitcase's contents were carefully inventoried.

Special Agents (SAS)[                ] and[            ]counted the currency contained in the black bag and its total was determined to be $148,846.

Interviewed on 2/12/85    at Queens, New York        File # BQ (245D-187)

By SA [              ]/mmd                Date Dictated 2/13/85

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

MILLER-179

D-302(rev.3-8-77)

## FEDERAL BUREAU OF INVESTIGATION

Date of transcription
1                                                           2/15/85

On February 11, 1985, at approximately 11:50 a.m. at the Brooklyn-Queens Office of the Federal Bureau of Investigation (FBI), CECIL CONNOR was again given his rights and allowed to read an "Advice of Rights" form. CONNOR advised the interviewing agents, Special Agents (SAS                    that he did not want to sign the "Advice of Rights" form, and did not want to answer any questions until he spoke with his attorney.

During the course of processing (photographing/ fingerprinting) CONNOR, in response to earlier questions asked by agents at the scene of his arrest, CONNOR voluntarily responded to SAS                    that he (CONNOR) had never been to Jamaica and had not killed anyone there, and that the agents had him (CONNOR) confused with someone else.

b6 -1
b7C -1

Interviewed on 2/11/85    at Queens, New York           File #-BQ (245D-137)

By SA                    mmd                                   Date Dictated 2/15/85
                                          38
This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

MILLER-180

FD-302 (Rev. 3-10-82)

-1-

### FEDERAL BUREAU OF INVESTIGATION

b6 -1, -3, -4, -6
b7C -1, -3, -4, -6

Date of transcription    5/21/85

On May 9, 1985, ☐
☐ was interviewed
at the Federal Building, 100 State Street, Rochester, NY.
Present during the interview was Investigator ☐
and Police Officer ☐, Rochester Police Department
(RPD), Special Criminal Investigations Unit.

She advised that she met CECIL CONNORS, also
known as (aka) "MODLER" ☐
☐ She stated
☐ MODELER ☐ during their association,
he told her to call him MODELER, but his real name was
CECIL CONNORS. She said he told her he was from Florida,
and he had a bracelet with the name CECIL engraved on it.
She related that he was staying in an apartment located
at the corner of Monroe and Goodman, Rochester. A telephone
booth was located in front of the apartment building where
MODELER stayed.

She remarked that she met ☐
☐ she met MODELER. ☐

☐ MODELER called her ☐

☐ She continued that MODELER wanted her to
☐

| Investigation on | 5/9/85 | at | Rochester, NY | File # | BU 245D-53 |

by    SA ☐ :kah    39    Date dictated    5/13/85

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency;
it and its contents are not to be distributed outside your agency.

MILLER-181

FD-302a (Rev. 11-15-83)

Continuation of FD-302 of _____ (BU 245D-58) On ___5/9/85___ , Page ___2*___

came by her house and told her MODELER wanted to see her.

b6 -3, -4
b7C -3, -4

She learned that MODELER had a Jamaican girlfriend
in Florida_____ She related that she heard
_____ after MODELER was arrested
in February, 1985.

MILLER-182

40