## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CHARLES MILLER,               )
                       )
          Plaintiff,       )
                       )
      v.                 )     Civil Action  No. 05-1314 (HHK)
                       )     Electronic Case Filing
U.S. DEPARTMENT OF JUSTICE, )
Federal Bureau of Investigation,   )
                       )
        Defendant.     )
_____)

## DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

In response to defendant's motion for summary judgment in this case brought under the

Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), plaintiff primarily complained about FBI

finding significantly less information than plaintiff expected.  In addition, plaintiff provided

information about his previous dealings with the Federal Bureau of Investigation ("FBI") that

was not included with his initial FOIA request.  As a result, FBI was able to locate a substantial

amount of additional material which it has now reviewed, processed under the FOIA, and

referred to various other law enforcement entities.  See Fourth Declaration of David M. Hardy

("4th Hardy Dec."), ¶¶ 9, 12.  Much of this information relates to law enforcement investigations

involving the disappearance of the St. Kitts-Nevis Deputy Prime Minister's son and a female

companion on October 1, 1994.  Id. ¶ 5.  At the request of the foreign government, the FBI

assisted with an investigation involving a large shipment of cocaine, murder, and torture.  Id.

U.S. law enforcement suspected plaintiff was involved, among other things, in a conspiracy to

smuggle large amounts of cocaine from St. Kitts to the United States, and ultimately plaintiff

was arrested (more than once) and in 2000, he was extradited to the United States.  See id.

Since filing the initial motion for summary judgment in this case, the FBI located and reviewed well over a thousand pages of information. Id. ¶ 8. FBI released nearly 400 additional pages of information with various material withheld under FOIA exemptions. Id. ¶¶ 7-8. Some of the information is classified and cannot be released because disclosure could reasonably be expected to harm the interests of national security. Id. ¶¶ 22-29. FBI also referred information it located in its own files to many other entities that originated the information. Id. ¶ 100. These include:

(1)     the Department of Justice ("DOJ")'s Criminal Division; id. ¶ 101;[1]

(2)     the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"); ¶ 102;

(3)     the Defense Intelligence Agency ("DIA"); ¶ 103;

(4)     the Drug Enforcement Administration ("DEA"); ¶ 104;

(5)     the Department of Defense ("DOD"); ¶ 105;[2]

(6)     the Department of State; ¶ 106; and

(7)     the Department of the Army, ¶ 107.[3]

---

[1] DOJ's Criminal Division also referred a few pages to the Executive Office for United States Attorneys ("EOUSA"). Due to the volume and number of documents at issue, undersigned counsel was unaware of this referral until shortly before the filing deadline, and will submit an additional declaration from EOUSA to explain its treatment of the referred materials as promptly as EOUSA is able to provide it given its heavy processing and litigation demands in the FOIA area.

[2] The Department of Defense referred the documents to one of its components, the Defense Intelligence Agency, for processing. See Declaration of Brian S. Kinsey, ¶¶ 3, 6. In addition, a few pages were processed by the Air Force and the Southern Command. See Declaration of Richard M. Abboud, ¶ 4; Declaration of Brigadier General Salvatore F. Cambria, ¶ 4; Declaration of Brigadier General Richard Ellis, ¶¶ 3-4.

[3] FBI made one additional referral of information to another government agency which will remain unidentified on the public record. See 4th Hardy Dec. ¶ 108. This entity will be providing a declaration to the Court ex parte prior to the end of May, 2007 to justify its actions

Separate declarations are provided to explain the treatment of each of these referrals.[4]

On this substantially expanded record, it is clear that there are no genuine issues of material fact because the government has thoroughly searched for responsive information and processed, or nearly completed processing, of all of the non-exempt material for plaintiff. Because defendant is entitled to judgment as a matter of law, defendant's motion should be granted and plaintiff's motions should be denied.

## I.     FBI's Enhanced Search Was Adequate

FBI's initial search for information in response to plaintiff's request for all information about himself was based heavily on the FBI number plaintiff included in his FOIA request.  See (First) Hardy Dec., Exhibit A (plaintiff's FOIA request).  When FBI searched its Central Records System through its automated indices using plaintiff's name, it found one main file: 245-HQ-657.  See id. ¶¶ 11-18 (describing FBI's records systems and methods of information retrieval).  Not until plaintiff's opposition to defendant's motion for summary judgment did plaintiff reveal that he had been interviewed by the FBI in St. Kitts and an "extensive history and association with international figures deeply involved in both illegal activity as well as law enforcement activities."  See Affidavit of Charles E. Miller in Support of Opp. To Summ. J., ¶ 13.  This information caused the FBI to go outside its usual search policy of identifying main

with respect to the 312 pages it received from the FBI in October, 2006.

[4]  Shortly before the deadline for filing this reply, defendant's counsel discovered that the Criminal Division referred three documents to the Executive Office for United States Attorneys ("EOUSA").  See Declaration of Kathy Hsu, ¶ 6.  Because EOUSA had not previously been contacted regarding this litigation, EOUSA has not yet provided a declaration.  Defendant will supplement the record with an appropriate declaration from EOUSA as soon as possible, but undersigned counsel did not want to put off filing this reply any longer in light of the multiple extensions defendant has sought while additional documents were located and processed.

files and to expand the search.  See 4th Hardy Dec. ¶ 9; see also 2nd Hardy Dec.(attached as an

exhibit to Docket Entry No. 22).  That search revealed one Legal Attache Bridgetown main file,

entitled Foreign Police Cooperation, and nine cross-references.  See 4th Hardy Dec. ¶¶ 9, 12.  All

of these documents have been retrieved and processed.  See id.

The evidence supporting the adequacy of FBI's total search efforts supports granting

summary judgment.  The agency has the burden only to conduct a reasonable search which it has

clearly done.  Oglesby v. United States Dep't of the Army, 920 F.2d 57, 68 (D.C. Cir. 1990);

Weisberg v. United States Dep't of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984).[5]  Rather than

bad faith, the agency's continued responses and releases evidence good faith.  See Maynard v.

Central Intelligence Agency, 986 F.2d 547, 565 (1st Cir. 1993) ("Rather than bad faith, we think

that the forthright disclosure by the [agency] that it had located the misplaced file suggests good

faith on the part of the agency.");  Meeropol v. Meese, 790 F.2d 942, 953 (D.C. Cir. 1986);

Klunzinger v. IRS, 27 F. Supp. 2d 1015, 1024 (W.D. Mich. 1998) (concluding that continued

release of responsive documents attests to agency's good faith in providing a complete

response).  Here, the FBI has diligently followed the trail of these records to its logical end and

---

[5]  In this case, plaintiff directed his request solely to FBI's Headquarters.  As a result, FBI searched its HQ Central Records System.  With regard to records maintained in FBI field offices, Department regulations place FOIA requesters on constructive notice that it is incumbent on them to direct their requests to those FBI field offices which they believe would most likely have records responsive to their requests.  28 C.F.R. §§ 16.3(a) & 16.4(a).  Plaintiff has been on notice of this policy and its particular application by FBI to his FOIA request since at least February, 2006.  See Docket Entry No. 22 & accompanying 2nd Hary Dec. ¶ 7.  Nothing in the current record in this case suggests that plaintiff ever submitted a FOIA request to a particular field office.  See Marks v. United States Dep't of Justice, 578 F.2d 261, 263 (9th Cir. 1978) (no duty to search FBI field offices when requester directed request only to FBI Headquarters and did not specify which field offices he wanted searched).

no more should be required.  Kowalczyk v. Department of Justice, 73 F.3d 386, 389 (D.C. Cir. 1996) (the agency is not required to speculate about potential leads to the location of the responsive documents).  The affidavits submitted document the reasonableness of the search because they are relatively detailed, non-conclusory, and made in good faith.  Weisberg, 745 F.2d at 1485; Perry v. Block, 684 F.2d 121, 125-26 (D.C. Cir. 1982); see Hudgins v. IRS, 620 F. Supp. 19, 21 (D.D.C. 1985).  In any FOIA case, the agency has the burden of establishing that it has made a good faith effort to conduct a search, "using the methods which can be reasonably expected to produce the information requested."  Oglesby v. United States Department of Army, 920 F.2d 57, 68 (D.C. Cir. 1990).  Although the adequacy of the search is measured by a "standard of reasonableness," and depends heavily on "the circumstances of the case," the agency can reasonably limit its production to the information actually requested.  Id.; Truitt v. Department of State, 897 F.2d 540, 542 (D.C. Cir.1990); Weisberg v. U.S. Dep't of Justice, 745 F.2d 1476, 1485 (D.C. Cir.1984); McGehee v. Central Intelligence Agency, 697 F.2d 1095, 1100-01 (D.C. Cir.1983).

FBI's successful and productive search for information is itself some evidence of reasonableness.  See Steinberg v. United States Dep't of Justice, 23 F.3d 548, 552 (D.C. Cir. 1994) (recognizing implicitly that an agency may properly limit its search to the specific subject of the request by affirming summary judgment in favor of the government notwithstanding the agency's failure to search files cross-referenced in documents contained in the files searched in response to the request).  Plaintiff may not amend or supplement his FOIA request in this litigation with  specific requests for information that depend upon the provision of new information.  See Kowalczyk, 73 F.3d at 389 (When "the requester clearly states that he wants

all agency records . . regardless of their location, but fails to direct the agency's attention to any particular office other than the one receiving the request, then the agency need pursue only a lead . . . that is both clear and certain.").  Although plaintiff may continue to speculate that additional information exists, nothing in his opposition and cross-motion indicates that the FBI should have located additional documents using his name.  See SafeCard Servs., Inc. v. Securities & Exchange Comm'n, 926 F.2d 1197, 1200 (D.C. Cir. 1991).  For example, plaintiff's alleged involvement in a civil rights investigation while he has been in prison in the United States, even if true, might well be retrievable under the name(s) of the suspect(s) rather than plaintiff's as a witness.  The issue is not whether there might exist any other records possibly mentioning plaintiff, but rather whether the actual search for responsive records was reasonable.  Id; Meeropol v. Meese, 790 F.2d 942, 956 (D.C. Cir. 1986).  Based on the record, the Court should find that FBI's search was adequate.

## II.    FBI's Referrals of Information to Originating Entities Were Proper

Referral of information originating with another agency or component is proper under DOJ regulations.  See 28 C.F.R. § 16.4(h); Stone v. Defense Investigative Serv., 1992 WL 52560, at *1 (D.D.C. Feb. 24, 1992) (recognizing that agencies may refer responsive records to originating agencies in responding to FOIA requests), aff'd, 978 F.2d 744 (D.C. Cir. 1992) (table).  All of those agencies and components have provided declarations to support their handling of these referrals.  A summary of these declarations and the exemptions invoked are as follows:

| Entity | Declaration Provided By | Released Information | FOIA Exemptions Invoked |
|---|---|---|---|
| | | | |

| DOJ Criminal Division | Kathy Hsu | 6 documents released in part | 5, 6, 7(C) |
|---|---|---|---|
| Bureau of Alcohol, Tobacco, Firearms and Explosives | Averill P. Graham | 1 document released in part | 2, 3, 7(C) |
| Defense Intelligence Agency. | Brian S. Kinsey | Yes. | 1, 2, 3, 6 |
| Drug Enforcement Administration | Leila I. Wassom | Yes.  Further classification review is pending | 2, 7(A), 7(C), 7(D), 7(F) |
| Department of State | Margaret P. Grafeld | Yes | 1, 5, 6, 7(C), 7(D) |
| Department of the Army | Brigadier General Salvatore F. Cambria and Brigadier General Richard Ellis | Yes, in part | 1, 2, 6 |
| Department of the Air Force | Richard M. Abboud | No. | 1 |

III.    **The Declarations and <u>Vaughn</u> Information Provided Is Sufficient To Justify All Claimed Exemptions and *In Camera* Inspection is Not Necessary**

The FBI has provided the Court with an extensive coded index for all of its withholdings as well as redacted copies of the documents themselves where it made excisions.  Other entities have provided descriptions of the documents and the basis for the claimed exemptions.  In total, the large and detailed record provides ample support for the exemptions claimed.

Although plaintiff's opposition to defendant's motion did not take issue with the application of the claimed exemptions, the burden remains on the government to justify its actions.  Many of the same exemptions discussed in the defendant's opening memorandum were also applied to the documents subsequently located by the FBI and referred to other entities.  Notably, certain additional exemptions were applied, largely because the nature of the Legat file processed by the FBI contained classified information.

A.    **Exemption 1 Covers Classified Information**

- 7 -

In particular, several entities have withheld information responsive to plaintiff's FOIA request under Exemption 1. Exemption 1 of the FOIA exempts from mandatory disclosure records that are:

> (A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order.

5 U.S.C. § 552(b)(1). A record is protected if it has been properly classified based on the substantive and procedural criteria set forth in the currently applicable Executive Order. See Halperin v. CIA, 629 F.2d 144, 148 (D.C. Cir. 1980); Weisman v. CIA, 565 F.2d 692, 697 (D.C. Cir. 1977).

As in any FOIA case, when determining whether the records at issue are properly within the scope of the exemption, this Court must "determine the matter de novo." 5 U.S.C. § 552(a)(4)(B). In Exemption 1 cases, however, the legislative history of the FOIA makes clear that "courts must 'recognize that the Executive departments responsible for national defense and foreign policy matters have unique insights into what adverse affects [sic] might occur as a result of public disclosure of a particular classified record.'" Salisbury v. United States, 690 F.2d 966, 970 (D.C. Cir. 1982) (quoting S. Rep. No. 1200, 93rd Cong., 2d Sess. 12 (1974)).

Courts therefore generally defer to the expert opinion of the agency in this area, reasoning that judges "lack the expertise necessary to second-guess such agency opinions in the typical national security FOIA case." Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981) (high degree of deference to be paid to agency's classification judgment); Students Against Genocide v. Department of State, 257 F.3d 828, 837 (D.C. Cir. 2001) ("substantial weight [must be given] to agency statements"); Edmonds v. FBI, 272 F. Supp.2d 35, 45-46

(D.D.C. 2003); Snyder v. CIA, 230 F. Supp.2d 17, 24 (D.D.C. 2002); see also Bowers v.
Department of Justice, 930 F.2d 350, 357 (4th Cir. 1991) ("What fact or bit of information may
compromise national security is best left to the intelligence experts."); Taylor v. Department of
the Army, 684 F.2d 99, 109 (D.C. Cir. 1982) ("utmost deference"); S. Conf. Rep. No. 1200, 93rd
Cong., 2d Sess. 12, reprinted in 1974 U.S. Code Cong. & Admin. News 6285, 6290 ("[T]he
conferees expect the Federal courts, in making de novo determinations in section 552(b)(1) cases
. . . will accord substantial weight to an agency's affidavit concerning the details of the classified
status of the disputed record.").

> As the Court of Appeals for this Circuit stated in Halperin v. CIA:
>
> Congress has indicated that courts should give "substantial weight" to such
> agency [affidavits] while conducting a de novo review of agency decisions that
> withhold information on the basis of FOIA Exemption 1. . . . We have held that
> summary judgment may be granted on the basis of agency affidavits if they
> contain reasonable specificity of detail rather than merely conclusory statements,
> and if they are not called into question by contradictory evidence in the record or
> by evidence of agency bad faith.
>
> If the agency's statements meet this standard, the court is not to conduct a detailed
> inquiry to decide whether it agrees with the agency's opinions; to do so would
> violate the principle of affording substantial weight to the expert opinion of the
> agency. Judges, moreover, lack the expertise necessary to second-guess such
> agency opinions in the typical national security FOIA case.

629 F.2d at 147-48 (footnotes omitted). Thus, an agency's invocation of Exemption 1 will
ordinarily be upheld if the agency's affidavits are sufficiently specific and there is no evidence of
bad faith. Public Citizen v. Department of State, 276 F.3d 634, 645 (D.C. Cir. 2002); Students
Against Genocide v. Department of State, 257 F.3d at 837; Center for Int'l Environmental Law v.
Office of the U.S. Trade Representative, 237 F. Supp.2d 17, 20 (D.D.C. 2002).

In this case, the FBI, Department of State, Defense Intelligence Agency, and the military all withheld certain information from the responsive documents under Exemption 1.[6]  4th Hardy Dec., ¶¶ 23-31; Grafeld Dec. ¶¶ 11-23; Abboud Dec. ¶¶ 6-10; Kinsey Dec. ¶¶ 8-17; Ellis Dec. ¶¶ 11-15; Cambria Dec. ¶¶ 7-14 .   The information was reviewed pursuant to Executive Order 12958, as amended, and is properly classified.  Id.  These agencies and entities have each determined that disclosure of the information withheld, which consists of information pertaining to foreign relations or foreign activities, intelligence activities or methods, or an intelligence source, reasonably can be expected to cause serious damage to the national security.  Id.

### 1.    Foreign Relations or Foreign Activities

The international investigation of criminal activities involving plaintiff in any capacity obviously implicates foreign relations and activities.  Courts have readily upheld the withholding of information that would reveal the foreign relations and/or foreign activities of the government which are classified.  See, e.g., Afshar v. Department of State, 702 F.2d 1125, 1130 (D.C. Cir. 1983); Judicial Watch Inc. v. Department of Commerce, 337 F. Supp.2d 146, 161-63 (D.D.C. 2004); Linn v. Department of Justice, 1995 WL 631847, at *26 (D.D.C. Aug. 22, 1995) (decided under predecessor Executive Order 12,356).  Accordingly, this information was properly withheld.  See Cambria Dec. ¶¶ 11-14; Grafeld Dec. ¶¶ 11-19.

---

[6]  Due to a substantial backlog in requests for review for possible declassification, the Drug Enforcement Administration has not yet been able to determine whether it will continue to assert Exemption 1 for certain material because it is classified.  See Wassom Dec. ¶¶ 9-12, 25-27 (explaining severe staff shortages at the El Paso Intelligence Center, which performs classification reviews, and estimating that DEA will need at least six more months to complete its classification review).  Once the review is complete, DEA will provide any additional releasable material to plaintiff and notify the Court.  DEA anticipates that even if material is de-classified, the other FOIA exemptions it has claimed and justified in its declaration will apply to segregable portions of the documents currently under classification review.

### 2.    Intelligence Activities, Sources or Methods

With respect to information withheld that pertains to intelligence activities or methods, Mr. Hardy explains that the documents at issue in this case contain information from an intelligence source that requires continued classification because disclosure would unacceptably risk damage to the FBI's intelligence and counter-intelligence gathering. See 4th Hardy Dec. ¶ 26. Mr. Hardy further confirms that the documents allow identification of the intelligence source itself. Id. ¶ 27; see also Kinsey Dec. ¶¶ 10-13 (explaining withholding of information based on presence of human intelligence sources classified at the SECRET level); Grafeld Dec. ¶¶ 20-21. Disclosure of this information "could reasonably be expected to cause serious damage to the national security ." 4th Hardy Dec. ¶ 23; see also id. ¶¶ 30-31; Kinsey Dec. ¶¶ 9, 17; Cambria Dec. ¶ 15; Ellis Dec. 20.

The FBI and others also withheld information pertaining to a classified source the disclosure of which would reveal the identify of the source. Disclosure of this information reasonably could be expected to damage national security and would damage the FBI's ability to protect and recruit intelligence sources in the future. Additionally, "disclosure of source's identities could jeopardize the physical well-being of the source's family or associates or subject them to public ridicule and/or ostracism." 4th Hardy Dec. ¶ 28.

Courts have readily upheld the withholding of information that would reveal the foreign relations and/or foreign activities of the government which are classified. See, e.g., Public Citizen v. Department of State, 276 F.3d 634, 644 (D.C. Cir. 2002); Schrecker v. U.S. Department of Justice, 254 F.3d 162, 166 (D.C. Cir. 2001); Jones v. FBI, 41 F.3d 238, 244 (6th Cir. 1994) (protecting "numerical designators" assigned to national security sources); Patterson

v. FBI, 893 F.2d 595, 597, 601 (3rd Cir. 1990); Judicial Watch Inc. v. Department of

Commerce, 337 F. Supp.2d 146, 161-63 (D.D.C. 2004); Voinche v. FBI, 940 F. Supp. 323, 327

(D.D.C. 1996), aff'd per curiam, No. 96-5304, (D.C. Cir. June 19, 1997). See also, CIA v. Sims,

471 U.S. 159, 175 (1985). Accordingly, this information was properly withheld.

    Thus, in proving that it has complied with the substantive requirements for classification,

the FBI and others have first shown that its information falls within one or more of the categories

of classifiable information set forth in Section 1.5 of Executive Order 12958. Specifically, as set

forth above, they determined that the information withheld is properly classifiable under

Executive Order 12958, § 1.4(c) and(d), because its disclosure would reveal intelligence

activities, methods and sources, and foreign relations or foreign activities.

    Second, an original classification authority for the FBI has determined that unauthorized

disclosure of the information, by itself or in the context of other information, could reasonably

be expected to cause damage to the national security. See Executive Order 12958, § 1.2(a); §

1.3; 4th Hardy Dec. ¶¶ 2. The information at issue was reviewed for classification in light of all

the foregoing considerations. In each case where information has been withheld it was

determined that the information falls within the category of information described above and that

the release of the information could reasonably be expected to cause the type of harm discussed.

The 4th Hardy Declaration and the accompanying declarations invoking Exemption 1 fully

establish that the information withheld has been properly classified in accordance with the

substantive requirements of Executive Order 12958. See, e.g., Carlisle Tire & Rubber Co. v.

Customs Service, 633 F.2d 210, 216 (D.C. Cir. 1980).

Regarding the procedural requirements of Executive Order 12958, the 4th Hardy Declaration makes clear that the FBI, State and others carefully complied with the Executive Order. The records have been marked and stamped with the proper designations and have been processed in accordance with the requirements of Executive Order 12958, as amended. Where information in the records reviewed was reasonably segregable and would not reveal information damaging to the national security, and was not otherwise exempt, it has been released. Thus, all the procedural requirements have been met.

Once it has been established that the particular records in question are specifically authorized to be kept classified in the interest of national security, and that they are in fact properly classified pursuant to the applicable Executive Order, the information is exempt from the mandatory disclosure provisions of the FOIA. See, e.g., Taylor v. Department of the Army, 684 F.2d at 109; Halperin v. CIA, 629 F.2d 144, 148 (D.C. Cir. 1980). Indeed, as the Court of Appeals for this Circuit has noted:

> The test is not whether the Court personally agrees in full with the [agency's] evaluation of the danger--rather, the issue is whether on the whole record the [a]gency's judgment objectively survives the test of reasonableness, good faith, specificity, and plausibility in this field of foreign intelligence in which the [agency] is expert and given by Congress a   special role.

Gardels v. CIA, 689 F.2d 1100, 1105 (D.C. Cir. 1982).

In the instant case, the 4th Hardy Declaration and other declarations fully demonstrate that the requested information falls within the substantive definitions of classifiable material under Executive Order 12958, as amended, and that the documents are in fact properly classified in accordance with the procedural requirements of this Executive Order. Therefore, the government has properly invoked Exemption 1 to withhold this information.

- 13 -

**B.     The State Department and DOJ's Criminal Division Properly Applied Exemption 5 to a Handful of Documents**

Another exemption not previously invoked in this case is Exemption 5.  Exemption 5 applies to both inter- and intra-agency communications which would not be available by law to a party other than a party in litigation with the particular agency.  5 U.S.C. § 552(b)(5).  In other words, Exemption 5 allows agencies to withhold documents which would normally be privileged in the context of civil discovery.  NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 149 (1975); Martin v. Office of Special Counsel, 819 F.2d 1181, 1184-85 (D.C. Cir. 1987) (making clear that all civil discovery privileges apply through Exemption 5).  This section of the FOIA incorporates, among other things, the attorney-client privilege, the attorney work product doctrine, and the executive "deliberative process privilege that protects candid internal discussions of legal or policy matters."  Maricopa Audubon Soc'y v. United States Forest Serv., 108 F.3d 1082, 1084 n.1 (9th Cir. 1997).

In this case, the State Department applied Exemption 5 to protect "the candid views and advice of U.S. Government officials in their predecisional deliberations on policy formulation and administrative direction."  See Grafeld Dec. ¶ 25.  This kind of information was contained in a draft telegram.  Id.  In addition, the State Department withheld attorney-client information from five other documents.  Id.; see also id. ¶¶ 60-61, 87-88, 90.  The descriptions of the document and the information contained in them demonstrate that the State Department properly withheld information under Exemption 5.

DOJ's Criminal Division also relied on Exemption 5 to protect information covered by the attorney work product doctrine in conjunction with the deliberative process prong of Exemption 5.  See Hsu Dec. ¶¶ 11-22.  Specifically, the Criminal Division withheld drafts and

legal memoranda which "provide detailed insight into Division attorneys' thought processes in developing a drug and extradition case." Id. ¶ 16. The protections of Exemption 5 as to the attorney work-product privilege, as well as the other privileges, are not limited to civil litigation. Rather, courts have either explicitly or implicitly recognized that the work-product doctrine is applicable to criminal prosecutions by upholding under Exemption 5 the nondisclosure of documents prepared in criminal investigations and prosecutions. See Antonelli v. Sullivan, 732 F.2d 560, 561 (7th Cir. 1983); Ferri v. U.S. Dept. of Justice, 573 F.Supp. 852, n. 33 (W.D.Pa. 1983); Harvey v. U.S. Dept. of Justice, 747 F.Supp. 29, 37 (D.D.C. 1990); Durham v. U.S. Dept. of Justice, 829 F.Supp. 428, 433 (D.D.C. 1993); Jimenez v. FBI, 938 F.Supp. 21, 28 (D.D.C. 1996). Further, Fed. R. Crim. Proc. 16(a)(2) excludes from disclosure the discovery or inspection of reports, memoranda, or other internal government documents made by the attorney for the government or any other government agent investigating or prosecuting the case. "[U]nder Rule 16(a)(2), [a defendant] may not examine Government work product in connection with his case." United States v. Armstrong, 517 U.S. 456, 116 S.Ct. 1480, 1485 (1996).

Courts have held that "if material is exempt from FOIA disclosure because of the attorney work product privilege, the exemption does not terminate at the close of the litigation for which the material was prepared." See FTC v. Grolier, Inc., 462 U.S. 19, 28 (1983). Rather, "attorney work product is exempt from mandatory disclosure without regard to the status of the litigation for which it was prepared." Grove v. Dep't of Justice, 802 F.Supp. 506, 514 (D.D.C. 1992). Accordingly, the Criminal Division's excisions should be upheld.

C.    **Exemption 7(F)**

DEA applied Exemption 7(F) to further ensure protection of the identifying information and safety of individuals associated with its investigation of plaintiff's association with an extensive criminal narcotics enterprise and possible connection to a kidnapping-murder.  See Wassom Dec. ¶ 47-50; 4th Hardy Dec. ¶ 5; Miller v. United States, 131 Fed. Appx. 161 (11th Cir. 2005) (stating that plaintiff's conviction for conspiracy to import cocaine into the U.S. was affirmed in 2001).  Exemption 7(F) allows agencies to withhold identifying information of individuals when disclosure "could reasonably be expected to endanger [that person's] life or physical safety."  5 U.S.C. § 552(b)(7)(F). Plaintiff's conviction in this case involved controlled substances and conspiracy.  The serious and potentially violent nature of such crimes coupled with plaintiff's lengthy sentence supports DEA's treatment of strict confidentiality for all individuals associated with the investigation and prosecution of plaintiff and his co-defendant. Cf. Perrone v. FBI, 908 F. Supp. 24 (D.D.C. 1995) (upholding application of Exemption 7(F) in case involving a plaintiff who had been convicted of drug trafficking offenses).  Accordingly, DEA's withholding of names and personal information of DEA employees, other law enforcement personnel, and third parties in connection with the investigation of violent crimes is appropriate and consistent with Exemption 7(F).

A review of the declarations and Vaughn indices submitted reveals that the government carefully reviewed the information and confirms that all reasonably segregable non-exempt material has been released.  See Wassom Dec. ¶¶ 59-64 & attached Vaughn index; Graham Dec. ¶ 24; Hsu Dec. ¶15; 4th Hardy Dec. ¶ 13; Grafeld Dec. Conclusion.  Accordingly, the Court should find affirmatively that defendants have satisfactorily released all reasonably segregable material.  Armstrong, 97 F.3d at 578-79; Mead Data, 566 F.2d at 26.

D.    *In Camera* Inspection is Unnecessary

Although the FOIA permits in camera inspection, whether to undertake such a burdensome review is firmly committed to the broad discretion of the Court.  Spirko v. United States Postal Serv., 147 F.3d 992, 996 (D.C. Cir. 1998).  In this case, where the information presented to the Court includes declarations detailing the documents, and in some cases attaching copies of them, and the application of well-settled exemptions under FOIA to sensitive law enforcement documents concerning international criminal investigations, in camera review is unnecessary.  PHE, Inc. v. United States Dep't of Justice, 983 F.2d 248, 252-53 (D.C. Cir. 1993) (observing that in camera review is generally disfavored, but is permissible on remand arising from inadequate declaration).  This is especially true in light of the detailed index and justifications proffered by the defendant and the absence of any challenge by plaintiff to the exemptions as applied to the documents he has received to date.  FOIA actions, like any other, are intended to be resolved through the advocacy process; plaintiff's inability to defeat defendant's motion for summary judgment does not entitle him to have the Court take a second look at all of the documents.  Therefore, plaintiff's burdensome and unjustified request for in camera review should be denied.

<u>Conclusion</u>

The record here is now very nearly complete.  Because FBI has demonstrated that its search for information responsive to plaintiff's request for information about himself was adequate, and that most of the material it located has been properly reviewed and non-exempt material released, and that all entities that processed the material properly applied Exemptions 1, 2, 5, 6, 7(C), 7(D), and 7(F) and released all reasonably segregable, non-exempt material, the

- 17 -

Court should enter judgment in part for defendant.  Once the Court receives the remainder of the

material needed to complete the record (a supplemental declaration from the Drug Enforcement

Administration, and declarations from the Executive Office for United States Attorneys and one

other entity), the Court will be in a position to grant final judgment.

      Dated:  May 7, 2007.

                        Respectfully submitted,


                        _____

                        JEFFREY A. TAYLOR, D.C. Bar #498610

                        United States Attorney

                        _/s/_____

                        RUDOLPH CONTRERAS, D.C. Bar # 434122

                        Assistant United States Attorney

                        _/s/_____

                        JANE M. LYONS, D.C. Bar #451737

                        Assistant United States Attorney

                        United States Attorney's Office

                        Civil Division

                        555 4th Street, N.W. - Room E4822

                        Washington, D.C. 20530

                        (202) 514-7161

<u>**CERTIFICATE OF SERVICE**</u>

     I hereby certify that on this 7th day of May, 2007, I placed a copy of the foregoing **DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** in the first class United States mail, postage prepaid, marked for delivery to:


          **CHARLES MILLER**
          Reg. No. 18123-053
          USP COLEMAN II
          U.S. PENITENTIARY
          P.O. BOX 1034
          COLEMAN, FL  33521



                            /s/_____
                            Jane M. Lyons
                            Assistant United States Attorney