## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| |
|---|
| CHARLES MILLER, |
|                 Plaintiff, |
|    v. |
| UNITED STATES DEPARTMENT OF JUSTICE, |
|               Defendant. |

Civil Action No. 05-1314 (RCL)

## <u>MEMORANDUM OPINION</u>

This action, which is brought under the Freedom of Information Act ("FOIA"), 5 U.S.C.

§ 552, is before this Court on defendant's Renewed Motion [45] for Summary Judgment.  For the

reasons set forth below, the motion will be GRANTED.

### I.  Background

On or about March 16, 2003, plaintiff sent a FOIA request to the Federal Bureau of

Investigation headquarters office in Washington, D.C. ("FBIHQ") seeking information about

himself including, but not limited to: "(1) arrest records, (2) investigation and/or investigatory

reports, (3) reports or evidentiary and/or scientific information findings, (4) wants, warrants,

and/or detainers, (5) final and closing investigation reports; and (6) any and/or all information,

data, or reports not otherwise exempt by statute."  Compl., Ex. A (FOIA Request).  In response,

on September 8, 2004, FBIHQ released 191 pages of redacted records and indicated that the

redactions had been made pursuant to FOIA Exemptions 7(C) and 7(D).  In addition, FBIHQ

notified plaintiff that it withheld another 62 pages of records pursuant to FOIA Exemption 3.

Plaintiff unsuccessfully appealed FBIHQ's decision to the Justice Department's Office of Information and Privacy ("OIP").

Plaintiff filed this action in June 2005. His response to defendant's Motion for Summary Judgment prompted FBIHQ to conduct a second search for records responsive to his FOIA request. As a result of the second search, FBIHQ located a Bridgetown main file, and from this file promptly released 63 pages of redacted public source documents, indicating that the redactions had been made pursuant to FOIA Exemptions 1, 2, 5, 6, 7(A), 7(C), 7(D), and 7(F). Later, FBIHQ released 323 pages, out of 1,440 pages reviewed, indicating that the redactions had been made pursuant to FOIA Exemptions 1, 2, 5, 6, 7(C), 7(D), 7(E), and 7(F).

Among the responsive FBIHQ records were documents that originated in full or in part with other government agencies or other components of the United States Department of Justice ("DOJ"). These documents were referred to the DOJ's Criminal Division, the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), the Defense Intelligence Agency ("DIA"), the Drug Enforcement Administration ("DEA"), the Department of Defense ("DOD"), the State Department, and the Department of the Army ("Army") for direct response to plaintiff. In addition, FBIHQ forwarded 312 pages of records to "another government agency for direct response to plaintiff." 4th Hardy Decl. ¶ 108. FBIHQ did not identify the agency and the record of this case does not explain the disposition of these records.[1]

This Court granted in part and denied in part defendant's initial Motion for Summary Judgment. *See* Mem. Op. [41] at 56. On May 10, 2012, defendant released an additional 19 pages in their entirety and 43 redacted pages to plaintiff. Def.'s Supplement to the R. on its

---

[1] The Court's original Opinion did not address these documents or ask for clarification the way it did for the other documents now addressed in this Opinion. Plaintiff has not raised any objection to these documents in his subsequent pleadings. Therefore, any objection is waived. *See Klugel v. Small*, 519 F. Supp. 2d 66, 72 (D.D.C. 2007) (citing *Hopkins v. Women's Div. Gen. Bd. of Global Ministries*, 238 F. Supp. 2d 174, 178 (D.D.C. 2002)).

Renewed Mot. Summ. J. and Mot. for Final J. in its Favor ¶ 5.  Defendant withheld 43 pages in

their entirety, citing the Privacy Act Exemption j(2) and FOIA Exemptions 7(C), 7(D), 7(E), and

7(F).  *Id.*, Ex. X and Y.

This Court will first consider the newly-raised jurisdictional claims; second, the

remaining documents on which it directed defendant to clarify its rationale for withholding; and

finally, defendant's supplement to the record and new withholdings.

## II.  Standard of Review

Summary judgment is appropriate when the moving party demonstrates that "there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law."  Fed. R. Civ. P. 56(c).  In determining whether a genuine issue of material fact exists,

the trier of fact must view all facts, and all reasonable inferences drawn therefrom, in the light

most favorable to the non-moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S.

574, 587 (1986).  In order to defeat summary judgment, a factual dispute must be capable of

affecting the substantive outcome of the case and be supported by sufficient admissible evidence

that a reasonable trier of fact could find for the non-moving party.  *Anderson v. Liberty Lobby,

Inc.*, 477 U.S. 242, 247–48 (1986).

An agency may be entitled to summary judgment in a FOIA case if it demonstrates that

no material facts are in dispute, it has conducted an adequate search for responsive records, and

each responsive record that it has located has either been produced to the plaintiff or is exempt

from disclosure.  *See Weisberg v. DOJ*, 705 F.2d 365, 368 (D.C. Cir. 1980).  To meet its burden,

a defendant may rely on reasonably detailed and non-conclusory declarations.  *See McGehee v.

CIA*, 697 F.2d 1095, 1102 (D.C. Cir. 1983).

In a FOIA case, the court determines *de novo* whether an agency properly withheld information under a claimed exemption. *Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977). "The underlying facts are viewed in the light most favorable to the [FOIA] requester," *Weisberg*, 705 F.2d at 1350, and the exemptions must be narrowly construed. *FBI v. Abramson*, 456 U.S. 615, 630 (1982). However, courts generally defer to agency expertise in national security matters. *See, e.g., Taylor v. Dep't of the Army*, 684 F.2d 99, 109 (D.C. Cir. 1982) (according "utmost deference" to classification affidavits); *Krikorian v. Dep't of State*, 984 F.2d 461, 464–65 (D.C. Cir. 1993) (acknowledging "unique insights" of executive agencies responsible for national defense and foreign relations). While the agency must not withhold information in bad faith, *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981), the affidavits submitted by the agency to demonstrate the adequacy of its response are presumed to be in good faith. *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981).

### III.  JURISDICTION

#### a.  Exhaustion of Remedies

In its Renewed Motion for Summary Judgment, defendant raises for the first time the issue of plaintiff's non-payment of fees, claiming that such non-payment strips the Court of subject matter jurisdiction. *Id*. at 7. In response, plaintiff contends that the issue was raised "prejudicially late, and consequently waived." Pl.'s Opp. To Def.'s Renewed Mot. Summ. J. ("Pl.'s Opp.") at 15. Both parties' sweeping assertions lack adequate legal support.

Before filing a lawsuit in federal court, plaintiffs must first exhaust their administrative remedies, giving the agency "an opportunity to exercise its discretion and expertise on the matter and to make a factual record to support its decision." *Oglesby v. Dep't of Army*, 920 F.2d 57, 61

(D.C. Cir. 1990).  "Exhaustion [of administrative remedies] does not occur until the required fees are paid or an appeal is taken from the refusal to waive fees."  *Id.* at 66.  Exhaustion is not jurisdictional, because Congress did not unequivocally state that the judiciary is barred from hearing a decision prior to an administrative agency's decision.  *Hidalgo v. FBI*, 444 F.3d 1256, 1258 (D.C. Cir. 2003) (citing *Oglesby*, 920 F.2d at 61).  However, the administrative scheme of FOIA "favors treating failure to exhaust as a bar to judicial review."  *Id.* at 1259.  "[F]ailure to exhaust precludes judicial review if 'the purposes of exhaustion' and the 'particular administrative scheme' support such a bar.'"  *Id.* at 1258 (quoting *Oglesby*, 920 F.2d at 61)*; see Wilbur v. CIA*, 355 F.3d 675, 677 (D.C. Cir. 2004).  This renders defendant's assertion that this Court de facto lacks subject matter jurisdiction incorrect.  This Court finds that a requester's failure to exhaust his administrative remedies is neither jurisdictional nor, as plaintiff contends, waived.[2]  Following this Circuit's precedent in *Wilbur*, this Court must factually determine whether the purposes of exhaustion were fulfilled prior to plaintiff bringing his claim.  If they were, this Court will not be barred from deciding the FOIA dispute on its merits.  *See id.* at 677.

   The purposes of exhaustion are "preventing premature interference with agency processes, . . . affording the parties and the courts the benefit of the agency's experience and expertise, [and] compiling a record which is adequate for judicial review."  *Weinberger v. Salfi*, 422 U.S. 749, 765 (1975) (original alterations omitted).  In this case, plaintiff's non-payment of past fees does not thwart the purposes of exhaustion set forth in *Weinberger*.

   First, this Court is not prematurely interfering with agency processes, because the administrative scheme does not bar judicial review.  This lawsuit was filed in June 2005, more

---

[2] Plaintiff gives no legal support for his waiver argument.  Instead, he contends that he constructively exhausted his remedies upon defendant's failure to release information in a timely fashion.  Pl.'s Opp. at 15.  However, this does not comport with *Oglesby*, 902 F.2d at 132–33, in which this Circuit held that if an agency responds to a FOIA request beyond the statutory period but before commencement of litigation, a plaintiff's remedies must still be exhausted.  Since defendant responded before litigation, the issue of non-payment must still be resolved.

than two years after plaintiff's initial FOIA request, at which time plaintiff did not owe any fees. FOIA requires each agency to "specify[] the schedule of fees applicable to the processing of requests under this section and establishing procedures and guidelines for determining when such fees should be waived or reduced." 5 U.S.C. § 552(a)(4)(A)(i). Defendant did so, establishing that "no fee will be charged unless the cost of search in excess of two hours plus the cost of duplication in excess of 100 pages totals more than $14.00." 28 C.F.R. § 16.11(d)(5). "In cases in which a requester has been notified that actual or estimated fees amount to more than $25.00, the request shall not be considered received and further work shall not be done on it until the requester agrees to pay the anticipated total fee." 28 C.F.R § 16.11(e). In sum, defendant established that requesters would not be charged for costs under $14.00, but that requesters must, at minimum, promise to pay any costs over $25.00 before the any work shall be done on their behalf. If fees are properly requested and remain unpaid, a federal lawsuit may not commence. *See Oglesby*, 920 F.2d at 66.

In the instant case, defendant released responsive documents to plaintiff on two separate occasions: September 8, 2004 and April 17, 2007. *See* Fifth Declaration of David M. Hardy ("5th Hardy Decl."), Ex. A and B. The 2004 release of 191 pages stated, "As a means of releasing documents to you in a more timely and efficient manner, we are enclosing the requested material in advance of your payment. At this time, we are requesting payment in the amount of $9.10." 5th Hardy Decl., Ex. A. Though defendant acknowledged 28 C.F.R. § 16.11 in its Motion,[3] it failed to account for § 16.11(d)(5), which states that "no fee will be charged unless the cost of search in excess of two hours plus the cost of duplication of 100 pages totals more than $14.00." *Id.* Because the cost in excess of duplication of the first 100 pages was $9.10, defendant's request for payment was unfounded. Therefore, its argument that plaintiff

---

[3] *See* Def.'s Renewed Mot. Summ. J. at 8.

failed to exhaust his administrative remedies prior to his filing of this lawsuit in 2005 is unpersuasive.  This lawsuit was not a premature interference with agency processes.  In fact, it has prodded the DOJ into making the appropriately extensive searches that it did not conduct prior to this suit being filed.

Second, the parties and court have been afforded the agency's experience and expertise. At no time has defendant contended that plaintiff's non-payment has been an impediment to its ability to provide its expertise in this matter.  On the contrary, defendant freely provided responsive documents to plaintiff in advance of payment as recently as June 6, 2012.[4]  Though defendant asserts that this Court lacks jurisdiction due to the exhaustion of remedies doctrine, it does not assert (for it cannot) that plaintiff's failure to pay $41.40 will prevent it from providing the disputed documents.  Its history of providing documents in advance of payment belies its argument.  *See Antonelli v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 555 F. Supp. 2d 16, 23 (D.D.C. 2008) (holding that plaintiff's payment three years into the litigation was immaterial to whether the plaintiff was able to bring the original claim).  This Court finds no example of the instant litigation interfering with Department of Justice's expertise.

Third, plaintiff's non-payment did not preclude the compilation of an adequate record for this Court's review.  Defendant provided responsive documents on two separate occasions without plaintiff's payment and continued to supplement the record regarding the FOIA exemptions it invoked throughout the litigation.  *See, e.g.*, Def.'s Supplement to the R. on its Renewed Mot. Summ. J. and Mot. for Final J. in its Favor (continuing to provide documents and *Vaughn* indices several years into litigation).  Plaintiff's non-payment did little to prevent the record from being built throughout litigation.

---

[4] *See* Def.'s Supplement to the R. on its Renewed Mot. Summ. J. and Mot. for Final J. in its Favor.

To conclude, this Court finds (1) plaintiff did not owe defendant any fees at the commencement of this lawsuit under 28 C.F.R. § 16.11(d)(5), and (2) plaintiff's non-payment following defendant's second release years into the litigation did not strip this Court of jurisdiction, because the purposes of exhaustion were met and particular administrative scheme was satisfied at the time plaintiff filed his complaint. Having established jurisdiction, this Court will decide the remaining FOIA disputes on their merits.

## IV.  PREVIOUSLY WITHHELD DOCUMENTS

In response to Defendant's Motion for Summary Judgment, this Court ordered defendant to provide more information regarding why several documents were withheld under particular FOIA exemptions.  Having reviewed defendant's Renewed Motion for Summary Judgment further explaining its rationale, this Court returns to each of these documents.

### a.  Exemption 1

Exemption 1 protects matters that are: "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order[.]"  5 U.S.C. § 552(b)(1).  Pursuant to Executive Order 13292, 68 Fed. Reg. 15,315 (Mar. 28, 2003), information may be classified only if all of the following conditions are met:

(1) an original classification authority is classifying the information;
(2) the information is owned by, produced by or for, or is under the control of the United States Government;
(3) the information falls within one of more of the categories of information listed in section 1.4 of this order; and
(4) the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security, which includes defense against transnational terrorism, and the original classification authority is able to identify or describe the damage.

Exec. Order No. 13292 § 1.1(a).[5]  The phrase "damage to the national security" means "harm to the national defense or foreign relations of the United States from the unauthorized disclosure of information, taking into consideration such aspects of the information as the sensitivity, value, utility, and provenance of that information."  Exec. Order. No. 13292 § 6.1(j).  Information may be classified either at the "top secret," "secret," or "confidential" level, *id.* § 1.2(a), and such classified information must fall within one of the following categories:

(a)  military plans, weapons systems, or operations;
(b)  foreign government information;
(c)  intelligence activities (including special activities), intelligence sources or methods, or cryptology;
(d)  foreign relations or foreign activities of the United States, including confidential sources;
(e)  scientific, technological, or economic matters relating to the national security, which includes defense against transnational terrorism;
(f)  United States Government programs for safeguarding nuclear materials or facilities;
(g)  vulnerabilities or capabilities of systems, installations, infrastructures, projects, plans, or protection services relating to the national security, which includes defense against transnational terrorism; or
(h)  weapons of mass destruction.

*Id.* § 1.4.

### i.  Air Force Document Number One

Defendant withholds pursuant to Exemption 1 Air Force "Document Number One," an "intelligence report regarding the overseas location and activities of a particular fugitive from justice."  Decl. of Michael L. Bietsch ("Bietsch Decl.") ¶ 3.  The report satisfies subsection (A) of 5 U.S.C. § 552(b)(1) because it falls under Exec. Order No. 13292 § 1.4(c), which allows for classification of "intelligence activities (including special activities), intelligence sources or methods, or cryptology."  The intelligence report defendant withheld contains "specific information provided by a source, and, if disclosed, reasonably could be expected to reveal the

---

[5] Exec. Order 13292 further amends Exec. Order No. 12958, 60 Fed. Reg. 19,825 (Apr. 20, 1995), as amended.

identity of the contributing source."  Bietsch Decl. ¶ 8.  This satisfies § 552(b)(1)(B) because the document was properly classified as an intelligence document.  In light of defendant's explanation and plaintiff's failure to provide any legal objection, this Court finds that defendant properly withholds Air Force Document Number One under Exemption 1.

Defendant argues, "redaction and/or segregation would serve to protect the identity of the source."[6]  Pl.'s Opp. at 9.  It is true that "reasonably segregable" portions of withheld documents must be disclosed unless they are "inextricably intertwined with exempt portions."  *Mead Data Cent.*, 566 F.2d at 260.  However, defendant asserts that exemption 1 protects more than just a source's identity.  Def.'s Reply in Support of Renewed Mot. Summ. J. ("Def.'s Reply") at 5.  The document is classified at the Secret level and contains foreign intelligence sources and information.  *Id.*  Since it has been properly withheld under exemption 1, defendant argues that the entirety of the document may be withheld.  *See Halperin v. CIA*, 629 F.2d 144, 148 (D.C. Cir. 1980) (holding that if agencies' declarations were made in good faith, it was not the place of the court "to conduct a detailed inquiry to decide whether it agrees" with them).  Seeing no evidence of bad faith, the Court will defer to defendant's opinion about segregability and hold that the entire document may be withheld.

### b.  Exemption 3

Exemption 3 covers records that are

specifically exempted from disclosure by statute . . ., provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld.

---

[6] In the Court's original Opinion, it noted that it would defer "consideration of segregability until such time as it receives further briefing" on the matters it addressed.  Mem. Op. at 56 n.29.  The additional briefing by both plaintiff and defendant on the remaining documents and issue of segregability are adequate for the Court to now make a determination.

5 U.S.C. § 552(b)(3).  When an agency invokes Exemption 3, it must submit affidavits that

provide "the kind of detailed, scrupulous description [of the withheld documents] that enables a

District Court judge to perform a de novo review."  *Church of Scientology of Cal., Inc. v. Turner*,

662 F.2d 784, 786 (D.C. Cir. 1980).  Though the affidavits need not contain factual descriptions

the public disclosure of which would endanger the agency's mission, *Vaughn v. Rosen*, 484 F.2d

820, 826–27 (D.C. Cir. 1973), neither can they be vague or conclusory.  *Church of Scientology*,

662 F.2d at 787.  This Court seeks to balance the inherent tension between the public's interest in

government goings-on with the protection of an agency's legitimate need for privacy.  As in

*Vaughn*, this Court relies on the agency to help strike the balance by providing an appropriately

detailed affidavit.  *See Vaughn*, 484 F.2d at 826–27.

### i. FBIHQ Main File 245-HQ-657

"Title III of the Omnibus Crime Control and Safe Streets Act of 1968 . . . 'falls squarely

within the scope' of Exemption 3."  *Davis v. DOJ*, 968 F.2d 1276, 1280–81 (D.C. Cir. 1992)

(quoting *Lam Lek Chong v. DEA*, 929 F.2d 729, 733–34 (D.C. Cir. 1991)).  In response to the

withholding of FBI documents pursuant to Title III, this Court wrote, "FBIHQ's declaration is

incomplete . . . as it neither explains that it had no discretion on the decision to withhold this

information nor sets forth the particular criteria in reaching its decision to withhold the wiretap

information in full."  Mem. Op. [41] at 28–29.  In its latest pleadings, defendant reiterates that

disclosure of the FBI wiretap records is barred by Title III of 18 U.S.C. §§ 2510–20. Def.'s

Renewed Mot. Summ. J. at 7; 5th Hardy Decl. ¶¶ 5–6.  This time, however, defendant specified

that the information pertained to "the identities of the individuals targeted for interception" and

"the physical location of the electronic microphone surveillance, the participants of some of the

intercepted conversations, and the summarized content of some of the intercepted

conversations." 5th Hardy Decl. ¶ 6.  This description makes it clear that Title III applies.  *See* 18 U.S.C. § 2511(1)(c) (barring the disclosure of wiretaps).  Defendant's more detailed description satisfies the its burden regarding Exemption 3.

However, plaintiff cites *Cottone v. Reno*, 193 F.3d 550 (D.C. Cir. 1990) in support of his argument that "the applicable case law does allow for release of Title III wiretap information." Pl.'s Opp. at 10.  However, *Cottone* does not control this case.  *Cottone* focused on the public-domain doctrine, which the court characterized as "an important, albeit narrow exception" to the general premise that Title III information is not subject to disclosure.  *Cottone*, 193 F.3d at 553–54.  "Under our public-domain doctrine, materials normally immunized from disclosure under FOIA lose their protective cloak once disclosed and preserved in a permanent public record."  *Id.* at 554.  Unlike the wiretaps in *Cottone*, which were played in open court, plaintiff presented no evidence in this case that the wiretaps in question have ever been publically disclosed.  Because plaintiff has not met his burden of affirmatively showing disclosure, *Cottone* does not support the disclosure of these documents protected by Title III.  *See Davis,* 968 F.2d at 1280 (holding that documents could be withheld unless the plaintiff clearly showed that they were in the public domain).  This Court holds that Exemption 3 is properly invoked regarding FBIHQ Main File 245-HQ-657.

### c.  Exemption 5

Exemption 5 protects from disclosure "inter-agency or intra-agency memorand[a] or letters which would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  "[T]he parameters of Exemption 5 are determined by reference to the protections available to litigants in civil discovery; if material is not 'available' in discovery, it may be withheld from FOIA requesters."  *Burka v. U.S. Dep't of Health & Human*

*Servs.*, 87 F.3d 508, 516 (D.C. Cir. 1996); *see also NLRB. v. Sears, Roebuck & Co.*, 421 U.S. 132, 148 (1975).

The deliberative process privilege "shields only government 'materials which are both predecisional and deliberative.'" *Tax Analysts v. IRS*, 117 F.3d 607, 616 (D.C. Cir. 1997) (quoting *Wolfe v. Dep't of Health & Human Servs.*, 839 F.2d 768, 774 (D.C. Cir. 1988) (en banc)). To show that a document is predicisional, the agency need not identify a specific final agency decision; it is sufficient to establish "what deliberative process is involved, and the role played by the documents at issue in the course of that process." *Heggestad v. DOJ*, 182 F. Supp. 2d 1, 7 (D.D.C. 2000) (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 868 (D.C. Cir. 1980)). A document is "deliberative" if it "makes recommendations or expresses opinions on legal or policy matters." *Vaughn*, 484 F.2d at 1143–44. The deliberative process privilege is thought to "prevent injury to the quality of agency decisions." *Sears, Robuck & Co.*, 421 U.S. at 151.

*i. State Department Document F27A*

Defendant invokes Exemption 5 regarding "draft telegrams in document F27A [that] contain the Bridgetown Embassy's recommendations to the DEA regarding arrangements for plaintiff's extradition." Def.'s Renewed Mot. Summ. J. at 5; 2nd Declaration of Margaret P. Grafeld ("Grafeld 2nd Decl.") ¶ 4. Without legal objection from plaintiff, this explanation satisfies the requirement of Exemption 5. It was predecisional because it was written prior to plaintiff's extradition, *see* Grafeld 2nd Decl. ¶ 4, and it was deliberative because it "makes recommendations or expresses opinions on legal or policy matters," namely whether and how to extradite plaintiff to the United States. Grafeld 2nd Decl. ¶ 7. Defendant properly invokes Exemption 5 regarding Document F27A.

#### d.  Exemption 7

Exemption 7 protects from disclosure "records or information compiled for law enforcement purposes," but only to the extent that disclosure of such records would cause an enumerated harm listed in Exemption 7's subsections.  5 U.S.C. § 552(b)(7); *see Abramson*, 456 U.S. at 622.  In assessing whether records are compiled for law enforcement purposes, the "focus is on how and under what circumstances the requested files were compiled, and whether the files sought relate[] to anything that can fairly be characterized as an enforcement proceeding." *Jefferson v. DOJ*, 284 F.3d 172, 176–77 (D.C. Cir. 2002) (citations and internal quotations omitted).  The connection between an individual and potential violation of federal law or security risk must be "based on information sufficient to support at least a 'colorable claim' of rationality."  *King v. DOJ*, 802 F.2d 210, 229 (D.C. Cir. 1987).

#### e.  Exemption 7(C)

Exemption 7(C) protects from disclosure information in law enforcement records that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).

##### i.  State Department Documents

In the instant case, defendant asserts Exemption 7(C) as a basis for its non-disclosure of forty State Department documents.[7]  Mem. Op. [41] at 41–42.  The withholder must first satisfy the threshold issue of whether the document was created for law enforcement purposes.  In its initial Motion for Summary Judgment, defendant did not cross this threshold, and this Court requested a more in-depth explanation of the documents' creation.  Mem. Op. at 42.  After

---

[7] *See* Grafeld 1st Decl. (withholding F1, F2, F10, F10A, F11, F12, F13, F14, F18, F19, F20, F21, F22, F26, F28, F44, F29, F30, F41, F45, F24, F36, F37, F47, F50, F51, F8, F31, F34, F39, F40, F42, F43, F32, F23, F25, F35, F52, F27A, and F48). Defendant also invokes Exemption 6 for the same documents.  Grafeld 2nd Decl. ¶ 6.  However, because this Court finds that Exemption 7(C) is appropriately invoked, it will not analyze Exemption 6.

reviewing its new submissions, this Court is satisfied with defendant's more thorough evidence

that the documents were created for the purpose of law enforcement.  *See* Grafeld 2nd Decl. ¶¶

6–8 (explaining that the documents were created for the purpose of facilitating plaintiff's

extradition, which is a law enforcement proceeding).

Next, defendant must prove that an unwarranted invasion of privacy would occur if the

documents were disclosed.  "The myriad of considerations involved in the Exemption 7(C)

balance defy rigid compartmentalization;" therefore, bright line rules are discouraged, and courts

must identify the specific circumstances relevant to each case.  *Stern v. FBI*, 737 F.2d 84, 91

(D.C. Cir. 1984).  In determining whether Exemption 7(C) applies to particular material, this

Court will balance the privacy interest of individuals mentioned in the records against the public

interest in disclosure.  *Beck v. DOJ*, 997 F.2d 1489, 1491 (D.C. Cir. 1993); *see also DOJ v.*

*Reporters Comm. for Freedom of the Press*, 489 U.S 749, 762 (1989).  Individuals have a

"strong interest in not being associated unwarrantedly with alleged criminal activity."  *Stern*, 737

F.2d at 91–92.  "[T]he only public interest relevant for purposes of Exemption 7(C) is one that

focuses on 'the citizens' right to be informed about what their government is up to.'"  *Davis v.*

*DOJ*, 968 F.2d 1276, 1282 (D.C. Cir. 1992) (quoting *Reporters Comm.*, 489 U.S. at 773).  "Even

if a particular privacy interest is minor, nondisclosure is justified where . . . the public interest in

disclosure is virtually nonexistent."  *Id.*

In this case, defendant persuasively explains the privacy concerns of those whose names

were redacted.  First, defendant properly disclosed the names of the Ambassador and Deputy

Chief of Mission, redacting only lower-level employees' names.  *See Stern*, 737 F.2d at 92

(suggesting that federal employees' privacy interests and rank within the agency are often

inversely proportional, and that high-ranking officials should more often be disclosed).  *But see*

*Southam News v. INS*, 674 F. Supp. 881, 888 (D.D.C. 1987) ("[N]ondisclosure of the identities of clerical personnel or other federal government employees who handled administrative tasks related to official investigations cannot be predicated on exemption (b)(7)(C).").  Given this apparent discrepancy in how much privacy lower-level employees can expect, this Court will follow the Circuit's lead and attribute them a greater privacy interest than their superiors.

Defendant asserts that the non-disclosed employees could face harassment and retaliation if their names are disclosed.  Grafeld 2nd Decl. ¶¶ 50, 57, 61, 67, 80, 84, 91, 98.  Most of these employees are "drafting and clearing officials."  *Id.*  Because these are lower-level employees, this Court recognizes their elevated privacy concerns.  The risk of harassment and retaliation, in light of the violent crimes being investigated, constitutes a legitimate privacy interest that is not outweighed by any legitimate public interest in disclosure.  *See Stone v. FBI*, 727 F. Supp. 662, 664, 666 (D.D.C. 1990) (finding that even decades-old grudges toward FBI officials can pose an unreasonable risk of harassment if names were disclosed, and considering the public interest in the names of lower-level employees to be minimal).  In light of the employees' privacy interests, the violent nature of the crimes being investigated, and the lack of legitimate public interest in the names of clerical employees, defendant properly withholds the State Department documents under Exemption 7(C).

Defendant gives a separate explanation for its non-disclosure of document F12.  The detailed explanation of the document's creation—as part of a telegram discussing plaintiff's extradition—is sufficient for this Court to hold that it was created for law enforcement purposes. *See* Grafeld 2nd Decl. ¶ 8.  Next, defendant demonstrates why disclosing the document would be an unreasonable invasion of privacy, giving the same persuasive arguments as for the documents discussed above.  *Id.*  Potential harm to the individuals whose names are withheld greatly

outweighs the nearly nonexistent public interest in disclosure.  Therefore, this Court finds that

defendant properly withholds document F12 under Exemption 7(C).


### f.  Exemption 7(D)

Exemption 7(D) protects from disclosure those records or information compiled for law

enforcement purposes that

> could reasonably be expected to disclose the identity of a confidential source . . .
> [who] furnished information on a confidential basis, and, in the case of a record or
> information compiled by a criminal law enforcement authority in the course of a
> criminal investigation . . ., information furnished by a confidential source.

5 U.S.C. § 552(b)(7)(D).  There is no assumption that a source is confidential for purposes of

Exemption 7(D) whenever a source provides information to a law enforcement agency in the

course of a criminal investigation.  *See DOJ v. Landano*, 508 U.S. 165, 181 (1993).  Rather, a

source's confidentiality is determined on a case-by-case basis.  *Id.* at 179–80.  "A source is

confidential within the meaning of 7(D) if the source provided information under an express

assurance of confidentiality or in circumstances from which such an assurance could reasonably

be inferred."  *Williams v. FBI*, 69 F.3d 1155, 1159 (D.C. Cir. 1995) (citing *Landano*, 508 U.S. at

172).

Confidentiality can be established expressly or impliedly.  Regardless of which type of

confidentiality is asserted, the focus should always be on whether the *source* of the information

spoke with the understanding of confidentiality, not whether the *document* is generally thought to

be confidential.  *Landano*, 508 U.S. at 172.  To claim express confidentiality, an agency must

offer "probative evidence that the source did in fact receive an express grant of confidentiality."

*Campbell v. DOJ*, 164 F.3d 20, 34 (D.C. Cir. 1998) (quoting *Davin v. DOJ*, 60 F.3d 1043, 1061

(3d Cir. 1995)).  This evidence can take many different forms, but it must "permit meaningful

judicial review by providing a sufficiently detailed explanation" for the invocation of Exemption 7(D).  *Id.*

While express confidentiality is relatively easy to spot, implied confidentiality warrants a more nuanced analysis.  "A source is confidential within the meaning of Exemption 7(D) if the source 'provided information . . . in circumstances from which such an assurance [of confidentiality] could be reasonably inferred.'"  *Landano*, 508 U.S. at 172 (quoting S. CONF. REP. 93-1200, 1974 U.S.C.C.A.N. 6285, 6291).  Implied confidentiality exists when "the source furnished information with the understanding that the FBI would not divulge the communication except to the extent the Bureau thought necessary for law enforcement purposes."  *Id.* at 174.  While *Landano* focused particularly on the FBI, this Court finds its principles to be applicable to all agencies engaged in law enforcement, including, in this case, the State Department.  *See* Grafeld 2nd Decl. ¶¶ 6–7 (explaining the law enforcement basis of the State Department's work in plaintiff's extradition); *see also Campbell*, 164 F.3d at 34 ("Exemption 7(D) covers 'records or information compiled by criminal law enforcement authorities . . . .'" (quoting *Computer Prof'ls for Social Responsibility v. U.S. Secret Serv.*, 72 F.3d 897, 905 (D.C. Cir. 1996)).

This Court has stated that "[t]he nature of the crime investigated and informant's relation to it are the most important factors in determining whether implied confidentiality exists."  *Amuso v. DOJ*, 600 F. Supp. 2d 78, 100 (D.D.C. 2009).  The "violence and risk of retaliation attendant to drug trafficking warrant an implied grant of confidentiality to a source who provides information to investigators."  *Lasko v. DOJ*, 684 F. Supp. 2d 120, 134 (D.D.C. 2010).  With these principles in mind, this Court turns to the facts at hand.

### i. State Department Documents

Defendant withholds ten State Department documents under Exemption 7(D).[8]  This

Court determined that more evidence was needed regarding whether the documents were created

for law enforcement purposes.  *See* Mem. Op. at 42.  In response, defendant wrote, "The process

of international extradition . . . is an important law enforcement function.  The Department of

State is a principal actor in the process. . . . All of the documents in which the (b)(7)(C) and (D)

exemptions have been asserted related to the extradition of Charles Miller to the United States."

Grafeld 2nd Decl. ¶¶ 6–7.  With its supplemental information, defendant has crossed the

Exemption 7 threshold by adequately describing the law enforcement purpose of the documents'

creation.

Defendant is also required to demonstrate the confidentiality of its sources.  For all

withheld documents, the source provided information related to plaintiff's drug trafficking, and

for some documents, there was an indication of fear of retaliation.  *See* Grafeld 1st Decl. ¶¶ 58,

84, 92, 98.  Regardless of whether an express fear of retaliation was documented, this Court will

uphold its precedent of implying confidentiality to sources who provide information about

violent crimes.  *See, e.g., Lasko*, 684 F. Supp. 2d at 134; *see also Fischer v. DOJ*, 596 F. Supp.

2d 34, 49 (D.D.C. 2009) (implying confidentiality to cooperative witnesses in a narcotics

trafficking case).  With no legal objection from plaintiff, this Court finds that defendant properly

withholds the ten State Department documents under Exemption 7(D).

### ii. FBIHQ File 163A-BB-610

Defendant withholds documents from file 163A-BB-610 under Exemption 7(D).  Hardy

5th Decl. ¶ 7.  The FBI created the documents for a criminal drug investigation.  *Id.*  This

---

[8] *See* Grafeld 2nd Decl. ¶ 5; Grafeld 1st Decl. ¶¶ 58, 85, 92, 98 (withholding documents F29, F30, F41, F45, F32, F23, F35, F52, F27A, F48).

satisfies the threshold requirement that the document be created for the purpose of law enforcement.  Next, defendant explains that the FBI gave express assurances of confidentiality to the sources in the withheld documents.  *Id.*  This bare assertion, without evidence of such an express agreement, gives this Court pause.  However, as in *Fischer*, this Court will infer confidentiality due to the nature of the FBI's relationship to foreign law enforcement authorities.  *See id.* at 49 (noting the "necessarily close cooperation between the FBI and foreign law enforcement authorities" to support its inference of confidentiality).  Because defendant satisfied both prongs of Exemption 7(D) regarding document 163A-BB-610, it is properly withheld.

Plaintiff asserts that "this Court may still order release of redacted portions of the material."  Pl.'s Opp. at 12.  As noted earlier, the Court will defer to an agency's good faith determination regarding segregability.  *Halperin*, 629 F.2d at 148.  Defendant argues that exemption 7(D) "does not require a balancing of public and private interests;" rather, "once the agency receives information from a confidential source during the course of a legitimate criminal investigation . . . all such information obtained from the confidential source receives protection."  Def.'s Reply at 7 (quoting *Parker v. DOJ*, 934 F.2d 375, 380 (D.C. Cir. 1991)) (internal quotations and citations omitted).  Given this explanation, the Court concludes that the FBI documents held under exemption 7(D) are not segregable and may be withheld in their entirety.

## V. DEFENDANT'S SUPPLEMENT TO THE RECORD

Defendant recently completed the record with DEA disclosures provided to plaintiff on May 12, 2012, and withholding some documents pursuant to Privacy Act Exemption j(2) and FOIA Exemptions 7(C), 7(D), 7(E), and 7(F).[9]  This Court first turns to the newly invoked exemptions.

---

[9] *See* Def.'s Supplement to the R. on its Renewed Mot. Summ. J. and Mot. for Final J. in its Favor, Ex. X (Def.'s letter to Pl.).

### a. Exemption 7(E)

In light of *Milner v. Dep't of the Navy*, 131 S. Ct. 1259 (2011), defendant no longer relies on the "High 2" Exemption for "multi-digit numbers assigned to drug violators and suspected drug violators known to DEA and entities that are of investigative interest."[10]  Supp. Little Decl. ¶ 9.  Instead, defendant now relies on Exemption 7(E) to protect both these numbers and United States Immigration and Customs Enforcement ("ICE") TECS numbers.  *Id.* ¶¶ 14–15.

Exemption 7(E) protects from disclosure law enforcement records "to the extent that the production of such law enforcement records or information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).  *See Morley v. CIA*, 508 F.3d 1108, 1129 (D.C. Cir. 2007) (refusing to be overly formalistic and finding that withholding of documents that would release insight into agencies' investigatory or procedural techniques is also proper).

### i. NADDIS Numbers

As with all Exemption 7 provisions, defendant must first prove that the NADDIS numbers were created for a law enforcement purpose.  These numbers are "part of DEA's internal system of identifying information and individuals in furtherance of DEA's enforcement responsibilities."  Supp. Little Decl. ¶ 11.  This Court finds no purpose in these numbers apart from law enforcement.  Therefore, the Exemption 7 threshold is crossed, and the analysis turns to the enumerated harms in the second clause of § 552(b)(7)(E).  Defendant claims that disclosure of the NADDIS numbers, each of which are unique to one person, would allow sophisticated

---

[10] *Milner* held that the "High 2" Exemption was invalid because it would allow the government to bypass the Exemption 7 restrictions.  The Court noted that the government still has many options for withholding documents formerly withheld under "High 2," particularly Exemptions 1 and 7.  *See Milner*, 131 S. Ct. at 1270-71.

criminals to "avoid apprehension" and "be aware of how to respond in different situations where detection and/or apprehension are imminent." *Id.* ¶¶ 12–13. The numbers "reflect procedures prescribed by the DEA Agents Manual," which, according to defendant, identify law enforcement techniques. *Id.* ¶ 11. Because the NADDIS numbers were created for a law enforcement purpose and their disclosure may disclose techniques and procedures for law enforcement investigation, this Court finds that they are properly withheld under Exemption 7(E).

ii. *TECS Numbers*

Again, this Court must first determine if the TECS numbers were created for a law enforcement purpose. Defendant stated that the numbers "relate to procedures concerning the use of law enforcement resources and databases . . ., as well as TECS case program and access codes . . . ." Supp. Little Decl. ¶ 14. As with the NADDIS numbers, there is no discernable purpose for these numbers apart from law enforcement. As for the enumerated harms of Exemption 7(E), defendant asserts that disclosing TECS numbers would expose a law enforcement technique, promote circumvention of the law by allowing criminals to conceal their activity, or allow fraudulent access to DEA's databases. *Id.* ¶¶ 14–15. This Court finds any of these possibilities to be reasonably expected and therefore upholds defendant's use of Exemption 7(E) regarding the TECS numbers.

**b. Remaining Exemptions**

Defendant withholds other information under Exemptions 7(C), 7(D), and 7(F). Supp. Little Decl. ¶ 8. Defendant referred to the April 18, 2007 Wassom Declaration for an explication of its rationale, *id.*, which this Court has already upheld. *See* Mem. Op. [41] at 45–46, 52, n. 25 (also finding that a 7(F) analysis was unnecessary due to the applicability of the other

exemptions).  Plaintiff brings forth no new arguments rebutting this Court's previous decision in favor of DEA.  Having already been satisfied with defendant's rationale on these matters, this Court reiterates that these Exemptions were properly invoked.

## VI.  CONCLUSION

This Court concludes that there is no genuine issue of material fact remaining and that summary judgment is proper.  Specifically, this Court finds that: (1) plaintiff effectively exhausted his remedies, (2) Air Force Document Number One was properly withheld under Exemption 1, (3) FBIHQ Main File 245-HQ-657 was properly withheld under Exemption 3, (4) State Department Document F72A was properly withheld under Exemption 5, (5) forty State Department documents were properly withheld under Exemption 7(C), (6) ten State Department documents and FBIHQ File 163A-BB-160 were properly withheld under Exemption 7(D), (7) NADDIS numbers and TECS numbers were properly withheld under Exemption 7(E), and (8) the remaining DEA exemptions continue to be valid under this Court's previous analysis.  For the foregoing reasons, Defendant's Renewed Motion [45] for Summary Judgment is hereby GRANTED.

A separate order consistent with this Memorandum Opinion shall issue this date.

Signed by Royce C. Lamberth, Chief Judge, on July 3, 2012.